# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| EVERGREEN SOLAR, INC.,[1] ) | |
| ) | Case No. 11-12590 (MFW) |
| Debtor. ) | |
| ) | |

## DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) SCHEDULING A FINAL HEARING

The debtor and debtor in possession in the above-captioned case (the "Debtor"), hereby files this motion seeking entry of an interim order, substantially in the form annexed as **Exhibit A** hereto (the "Interim Order"): (i) authorizing the Debtor's use of cash collateral (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"); (ii) providing adequate protection to the Debtor's prepetition secured noteholders for any diminution in value of their respective interests in the Cash Collateral or other prepetition collateral; (iii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order; (iv) authorizing immediate cash payment and turnover of sale proceeds to the Debtor's prepetition secured lenders; and (v) scheduling a final hearing (the "Final Hearing") to consider the relief requested herein and the entry of a Final Order (as defined herein) and approving the form of notice with respect to the Final Hearing. In support of this motion, the Debtor relies on and incorporates by reference the Declaration of Michael El-Hillow, Chief Executive Officer of the Debtor, in Support of First Day Pleadings (the "El-Hillow Declaration"), filed with the Court

---

[1] The last four digits of the Debtor's federal tax identification number are 2254.

1

concurrently herewith. In further support of this motion, the Debtor, by and through its undersigned proposed counsel, respectfully represents:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b).

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 361, 362, 363, and 507, of title 11 of the United States Code (the "Bankruptcy Code"). Such relief is warranted pursuant to Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## II. RELIEF REQUESTED

4. The Debtor requests entry of interim and final orders:

    a. Authorizing the Debtor's use of Cash Collateral of the Prepetition Secured Parties (as defined below);

    b. granting adequate protection to the Prepetition Secured Parties for the diminution in value of their interests in the Prepetition Collateral (as defined below) in the form of liens, allowed superpriority administrative expense claims, and certain specified payments;

    c. vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order;

    d. authorizing the Debtor to make an immediate cash payment of $12.5 million and the immediate turnover of sale proceeds to the Prepetition Secured Parties upon the closing of any asset sales;

    e. scheduling a Final Hearing to consider entry of an order granting the relief requested herein on a final basis (the "Final Order") and approve the form and notice with respect to the Final Hearing; and

  f. waiving any applicable stay and provide for immediate effectiveness of the Interim Order.

5. The Supporting Noteholders (as defined below) have consented to the Debtor's use of the Cash Collateral pursuant to the Approved Budget (as defined in the proposed Interim Order), which has been deemed acceptable to the Supporting Noteholders in their sole discretion, and expressly subject to the provision of adequate protection and other terms as set forth in the Interim Order.

### III. BACKGROUND

6. On the date hereof (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 the Bankruptcy Code.

7. The Debtor has continued in possession of its property and has continued to operate and manage its businesses as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtor's chapter 11 case.

8. The Debtor has historically developed and manufactured multi-crystalline silicon wafers (known as String Ribbon ™ wafers) utilizing its proprietary wafer manufacturing technology. Those String Ribbon wafers are then converted into photovoltaic solarcells, which are used to produce Evergreen-branded solar panels or solar modules. The Debtor's technology involves a unique process of producing multi-crystalline silicon wafers by growing thin strips of silicon that are then cut into wafers using lasers, substantially reducing the amount of silicon and other processing costs required to produce a wafer as compared to conventional wafer manufacturing methods.

9. More recently, the Debtor has focused its efforts on developing technology for the production of an industry standard size wafer ("Wide Wafer Technology"),

-3-

A/74480256.7
DOCS_DE:172272.1 24688-001

which can be supplied to the world's leading solar cell and panel manufacturers. The Debtor plans to focus its operations solely on completing the development of the Wide Wafer Technology, which then may be used to manufacture wafers to be sold to other cell or panel manufacturers or licensed to other cell or panel manufacturers. The Debtor expects that its Wide Wafer Technology will permit the manufacturing of wafers at substantially lower cost than wafers manufactured by alternative methods and therefore expects significant demand for its Wide Wafer Technology.

10. The factual background relating to the Debtor's commencement of this chapter 11 case is set forth in detail in the El-Hillow Declaration.

