# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EVERGREEN SOLAR, INC.,[1] | ) | Case No. 11-12590 (MFW) |
|  | ) |  |
| Debtor. | ) |  |

**Objection Deadline: September 30, 2011 at 4:00 p.m. (prevailing Eastern time)**
**Hearing Date: October 7, 2011 at 2:00 p.m. (prevailing Eastern time)**

## APPLICATION FOR ORDER, PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), FED. R. BANKR. P. 2014 AND 2016 AND DEL. BANKR. L. R. 2014-1 AND 2016-2 (I) AUTHORIZING EMPLOYMENT AND RETENTION OF UBS SECURITIES, LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTOR AND DEBTOR-IN-POSSESSION NUNC PRO TUNC TO THE PETITION DATE, AND (II) MODIFYING TIME-KEEPING REQUIREMENTS UNDER LOCAL RULES PURSUANT TO LOCAL RULE 2016-2(g)

The above-captioned debtor and debtor in possession (the "Debtor" or the "Company), hereby submits this application (the "Application") for an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2(g) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (a) authorizing the employment and retention of UBS Securities, LLC ("UBS") as investment banker and financial advisor to the Debtor *nunc pro tunc* to the Petition Date (as defined below) and (b) modifying the time-keeping requirements of the Local Rules pursuant to Local Rule 2016-2(g). In support of this Application, the Debtor relies on the

---

[1] The last four digits of the Debtor's federal tax identification number are 2254. The Debtor's mailing address is 138 Bartlett Street, Marlboro, MA 01752.

Declaration of Doug Lane, a copy of which is attached hereto as <u>Exhibit A</u> (the "Declaration"). In further support of this Application, the Debtor respectfully states as follows:

## Jurisdiction

1.    This Court has jurisdiction over this application under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The legal bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2.

## Background

3.    On August 15, 2011 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor has continued in possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or committee has been appointed in the Debtor's chapter 11 case.

4.    The Debtor has historically developed and manufactured multi-crystalline silicon wafers (known as String Ribbon ™ wafers) utilizing its proprietary wafer manufacturing technology.  Those String Ribbon wafers are then converted into photovoltaic solarcells, which are used to produce Evergreen-branded solar panels or solar modules.  Evergreen's technology involves a unique process of producing multi-crystalline silicon wafers by growing thin strips of silicon that are then cut into wafers using lasers, substantially reducing the amount of silicon and

other processing costs required to produce a wafer as compared to conventional wafer manufacturing methods.

5.      More recently, the Debtor has focused its efforts on developing technology for the production of an industry standard size wafer ("Wide Wafer Technology"), which can be supplied to the world's leading solar cell and panel manufacturers. The Debtor plans to focus its operations solely on completing the development of the Wide Wafer Technology, which then may be used to manufacture wafers to be sold to other cell or panel manufacturers or licensed to other cell or panel manufacturers. Evergreen expects that its Wide Wafer Technology will permit the manufacturing of wafers at substantially lower cost than wafers manufactured by alternative methodologies and therefore expects significant demand for its Wide Wafer Technology.

6.      The factual background relating to the Debtor's commencement of this chapter 11 case is set forth in detail in the *Declaration of Michael El-Hillow, Chief Executive Officer of the Debtor, in Support of First Day Pleadings* (the "El-Hillow Declaration") [Docket No. 2] which is incorporated herein by reference.

7.      On April 21, 2011, UBS and the Debtor entered into an agreement for services (the "Original Agreement").

8.      On July 18, 2011, UBS and the Debtor entered into an amended agreement for services, replacing the terms of the Original Agreement, and providing the terms of UBS's financial advisory and investment banking services to the Debtor (the "Engagement Letter").

## Relief Requested

9.      The Debtor desires to retain and employ UBS as its investment banker and

financial advisor in connection with the commencement and prosecution of this chapter 11 case.