**B.     Prepetition 13% Secured Notes**

11. Pursuant to that certain Indenture dated as of April 26, 2010 (as amended, restated, supplemented, or otherwise modified from time to time, the "Indenture"), on April 26, 2010, the Debtor issued to certain holders (the "Noteholders") $165 million in aggregate principal amount of convertible senior secured notes due April 15, 2015 bearing interest at a rate of 13% per year, payable semi-annually, in arrears on April 15 and October 15 of each year (the "Notes"). The Debtor's obligations under the Notes were guaranteed by ESLR1, LLC. U.S. Bank National Association is the trustee under the Indenture (the "Indenture Trustee" and, together with the Noteholders, the "Prepetition Secured Parties").

12. Prepetition, the Debtor used approximately $82.4 million of the net proceeds for the issuance of the Notes to purchase approximately $124.5 million aggregate principal amount of the 2013 Notes (as defined in the El-Hillow Declaration), with the remainder of the net proceeds used for general corporate purposes, working capital and capital expenditures in China.

-4-

A/74480256.7
DOCS_DE:172272.1 24688-001

13. To secure the obligations owing under the Indenture, pursuant to the Pledge and Security Agreement and the Collateral Trust Agreement, each dated as of April 26, 2010, and related documents, the Debtor granted the Indenture Trustee, on behalf of the Noteholders, first-priority liens (the "Prepetition Liens") on substantially all of the assets owned by the Debtor, subject to certain exceptions (the "Prepetition Collateral"). Currently, approximately $165 million in principal amount remains outstanding under the Notes.

C. **The Debtor's Urgent Need for Use of Cash Collateral**

14. The Debtor requires use of Cash Collateral to pay operating expenses, including payroll, as reflected in the Approved Budget annexed as Exhibit 1 to the proposed Interim Order, funding deposits, and providing adequate assurance with respect to utilities. The Debtor also requires access to Cash Collateral to pay the costs associated with its chapter 11 case. Currently, the Debtor lacks sufficient unencumbered funds with which to operate its business on an ongoing basis. The limited cash on hand, including collections on accounts receivables, proceeds from the sales of inventory, cash equivalents, investment property, and securities, which are the Debtor's only source of funds with which to pay operating expenses, are subject to the liens of the Prepetition Secured Parties.

15. The Debtor has reformulated the direction of its future business. As a result, the Debtor intends to sell all or substantially all of its assets to a third party during its chapter 11 case (the "Sale Process"). Concurrently with the filing of this motion, the Debtor has filed a motion to establish procedures in connection with the sale of all or substantially all of the Debtor's assets. The Debtor has an urgent and immediate need for cash to continue to operate pending the Sale Process and its chapter 11 case.

16. The Debtor's ability to use Cash Collateral to pay budgeted operating expenses during the pendency of its chapter 11 case is essential to the Debtor's business,

including for the maintenance of its business relationships, meeting payroll, and the sale of its assets through an orderly Sale Process in order to maximize the return on such assets for the benefit of its creditors. As the Debtor has no unencumbered funds, the Debtor requires use of such Cash Collateral to fund the day-to-day expenses of its operations, its efforts to conduct the Sale Process, and to meet the costs and expenses of this chapter 11 case. Unless the Court authorizes use of Cash Collateral, the Debtor will be unable to pay for services and expenses necessary to preserve and maximize the value of its assets, and will need to immediately cease operations and terminate the employment of hundreds of employees. The Debtor believes that any such a result would lead to a substantially lower return on the value of the Debtor's assets. Thus, authorization to use Cash Collateral, pending the Final Hearing, is in the best interests of the Debtor's estate and creditors.

17.    As it became apparent to the Debtor that it would need to file for protection under the Bankruptcy Code, the Debtor entered into negotiations with certain unaffiliated Noteholders (the "<u>Supporting Noteholders</u>") regarding, among other things, an agreement on the consensual use of Cash Collateral. These negotiations resulted in the agreed to form of the Interim Order attached hereto as Exhibit A.

**D.    Terms of Cash Collateral Use[2]**

18.    The following summarizes the general terms and conditions agreed to by the Supporting Noteholders and the Debtor for the consensual use of Cash Collateral:[3]

| Use of Cash Collateral | Subject to the terms of the Interim Order, upon entry of the Interim Order, the Debtor is authorized to use Cash Collateral in |
|---|---|

---

[2] The terms of the Debtor's proposed use of the Cash Collateral are summarized in this motion for convenience purposes only. The proposed Interim Order should be referenced for the complete terms and conditions of the Debtor's proposed use of the Cash Collateral.