By this Application, the Debtor requests that this Court enter an order, pursuant to sections

327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules

2014-1 and 2016-2, (a) authorizing the employment and retention of UBS for the purpose of

providing necessary investment banking and financial advisory services in connection with the

Debtor's chapter 11 case in accordance with the terms and conditions set forth in the

Engagement Letter, dated July 18, 2011, which is attached as Exhibit 1 to the Declaration, and

(b) modifying applicable fee motion and information requirements, including those contained in

Local Rule 2016-2.

## Need to Retain Investment Banker and Financial Advisor

10.     The Debtor operates in an intensely competitive and rapidly evolving

industry and has filed this chapter 11 case because of a number of financial constraints. To assist

with the Debtor's restructuring efforts, it is necessary that the Debtor retains investment banking

and financial advisory services in connection with, among other things, a possible restructuring

of its existing obligations and/or the sale or other disposition of all or a portion of the Debtor or

its assets. The Debtor believes one or more such transactions will be necessary to effectuate the

foregoing and that investment banking and financial advisory services, such as those provided by

UBS, are essential to effectuating such transactions.

## UBS's Qualifications

11.     UBS is a global investment bank and a leader in providing sophisticated financial and capital markets advisory services to a wide variety of clients.  UBS and its professionals have developed a strong reputation for financial restructurings through their work as advisors to financially troubled companies both out of court and in chapter 11 cases.  The chapter 11 cases on which UBS has advised include, among others: General Growth Properties, Inc., Charter Communications, Inc., Centro Properties Group, Protostar Ltd., Adelphia Communications, Trump Entertainment Resorts Inc., Iridium LLC, Leap Wireless International, Inc., NTELOS Inc., NextWave Personal Communications, Inc., Satélites Mexicanos S.A. de C.V., Quebecor World USA Inc., Dana Corp., and ASARCO LLC.

12.     UBS is an international investment bank with diverse activities, and has extensive experience in mergers and acquisitions, bank financings, public and private securities offerings involving both debt and equity and securities trading.  UBS also has industry teams covering major industries, including a technology, media and telecommunications team. Accordingly, UBS is one of only a handful of professional organizations able to offer a full range of investment banking services and products in addition to financial and capital markets advisory services to the Debtor.

13.     The Debtor believes that UBS's employment is in its best interests and in the best interests of its estate and creditors.  The Debtor must obtain quality financial and capital markets advice to ensure an efficient and successful conclusion to this chapter 11 case.  Because UBS has extensive experience in both these areas as well as expansive knowledge of mergers and acquisitions, bank financings and capital restructurings, the Debtor believes that UBS is uniquely qualified to assist it in this regard.  UBS advisory services are going to be provided

primarily by a team comprising of individuals from the Restructuring Group, and the Alternative Energy Group led by the individuals listed below.

14.     Steven D. Smith, Global Head of the Restructuring Group, Douglas P. Lane, Managing Director in the Restructuring Group, and David Dolezal, Co-Head of the Alternative Energy Group, will be the Debtor's primary contacts and advisors for this assignment. Messrs. Smith, Lane, and Dolezal may also utilize the assistance of other UBS employees as necessary.

15.     Mr. Smith is a Managing Director and the Global Head of the Restructuring Group. Since 1993, Mr. Smith has worked extensively with companies, creditors and shareholders in distressed situations. His assignments have included recapitalizations, bankruptcy reorganizations and out-of court workouts. Mr. Smith also has significant leveraged finance, M&A, equity and other transaction experience. Mr. Smith is well-suited to provide the services required by the Debtor and his advisory experience extends across many industries. His most notable past assignments include providing financial advisory services in the cases of the $27 billion restructuring of General Growth Properties, the $17 billion restructuring of Centro Properties Group, the $21 billion restructuring of Charter Communications, the $10 billion restructuring of UPC, the $2 billion restructuring of Stelco, the $10 billion restructuring of ASARCO, the $8 billion DIP financing for Lyondell Basell Industries and the $2.4 billion restructuring of Leap Wireless, among others.