[3] Capitalized terms used herein that are not otherwise defined in this motion shall have the meaning ascribed to such terms in the Interim Order.

-6-

A/74480256.7

DOCS_DE:172272.1 24688-001

| | |
|---|---|
| | which the Prepetition Secured Parties may have an interest: (i) in accordance with the terms, conditions, and limitations set forth in the Interim Order and the Approved Budget (including any Permitted Variances); (ii) up to $200,000 to fund the Utility Deposit Account (as such term is defined in the Utility Motion); and (iii) pay to the Indenture Trustee, for the benefit of the Noteholders, Cash Collateral in the amount of $12.5 million. Any dispute in connection with the use of Cash Collateral shall be heard by the Court. Interim Order ¶¶ 2, 7(b).<br><br>Upon the occurrence of the Termination Date: (i) the Debtor's right to use Cash Collateral shall automatically terminate; (ii) all Adequate Protection Obligations owed to the Prepetition Secured Parties shall be immediately due and payable; and the Indenture Trustee may: (a) set off and apply immediately any and all amounts in accounts maintained by the Debtor with the Indenture Trustee against the Adequate Protection Obligations and Indenture Obligations owed to the Prepetition Secured Parties and otherwise enforce rights against the Collateral for application towards the Adequate Protection Obligations and Indenture Obligations; (b) take any and all actions necessary to take control of all Cash Collateral; and (c) upon five (5) business days' notice to the Debtor, the Committee (if any) and the U.S. Trustee, take any other actions or exercise any other rights or remedies permitted under the Interim Order or applicable law to effect the repayment and satisfaction of the Adequate Protection Obligations and Indenture Obligations owed to the Prepetition Secured Parties. |
| Termination Date / Termination Events | Notwithstanding anything in the Interim Order to the contrary, the use of Cash Collateral authorized by the Interim Order will terminate without prior notice or order of the Court or any further action by the Prepetition Secured Parties, upon the occurrence of the "Termination Date." The Termination Date shall occur (notice of which shall be provided thereafter to the Debtor, the U.S. Trustee, and any official committee appointed in the case) on the earliest to occur of (each of the following, a "Termination Event"):<br><br>i. November 15, 2011, unless extended pursuant to the RSA;<br><br>ii. Upon the expiration of the Approved Budget unless a Supplemental Approved Budget has been agreed upon by the Debtor and the Requisite Supporting Noteholders, in their sole discretion, *provided, however*, that the Requisite Supporting Noteholders shall accept a reasonable updated budget solely to the extent and for the period |

A/74480256.7

DOCS_DE:172272.1 24688-001

contemplated by section 2(a)(ii) of the RSA;

iii. The date of the Final Hearing (which date shall not be later than twenty-five (25) calendar days after the Petition Date) if a Final Order (provided that such Final Order has not been reversed, vacated, stayed, unless such stay has been vacated, or appealed, unless such appeal has been dismissed or otherwise finally resolved) authorizing the use of Cash Collateral, substantially in accordance with the terms of the Interim Order and otherwise reasonably acceptable to the Requisite Supporting Noteholders, is not entered within twenty-five (25) calendar days of the Petition Date;

iv. Five (5) business days after the date the Requisite Supporting Noteholders or the Indenture Trustee, at the direction of the Noteholders, provides the Debtor with written notice of the Debtor's failure to comply with any of the terms or conditions of the Interim Order;

v. The date an application, motion or other pleading is filed by the Debtor seeking to amend, modify, supplement or extend the Interim Order without the prior written consent of the Requisite Supporting Noteholders; or the date of entry of any order reversing, amending, supplementing, staying, vacating or otherwise modifying the Interim Order without the prior written consent of the Requisite Supporting Noteholders;

vi. The date any material provision of the Interim Order shall for any reason cease to be valid and binding or the Debtor shall so assert in any pleading filed in any court;

vii. The date an application is filed by the Debtor for the approval of any superpriority claim or any lien in the Chapter 11 Case which is *pari passu* with or senior to the Adequate Protection Liens, Superpriority Claim, or Prepetition Liens without the prior written consent of the Indenture Trustee and the Requisite Supporting Noteholders;

viii. The effective date of any confirmed chapter 11 plan in the Chapter 11 Case;

ix. Unless otherwise agreed in writing by the Requisite Supporting Noteholders, the date of the consummation of a sale or other disposition of all or substantially all of the