16.     Doug Lane is also a Managing Director in the Restructuring Group, based in San Francisco. Mr. Lane joined the San Francisco office of UBS in April 2001 and has worked on a broad variety of leveraged finance transactions, including restructurings, cross-border M&A financings, leveraged buyouts and high yield and bank financings. Prior to joining

UBS, Mr. Lane worked in the Restructuring Group at Donaldson, Lufkin & Jenrette. Mr. Lane is well-suited to provide the services required by the Debtor and his advisory experience extends across many industries. His most notable past assignments include providing financial advisory services in the cases of $8 billion DIP financing for Lyondell Basell Industries, the $1.5 billion restructuring of Chemtura Corporation, the $515 million restructuring of ITC DeltaCom, the $400 million ProtoStar restructuring, the $6 billion acquisition financing for Novelis/Hindalco and the $1 billion restructuring of Ainsworth Lumber.

17.    David Dolezal is a Managing Director in the Investment Banking Department of UBS and is Co-Head of the firm's Alternative Energy Group. Mr. Dolezal has participated in a broad range of strategic advisory and capital raising assignments for both Fortune 500 and middle-market companies. Mr. Dolezal's strategic advisory experience includes domestic and cross-border mergers, acquisitions and divestitures, including: Hanwha Chemical's acquisition of a 49.99% stake in Solarfun, Solaicx's sale to MEMC Electronic Materials and Calisolar's acquisition of 6N Silicon. Mr. Dolezal has structured and executed over 60 capital raising transactions, including investment grade and high yield bond offerings, leveraged loans, convertible bond offerings, equity private placements and common stock offerings. He has raised over $5 billion of capital for leading cleantech companies including: GT Solar, Energy Conversion Devices, Suntech, Yingli Solar, LDK, Renesola and US BioEnergy.

18.    As noted above, subject to approval by the Court, the Debtor employed UBS on April 21, 2011 to assist the Debtor in the evaluation of strategic alternatives and to serve as its investment banker and financial advisor in connection with its restructuring efforts. Since then, UBS has become familiar with the Debtor's business, operations and financial condition and is both well qualified and uniquely able to represent the Debtor as investment banker and

financial advisor in connection with such matters in a cost-effective and efficient manner. Accordingly, the Debtor believes that UBS has the requisite qualifications and experience to serve as its investment banker and financial advisor.

## UBS is Disinterested

19.     To the best of the Debtor's knowledge, except as may otherwise be set forth in the Declaration, UBS (a) is not a creditor, equity security holder or insider of the Debtor, (b) is not and was not, within 2 years before the Petition Date, a director, officer or employee of the Debtor, (c) does not hold or represent any interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders and (d) is not related to any judge of this Court, the Office of the United States Trustee for the District of Delaware ( the "U.S. Trustee") or any employee of the U.S. Trustee.

20.     UBS is a global investment banking firm with broad activities covering trading in equities, convertible securities and corporate bonds in addition to its investment banking and financial advisory practice.  During UBS's engagement in this case, UBS's equity and fixed income trading divisions may continue to buy, sell or otherwise effectuate transactions in securities or derivative securities of the Debtor on an unsolicited basis for customer accounts or for its own account in a so-called "riskless principal" transaction that is standard in the equity and fixed income trading industries.  Moreover, during the term of UBS's engagement in this case, UBS's equity and fixed income trading divisions may also buy, sell, or otherwise effectuate transactions in securities or derivative securities of parties-in-interest in this case.

21. Furthermore, with customer accounts and investment banking and financial advisory clients around the world, it is possible that one of UBS's clients or a counter-party to a transaction may hold a claim or otherwise is a party-in-interest in this case. As a major market maker in equity securities as well as a major trader of corporate and securitized bonds and convertible securities, UBS regularly enters into securities transactions with other registered broker-dealers as a part of its daily activities. Some of these counterparties may be creditors of the Debtors. To the best of the Debtor's knowledge, information and belief, none of these business relationships constitutes interests materially adverse to the estates in matters upon which UBS is to be employed by the Debtor in this case, and none are in connection with this case. The business units engaging in the trading activities referred to above are separate from the business unit that will be providing services to the Debtor in this chapter 11 case.