-8-

| | |
|---|---|
| | assets of the Debtor;<br><br>x. Unless otherwise agreed in writing by the Requisite Supporting Noteholders five (5) business days after a notice of the termination of the RSA;<br><br>xi. The date of the entry of an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any asset of the Debtor with a value in excess of $1,000,000;<br><br>xii. The date: (a) the Debtor's case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code or the Debtor shall file a motion or other pleading seeking the dismissal or conversion of the Debtor's chapter 11 case pursuant to Bankruptcy Code section 1112 or otherwise; or (b) a trustee or an examiner with expanded powers is appointed or elected or the Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the Requisite Supporting Noteholders;<br><br>xiii. The date of the commencement of any action by the Debtor against the Indenture Trustee or any of the Noteholders with respect to the Indenture Obligations or the Prepetition Liens; or<br><br>xiv. The withdrawal, amendment, modification of, or filing of a pleading by the Debtor seeking to withdraw, amend or modify the proposed sale process and bidding procedures (as described in the sale motion filed on the Petition Date), in a manner not reasonably acceptable to the Requisite Supporting Noteholders.<br><br>Interim Order ¶ 5. |
| <u>Adequate Protection</u> | The Prepetition Secured Parties are to be provided with the following forms of adequate protection:<br><br>(a) payment of reasonable fees and expenses incurred by: (i) the Supporting Noteholders (with respect to expenses only, not including advisors unless otherwise set forth herein); (ii) Akin Gump Strauss Hauer & Feld LLP, as counsel to the Supporting Noteholders; (iii) Morris, Nichols, Arsht & Tunnell LLP, as local counsel to the Supporting Noteholders; (iv) Duff & Phelps Securities LLC, as financial advisor to the Supporting Noteholders; |

| | |
|---|---|
| | (v) the Indenture Trustee; (vi) Maslon Edelman Borman & Brand, LLP as counsel to the Indenture Trustee, (vii) such local counsel as the Indenture Trustee may retain; and (viii) such other professionals and/or consultants retained by the Supporting Noteholders and the Indenture Trustee (each of the professionals in (ii) through (viii) being the "Noteholder Professionals"), in each case including, without limitation, in connection with protecting the rights and interests of the Supporting Noteholders and the Indenture Trustee in connection with the Chapter 11 Case and in connection with any and all actions related to the sales process, provided that if the payment of such aggregate reasonable fees and expenses of the Noteholder Professionals causes the Debtor's expenditures to exceed amounts permitted by the Approved Budget, such excess payments shall not constitute a Termination Event;<br><br>(b) not later than two (2) business days following the entry of the Interim Order, payment from Cash Collateral in the amount of $12,500,000, which funds shall reduce the total allowed claim of the Indenture Trustee; and<br><br>(c) subject to the Carve-Out, valid, enforceable, nonavoidable and fully perfected first priority postpetition security interests in and liens (effective and perfected upon the date of entry of the Interim Order and without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) on all of the Collateral; and first-priority superpriority administrative expense claims under Bankruptcy Code section 507(b) with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code (collectively, the "Proposed Adequate Protection").<br><br>Interim Order ¶ 7. |
| Collateral Rights | Upon the sale of the Debtor's assets, and subject to certain limitations, the Interim Order provides that the "Debtor is authorized and directed, without further notice or order of this Court, to promptly pay the Indenture Trustee, for the benefit of the Noteholders, 100% of the net cash proceeds resulting therefrom no later than the second business day following receipt of such proceeds, solely to the extent that" after giving effect to |