22. Accordingly, the Debtor believes that UBS is a "disinterested person" within the meaning of section 101(14), as modified by section 1107(b) of the Bankruptcy Code, and its representation of the Debtor is permissible under section 327(a) of the Bankruptcy Code and is in the best interests of all parties-in-interest.

## Services To Be Rendered

23. UBS is being retained to perform the following investment banking and financial advisory services. These services, as described in the Engagement Letter, are summarized below:[2]

---

[2] The terms of the Engagement Letter are fully stated in Exhibit 1 attached to the Declaration and are incorporated herein by reference. Capitalized terms used but otherwise not defined have the meaning given to them in the Engagement Letter. To the extent there is any inconsistency between any summary set forth in this Application and the Engagement Letter, the terms of the Engagement Letter control.

(a)     advising and assisting the Debtor in analyzing, structuring and negotiating the financial aspects of any Restructuring Transaction[3] as follows:

    (i)     assisting the Debtor in reviewing and analyzing the Debtor's business plan;

    (ii)    advising and assisting the Debtor in reviewing, analyzing, structuring and negotiating the financial aspects of potential Restructuring Transactions, including but not limited to, debt to equity conversions, debt maturity extensions, modifications to interest rates and financial covenants of debt obligations;

    (iii)   assisting the Debtor in valuing the Debtor and/or, as appropriate, valuing the Debtor's assets or operations (including on a going concern or liquidation basis); provided, that any "fairness opinions" or real estate or fixed asset appraisals, to the extent necessary, will be undertaken by an independent third party financial advisor or appraiser to be separately retained and compensated by the Debtor;

    (iv)    providing expert advice and testimony regarding financial matters related to any Restructuring Transaction or any other proceeding before the Court (including after any sale of substantially all the assets of the Debtor and including in connection with any Chapter 11 plan of reorganization or Chapter 11 plan of liquidation), and such other financial advisory services as may be requested by the Debtor from time to time in connection with executing a Restructuring Transaction; and

    (v)     advising and attending meetings of the Debtor's board of directors, creditor groups, official constituencies and other interested parties as the Debtor determines to be necessary or desirable.

(b)     advising and assisting the Debtor in formulating a plan of reorganization and/or analyzing any proposed plan, including

---

[3]      As used in the Engagement Letter, the term "Restructuring Transaction" means, whether effectuated directly or indirectly, any restructuring of the Debtor's liabilities outstanding on the date of the Engagement Letter and listed on Annex A thereto (approximately $381.4 million principal amount), including, without limitation, any exchange, conversion, repurchase or repayment of any such liabilities, or any modification, amendment, deferral, restructuring, recapitalization, rescheduling, moratorium, or adjustment of the terms and/or conditions of any such liabilities, or a sale of all or substantially all of the Debtor's assets, including the proposed standard sized wafer business, whether effectuated prior to or during the pendency of a bankruptcy case.

assisting in the plan negotiation and confirmation process, assisting in the preparation of any documents needed in this Chapter 11 case (including after any sale of substantially all the assets of the Debtor), and assisting the Debtor in connection with any Restructuring Transaction.

(c)     Assisting the Debtor in identifying and evaluating candidates for potential sale transactions involving any assets or operations of the Debtor, including, without limitation, the Debtor's Devens facility (or equipment within the Devens facility) and certain LBIE claims, effectuated prior to, during the pendency of, or subsequent to consummation of this Chapter 11 case, including advising the Debtor in connection with negotiations and aiding in the consummation of such sale transactions including, without limitation, the preparation of offering memoranda related thereto. With respect to a sale of the LBIE claims and the Devens assets, the Debtor expects other brokers will take the lead on that marketing process, and UBS will provide any services it is well positioned to provide as reasonably requested by the other brokers or the Debtor.

(d)     Advising and assisting the Debtor with respect to any debt or equity financing, whether public, private or otherwise (including any bank financing), conducted prior to or during the pendency of a bankruptcy case.