| | such payment, the Debtor will have sufficient funds to satisfy certain pre-negotiated expenses. Interim Order ¶ 16(c) |
|---|---|
| Carve Out | "Carve-Out" means: (i) the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6); (ii) fees in an amount not to exceed the Debtor Professional Fee Cap of $8.2 million and the Committee Professional Fee Cap of $50,000, less any amount already paid to the Debtor Professionals and the Committee Professionals, respectively, to the extent allowed at any time by the Bankruptcy Court, whether by interim order, procedural order or otherwise, all unpaid fees, disbursements, costs and expenses incurred by the Debtor Professionals or Committee Professionals, which are incurred prior to the Termination Date; and (iii) fees and expenses of the Debtor Professionals in an aggregate amount not to exceed $500,000, which are incurred on and after the Termination Date, provided such fees and expenses (in the aggregate) are ultimately allowed by the Bankruptcy Court, each subject to the rights of any party in interest to object to the allowance of any such fees and expenses<br>Interim Order ¶¶ 6(a), 9.<br>Up to $25,000 of Cash Collateral in the aggregate may be used to pay the allowed fees and expenses of counsel retained by the Committee incurred directly in connection with investigating, but not preparing, initiating or prosecuting, any Claims and Defenses against the Prepetition Secured Parties or with regard to the Indenture Obligations or Prepetition Liens. Interim Order ¶ 6(c). |
| Determination of the Validity, Enforceability, Priority, and Amount of the Prepetition Obligations | Subject to the right of a: (i) Committee, within sixty (60) days after the date of formation; and (ii) parties in interest, within seventy-five (75) days after entry of the Interim Order, to investigate potential Claims and Defenses, the Debtor acknowledges the validity, enforceability, priority and amount of the Prepetition Liens and Indenture Obligations. Upon the expiration of the relevant investigation period, the Prepetition Liens and Indenture Obligations shall no longer be subject to challenge. Interim Order ¶ F(i)(c), (ii). |
| Releases | The Debtor acknowledges that it does not have claims, objections, challenges, causes of actions, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code against the Prepetition Secured Parties ore the Released Parties arising out of or related to the Indenture Obligations or the Prepetition Loan Documents. Interim Order ¶ F(iv). |

A/74480256.7

DOCS_DE:172272.1 24688-001

|  | In addition, the Debtor, on behalf of itself and its estate (including any successor trustee or other estate representative in the chapter 11 case or successor case) and any party acting by, through, or under the Debtor or its estate, releases the Released Parties from all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations existing as of the Petition Date. Interim Order ¶ 11. |
|---|---|
| Section 506(c) | Subject to entry of a Final Order and the Carve-Out, no administrative expense claims, including fees and expenses of professionals, shall be charged or assessed against or recovered from the Prepetition Collateral or Collateral or attributed to the Prepetition Secured Parties with respect to their respective interests in the Prepetition Collateral or Collateral pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through, or on behalf of the Debtor, without the prior written consent of the affected Prepetition Secured Parties, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Prepetition Secured Parties. Interim Order ¶¶ I, 6(b). |

E. **Provisions that Potentially Implicate Local Rule 4001-2**

19. Local Rule 4001-2 requires that all cash collateral and financing requests under sections 363 and 364 of the Bankruptcy Code: (a) recite whether the proposed form of order and/or underlying cash collateral stipulation or loan agreement contains certain provisions set forth in Local Rule 4001-2(a)(i); (b) identify the location of any such provision in the proposed form of order, cash collateral stipulation and/or loan agreement; and (3) justify the inclusion of such a provision. The provisions requiring disclosure pursuant to Local Rule 4001-2, their location in any order, cash collateral stipulation and/or loan agreement and the justification of the same provisions are as follows:

      a. Local Rule 4001-2(a)(i)(A) requires the disclosure of any provision that would grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors. The Interim Order includes no such provisions.

      b. Local Rule 4001-2(a)(i)(B) requires the disclosure of any provisions or findings of fact that would bind the estate or all

-12-

parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or debt or the waiver of claims against the secured creditor without first giving parties-in-interest at least 75 days notice from entry of the order and the creditors' committee, if formed, at least 60 days from the date of its formation to investigate such matters. Although the Debtor has stipulated that the Prepetition Liens and Indenture Obligations were, as of the Petition Date, valid and enforceable and the Debtor has waived any right to challenge the Prepetition Liens or the Indenture Obligations (Interim Order ¶ F), the Interim Order preserves the rights of a Committee and parties in interest to investigate these stipulations consistent with the notice periods set out in the rule. (Interim Order ¶ 10(a)) Thus, the provision does not fall within the scope of Local Rule 4001-2(a)(i)(B).