## Professional Compensation

**A.      Fees and Expense Reimbursements**

24.      In consideration of UBS's services, and as more fully set forth in the Engagement Letter, subject to Court approval, the Debtor has agreed to pay UBS pursuant to the following fee structure (the "Fee Structure"), which is summarized in the following table prepared for descriptive purposes only, and is qualified by the express terms of the Engagement Letter.

| Monthly Advisory Fee | A monthly cash advisory fee of $150,000 (the "Monthly Advisory Fee"), payable in advance for the period commencing on the date of the Engagement Letter with the first payment (pro rated) due upon execution of the Engagement Letter and subsequent payments due on the first business day of each month.  All monthly advisory fee |
|---|---|

| | payments shall be creditable against any Restructuring Transaction Fee (as defined below). |
|---|---|
| Restructuring Transaction Fee | A $4,000,000 fee (the "Restructuring Transaction Fee"), payable upon the consummation of a Chapter 11 plan of reorganization or Chapter 11 plan of liquidation following a Restructuring Transaction. |
| Reimbursement of Expenses | Reimbursement for all of UBS's reasonable out-of-pocket expenses incurred in connection with the performance of its services under the Engagement Letter, including reasonable fees, disbursements and other charges of UBS's legal counsel, provided that such legal counsel's fees shall not exceed $25,000 for due diligence performed on the Debtor and $250,000 in the aggregate without the prior written consent of the Debtor. |

25.    The Debtor requests authority to compensate and reimburse UBS in accordance with the Engagement Letter for all services rendered and for all reasonable expenses incurred in connection with this case.  The fees are consistent with UBS's normal and customary billing practices for comparably-sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with this case.  Further, the fees were established to reflect the difficulty of the extensive assignments UBS expects to undertake.  Accordingly, the Debtor believes that such compensation is reasonable and appropriate for services of this nature and is comparable to fees charged by other providers of similar services.

26.    UBS intends to apply for compensation for its services and reimbursement of its expenses in connection with this bankruptcy case in accordance with the procedures set forth in the Order Establishing Procedures For Interim Compensation and Reimbursement of Expenses of Professionals (the "Compensation Procedures Order"), the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of the Court, and consistent with the Fee Structure.

27.     As confirmed in the Declaration, UBS has no agreement with any other entity to share with such entity any compensation received by UBS in connection with the Debtor's case.

28.     Before the Petition Date, the Debtor paid UBS approximately $318,038.30 for fees and expenses billed through August 9, 2011, for UBS's representation of the Debtor pursuant to the terms of the Engagement Letter. As of the Petition Date, UBS did not hold a prepetition claim against the Debtor for services rendered or reimbursable fees in connection with the engagement. To the extent that UBS is holding funds from the Debtor in excess of fees earned and reimbursements due as of the Petition Date, UBS will hold such excess funds as a retainer to be applied against postpetition fees and expenses due from the Debtor to UBS, subject to compliance with applicable fee motion requirements.

29.     UBS has agreed that the fees of its legal counsel shall not exceed $10,000 for post-petition services performed on behalf of the Debtor; provided that, to the extent UBS becomes involved in litigation in this case, UBS's legal counsel's fees will not be subject to the $10,000 limitation but will not exceed the amount set forth in the Engagement Letter. UBS will apply to the Court for payment of such fees pursuant to the Order Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals (the "Compensation Procedures Order"), and such fees must be reasonable. For avoidance of doubt, litigation as used herein includes, without limitation, any adversary proceeding or contested matter involving the services of UBS or in which discovery is propounded or requested of UBS.

30.     Similar fee and expense arrangements have been approved and implemented in a number of other recent cases in this district. *See, e.g.*, *In re Midway Games Inc.*, Case No. 09-10465 (KG) (Bankr. D. Del. Mar. 30, 2009); *In re Aleris Int'l, Inc.*, Case No.