c. Local Rule 4001-2(a)(i)(C) requires the disclosure of provisions that seek to waive, without notice, whatever rights the estate may have under sections 506(c) of the Bankruptcy Code. The Interim Order does not grant the Prepetition Secured Parties a waiver of section 506(c) of the Bankruptcy Code. The Interim Order provides that the Indenture Trustee and Noteholders are entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code, only after notice and subject to entry of a Final Order. (Interim Order ¶¶ I, 6(b)). Thus, the provision does not fall within the scope of Local Rule 4001-2(a)(i)(C).

d. Local Rule 4001-2(a)(i)(D) requires the disclosure of provisions that immediately grant to the prepetition secured creditor liens on the Debtor's claims and causes of action arising under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code. The Interim Order does not grant the Prepetition Secured Parties a lien on Avoidance Actions. The Interim Order provides that the Adequate Protection Liens granted will include proceeds of Avoidance Actions, but not the underlying causes of action, subject to entry of a Final Order. (Interim Order ¶ 7(c)). Thus, the provision does not fall within the scope of Local Rule 4001-2(a)(i)(C).

e. Local Rule 4001-2(a)(i)(E) requires the disclosure of provisions that deem prepetition secured debt to be postpetition secured debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in section 552(b) of the Bankruptcy Code. The Interim Order includes no such provisions.

f. Local Rule 4001-2(a)(i)(F) requires the disclosure of provisions that provide disparate treatment for the professionals retained by a

-13-

creditors' committee from that provided for the professionals retained by the Debtor with respect to a professional fee carveout. The Interim Order provides that: (i) so long as the Termination Date has not occurred, the Debtor shall have a Debtor Professional Fee Cap of $8.2 million, and that the Committee shall have a Committee Professional Fee Cap of $50,000; and (ii) on and after the Termination Date, the fees and expenses of the Debtor Professionals cannot exceed $500,000 in the aggregate. (Interim Order ¶¶ 6(a), 9(a)). The amounts of the carve-outs are the result of vigorous negotiations with the Supporting Noteholders, and were the best achievable under the circumstances.

g. Local Rule 4001-2(a)(i)(G) requires the disclosure of any provision that primes any secured lien without the consent of the lienor. The Interim Order includes no such provisions.

### IV. BASIS FOR RELIEF REQUESTED

**A. Authority to Use Cash Collateral and Provide Adequate Protection**

20. Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The Supporting Noteholders have consented to the Debtor's use of Cash Collateral, subject to the terms set forth in the proposed Interim Order.

21. Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Although the Bankruptcy Code does not define "adequate protection," section 361 of the Bankruptcy Code sets forth a non-exclusive list of examples as to how adequate protection may be provided, including cash payments and replacement liens. *See Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y.

-14-

1986). The determination of what constitutes adequate protection is made on a case-by-case basis. *See Swedeland*, 16 F.3d at 564. The purpose of adequate protection is to preserve a secured creditor's position and to protect the secured creditor from diminution of the value of its interest in collateral during the bankruptcy process. *See Beker Indus.*, 58 B.R. at 736; *see also In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

22. In order to protect the Prepetition Secured Parties from any diminution in value of their interests in the Cash Collateral during the pendency of the Debtor's chapter 11 case and avoid needless litigation with the Prepetition Secured Parties, the Debtor has agreed to provide to the Prepetition Secured Parties the Proposed Adequate Protection.

23. The Supporting Noteholders have consented to the Proposed Adequate Protection as set forth in the Interim Order. The Proposed Adequate Protection is justified in order to protect the Prepetition Secured Parties from any diminution in value of the their interest in the Cash Collateral resulting of the use of the Cash Collateral, the Carve Out, and the imposition of the automatic stay. The Proposed Adequate Protection will sufficiently protect the Prepetition Secured Parties' interests in the Prepetition Collateral.

24. Furthermore, as reflected in the Approved Budget, the Debtor needs the liquidity from the use of the Cash Collateral, which it expects to generate in order to conduct its postpetition operations, including conducting the Sale Process, in a manner that minimizes disruption, while maximizing the value of its assets. Without the use of Cash Collateral, the Debtor will not be able to pay its direct operating expenses, with devastating effects to its restructuring efforts.