09-10478 (BLS) (Bankr. D. Del. Mar. 23, 2009); *In re Nortel Networks, Inc.*, Case No. 09-10138 (KG) (Bankr. D. Del. Mar. 20, 2009); *In re Intermet Corp.*, Case No. 08-11859 (KG) (Bankr. D. Del. Oct. 1, 2008); *In re Tropicana Entm't, LLC*, Case No. 08-10856 (KJC) (Bankr. D. Del. May 5, 2008); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 2, 2007); *In re J.L. French Auto. Castings, Inc.*, Case No. 06-10119 (MFW) (Bankr. D. Del. Feb. 10, 2006); *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Nov. 7, 2005).

   31. Although UBS does not charge for its services on an hourly basis, UBS nevertheless will maintain records of time spent by its professionals in connection with the rendering of services for the Debtor by category and nature of the services rendered; provided, however, that UBS seeks approval to maintain time records in half-hour increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtor.

**B.**  **Indemnification Provisions**

   32. The Engagement Letter provides that the Debtor shall indemnify UBS to the extent provided in the Indemnification Agreement executed by the parties and attached to the Engagement Letter. Specifically, the Indemnification Agreement provides that the Debtor will indemnify and hold UBS harmless against liability arising out of or in connection with its retention by the Debtor, except for any liability for losses, claims, damages, or liabilities incurred by the Debtor that are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the gross negligence or willful misconduct of UBS.

   33. The Debtor seeks approval of the indemnification provisions set forth in the Engagement Letter, subject during the pendency of this chapter 11 case to the following:

a. subject to the provisions of subparagraph (d), *infra*, the Debtor is authorized to indemnify, and to provide contribution and reimbursement to, and shall indemnify, and provide contribution and reimbursement to, UBS in accordance with the Engagement Letter for any claim arising from, related to, or in connection with the services provided for in the Engagement Letter;

b. notwithstanding any indemnification provisions in the Engagement Letter to the contrary, the Debtor shall have no obligation to indemnify UBS or provide contribution or reimbursement to UBS (i) for any claim or expense that is judicially determined (The determination having become final) to have arisen primarily from UBS's bad faith, self-dealing, willful misconduct or gross negligence, (ii) for a contractual dispute in which the Debtor alleges the breach of UBS's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (d), *infra*, to be a claim or expense for which UBS should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter, as modified by any order approving this Application;

c. if, during the pendency of the Debtor's case, an indemnification obligation is held unenforceable by reason of the exclusions set forth in subparagraph (b) above and UBS makes a claim for the payment of any amounts by the Debtor on account of such indemnification obligation, the Debtor's contribution provisions in the Engagement Letter shall not apply with respect to the applicable matter; and

d.    if, before the earlier of (i) the entry of any order confirming a Chapter 11 plan in this case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing this case, UBS believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, UBS must file an application therefore in this Court, and the Debtor may not pay such amounts to UBS before the entry of any order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for compensation and expenses by UBS for indemnification, contribution, or reimbursement and is not a provision limiting the duration of the Debtor's obligation to indemnify UBS.

34.    The Debtor and UBS believe the indemnification obligations in the Indemnification Agreement attached to the Engagement Letter are consistent with normal and customary terms for advisory engagements in cases of this size and complexity which require the level and scope of services outlined in the Engagement Letter .

35.    Similar indemnification and reimbursement arrangements have been approved and implemented in a number of other recent cases in this and other districts. *See, e.g., In re Trico Marine Services, Inc.*, Case No. 10-12653 (BLS) (Bankr. D. Del. Oct. 6, 2010); *In re Trident Resources Corp.*, Case No. 09-13150 (MFW) (Bankr. D. Del. Jan. 28, 2010); *In re Midway Games Inc.*, Case No. 09-10465 (KG) (Bankr. D. Del. Mar. 30, 2009); *In re Aleris Int'l, Inc.*, Case No. 09-10478 (BLS) (Bankr. D. Del. Mar. 23, 2009); *In re Nortel Networks, Inc.*, Case No. 09-10138 (KG) (Bankr. D. Del. Mar. 20, 2009); *In re Intermet Corp.*, Case No. 08-11859

(KG) (Bankr. D. Del. Oct. 1, 2008); *In re Tropicana Entm't, LLC*, Case No. 08-10856 (KJC) (Bankr. D. Del. May 5, 2008); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 2, 2007); *see also In re FairPoint Commc'ns, Inc.*, Case No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan. 11, 2010); *In re Charter Commc'ns, Inc.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009).