25. The Debtor submits that the terms of the use of Cash Collateral are fair and reasonable, and have been negotiated by the parties in good faith and at arms' length.

A/74480256.7
DOCS_DE:172272.1 24688-001

Accordingly, the Court should approve the Debtor's use of the Cash Collateral pursuant to the terms set forth in the Interim Order.

**B.   Interim Relief Should be Granted**

26.   Bankruptcy Rule 4001(b) provides that a final hearing on a motion for authorization to use cash collateral may not be commenced earlier than 14 days after service of the motion. Upon request, however, the court may conduct a preliminary expedited hearing before such 14-day period expires and may authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

27.   Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct an expedited preliminary hearing on this motion and: (a) authorize the Debtor to use the Cash Collateral of the Prepetition Secured Parties in order to (i) maintain and finance the ongoing operations of the Debtor and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest; and (b) schedule a Final Hearing.

28.   The Debtor will be immediately and irreparably harmed absent authorization from the Court to use Cash Collateral on an interim basis pending a Final Hearing. It is critical that the Debtor maintains the confidence of employees, suppliers and customers, and to meet its obligations while it conducts an orderly Sale Process and successfully restructures its business. Continued cash availability is essential to the Debtor's ability to achieve these goals. The denial of use of Cash Collateral for these purposes would result in the immediate shut-down of the Debtor's operations, and would have a destructive effect on the value of the Debtor's assets which, at that point, could only be sold at fire sale prices, if at all.

29.   Accordingly, this Court should enter an order authorizing the Debtor's use of Cash Collateral pursuant to the terms set forth in the proposed Interim Order pending the Final Hearing and schedule the Final Hearing pursuant to Bankruptcy Rule 4001.

A/74480256.7
DOCS_DE:172272.1 24688-001

## V. NO PRIOR REQUEST

30. No previous request for the relief sought herein has been made by the Debtor to this or any other court.

## VI. NOTICE WITH RESPECT TO INTERIM HEARING

31. Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to any known secured creditors of record; (c) Maslon Edelman Borman & Brand, LLP, 3300 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402-4140, Attn: Clark T. Whitmore, Esq. (clark.whitmore@maslon.com), as counsel to the Indenture Trustee; (d) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Michael S. Stamer (mstamer@akingump.com), as counsel to the Supporting Noteholders; (e) the creditors holding the twenty (20) largest unsecured claims against the Debtor, or their legal counsel (if known); and (f) the Internal Revenue Service (collectively, the "Notice Parties"). The Debtor submits that, under the circumstances, no other or further notice is required.

## VII. NOTICE WITH RESPECT TO FINAL HEARING

32. No trustee, examiner or statutory committee has yet been appointed in these chapter 11 cases. Pursuant to Bankruptcy Rule 4001, the Debtor respectfully request that the Court authorize it to provide notice of the Final Hearing, on or before August ___, 2011, by serving a notice of the Interim Order and the proposed Final Order by first-class mail (or for those set up to receive electronic transmissions, by electronic transmission), on: (a) the Notice Parties; (b) counsel to a creditors' committee, if appointed; and (c) persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

A/74480256.7
DOCS_DE:172272.1 24688-001

## VIII. CONCLUSION

WHEREFORE, the Debtor requests entry of the annexed Interim Order and, after the Final Hearing, the Final Order, granting the relief requested herein and such other and further relief as it deems just and proper.

Dated: August 15, 2011
       Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES, LLP

/s/ Laura Davis Jones
Laura Davis Jones (Bar No. 2436)
919 North Market Street, 19th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Phone: (302) 652-4100
Fax: (302) 652-4400
E-mail: ljones@pszjlaw.com

-and-

BINGHAM McCUTCHEN LLP
Ronald J. Silverman (*pro hac vice* pending)
Steven Wilamowsky (*pro hac vice* pending)
399 Park Avenue
New York, NY 10022
Phone: (212) 705-7000
Fax: (212) 752-5378
E-mail: ronald.silverman@bingham.com
   steven.wilamowsky@bingham.com

Proposed Counsel for Debtor and
Debtor in Possession

-18-

A/74480256.7
DOCS_DE:172272.1 24688-001