36.     In light of the foregoing, the Debtor respectfully submits that the Engagement Letter is reasonable and in the best interests of the Debtor, its estate and its creditors. The terms and conditions of the Engagement Letter were fully negotiated between the Debtor and UBS, appropriately reflect the nature and scope of services to be provided by UBS and UBS's significant experience with respect to investment banking and financial advisory services and are consistent with the terms and conditions typically utilized by UBS and other leading investment bankers and financial advisors. Accordingly, the Debtor believes that the relief requested in this Application is appropriate and is in the best interests of the Debtor, its estate and its creditors.

## Basis for Relief

**A.      Sections 327 and 328 of the Bankruptcy Code Permit Employment and Retention of UBS on the Terms and Conditions Set Forth in the Engagement Letter**

37.     Under section 327 of the Bankruptcy Code, a trustee or debtor in possession may employ one or more professionals that do not hold or represent an interest adverse to the estate and that are disinterested persons, to assist such parties in carrying out their duties under the Bankruptcy Code. 11 U.S.C. § 327(a). Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession, with the court's approval, "may employ or

authorize the employment of a professional person under section 327 . . . on any reasonable

terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or

percentage fee basis, or on a contingent fee basis. . . ." 11 U.S.C. § 328(a). "Professional

persons" under section 327 include investment bankers and financial advisors, such as UBS, that

provide restructuring advice, and investment banking services. *See In re Drexel Burnham*

*Lambert Group, Inc.*, 133 B.R. 13, 24 (Bankr. S.D.N.Y. 1991) ("There is no doubt that

investment bankers/advisors are subject to the professional retention requirements of § 327.");

*Bicoastal Corp. v. Clear*, 149 B.R. 216, 218 (Bankr. M.D. Fla. 1993) (stating "investment

advisors, business and financial consultants, and asset managers" are professional persons under

section 327).

      38.    Bankruptcy Rule 2014 requires that an application for retention include:

specific facts showing the necessity for the employment, the name of the firm to be employed,

the reasons for the selection, the services to be rendered, any proposed compensation

arrangement, and, to the best of the applicant's knowledge, all of the firm's connections with the

debtor, creditors, any other party in interest, their respective attorneys and accountants, the

United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014(a).

      39.    Section 328(a) of the Bankruptcy Code permits the compensation of

professionals, including financial advisors and investment bankers, on flexible terms that reflect

the nature of their services and market conditions. Section 328(a) was amended by the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to provide that a debtor

may employ a professional person on any reasonable terms and conditions of employment,

including "on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). This new language makes clear the ability of the Debtor to retain, with court approval, a professional on a fixed fee basis. Section 328(a) of the Bankruptcy Code therefore permits the Court to approve the terms and conditions of UBS's engagement, as set forth in the Engagement Letter, including, without limitation, the Fee Structure.

40.     By this Application, the Debtor requests that the Court approve the Fee Structure described in the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code. The Debtor believes the fees and indemnification obligations set forth in the Engagement Letter are reasonable terms and conditions of employment and should be approved under section 328(a). The fees and indemnification obligations adequately reflect: (i) the nature of the services to be provided by UBS; and (ii) fee structures and indemnification provisions typically utilized by UBS and other leading financial advisory and investment banking firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis. Moreover, UBS's substantial experience with respect to financial advisory and investment banking services, coupled with the nature and scope of work already performed by UBS before the Petition Date, further suggests the reasonableness of the fees and indemnification obligations.

41.     Notwithstanding its proposed engagement under section 328 of the Bankruptcy Code, UBS will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the procedures set forth in the Compensation Procedures Order, and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as those procedures may be modified or supplemented by order of the Court.

42.     Bankruptcy Rule 2016 and Local Rule 2016-2 require estate professionals to file motions or applications for payment of compensation in bankruptcy cases. Local Rule 2016-2(d) requires such professionals to submit detailed time entries setting forth, among other things, detailed descriptions of activities performed, the amounts of time (in tenths of an hour) spent on those activities, and the type and subject matter of those activities. Local Rule 2016-2(d) also requires, among other things, that (a) descriptions of activities be divided into general project categories, (b) each activity description shall include a time allotment, (c) activities shall be billed in tenths of an hour, and (d) each activity description will include the type of activity (e.g., phone calls, research). Local Rule 2016-2(g), however, allows the Court to waive the requirements of Local Rule 2016-2 for cause.

43.     The Debtor submits that sufficient cause exists for the Court to modify applicable fee motion and information requirements, including the requirements of Local Rule 2016-2, given the financial industry practice, as well as the nature of UBS's particular engagement and compensation structure. Consistent with the ordinary practices of UBS and other financial advisory and investment banking firms, which do not employ hours-based fee arrangements, UBS does not typically maintain contemporaneous time records in increments of one tenth (0.1) of an hour or provide or conform to a schedule of hourly rates for its professionals. When required to do so, UBS's restructuring professionals have kept time records in half-hour (0.5) increments describing their activities and the identities of the persons performing such activities. UBS's employees that are not restructuring professionals do not, however, typically keep any time records. In addition, UBS's restructuring professionals do not categorize their time on a project basis.

44. Accordingly, pursuant to Local Rule 2016-2(d), the Debtor requests that the Court modify the requirements of Local Rule 2016-2 and any other applicable requirements to better reflect the nature of UBS's engagement and compensation structure, such that (a) only UBS's restructuring professionals shall be required to keep time records, (b) UBS's non-restructuring professionals shall not be required to keep any time records, (c) UBS's restructuring professionals shall not be required to keep time records on a project-category basis, (d) UBS's restructuring professionals may keep their time records in a summary format, with a general description of the services rendered by the applicable restructuring professional and the time spent on such services, in half-hour increments, and (e) UBS shall not be required to provide or conform to any schedule of hourly rates.

## B. Approval of the Indemnification Provisions is Appropriate

45. The Debtors believe that the indemnification provisions highlighted above are customary and reasonable for financial advisory engagements, in both out-of-court and chapter 11 proceedings. *See, e.g., In re United Artists Theatre Co.*, Case No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000) (authorizing indemnification of Houlihan, Lokey, Howard & Zukin Capital by debtors), *aff'd*, 315 F.3d 217 (3d Cir. 2003); *In re Joan & David Halpern, Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y. 2000) (authorizing indemnification of Newmark Retail Financial Advisors by debtors), *aff'd* No. 00 Civ. 3601 (JSM), 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000).

46. For the foregoing reasons, the Debtor submits that it has satisfied the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules with respect to the relief sought herein. Accordingly, the Debtor respectfully requests that the Court authorize them to employ and retain UBS as their financial advisor, *nunc pro tunc* to the Petition Date, on the

terms set forth in the Engagement Letter and described in this Motion, pursuant to section 328(a) of the Bankruptcy Code.

## No Prior Request

47.     No prior request for the relief sought in this Application has been made to this or any other court.

## Notice

48.     Notice of this Motion has been given to the following parties, or their counsel, if known:  (i) the Office of the United States Trustee, (ii) the Indenture Trustee, and (iii) the Supporting Noteholders; (iv) the Official Committee of Unsecured Creditors; and (v) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully request that the Court enter an order, substantially in the form attached to this Application, (i) authorizing the employment and retention of UBS as investment banker and financial advisor, *nunc pro tunc* to the Petition Date, to the Debtor in this chapter 11 case and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: September 2, 2011

Evergreen Solar, Inc.

By:    Christian Ehrbar
Title:  Vice President and General Counsel