**Exhibit A**

**Declaration**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EVERGREEN SOLAR, INC.,[1] | ) | Case No. 11-12590 (MFW) |
| | ) | |
| Debtor. | ) | |

**DECLARATION OF DOUG LANE IN SUPPORT OF
APPLICATION FOR ORDER, PURSUANT TO 11 U.S.C. §§ 327(a)
AND 328(a), FED. R. BANKR. P. 2014, 2016 AND DEL. BANKR. L. R. 2014-1 AND
2016-2 (I) AUTHORIZING EMPLOYMENT AND RETENTION OF UBS SECURITIES
LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTOR
AND DEBTOR-IN-POSSESSION NUNC PRO TUNC TO THE PETITION DATE AND
(II) MODIFYING TIME-KEEPING REQUIREMENTS UNDER LOCAL RULES
PURSUANT TO LOCAL RULE 2016-2(g)**

I, DOUG LANE, BEING DULY SWORN, DEPOSES AND SAYS:

1.        I am a Managing Director at UBS Securities LLC ("UBS"). I provide this

declaration (the "Declaration") in support of the Application of Evergreen Solar, Inc. (the

"Debtor or the "Company") for an Order Authorizing Employment And Retention Of UBS

Securities LLC As Investment Banker and Financial Advisor to the Debtor and Debtor-in-

Possession Nunc Pro Tunc to the Petition Date (the "Application").

2.        The facts set forth in this Declaration are based upon my personal

knowledge, upon information and belief, and upon records kept in the ordinary course of

business of UBS and certain of its affiliates, as set forth below, which records were reviewed by

me or other employees of UBS at my direction and under my supervision. The procedures

---

[1]  The last four digits of the Debtor's federal tax identification number are 2254. The Debtor's mailing address is 138 Bartlett Street, Marlboro, MA 01752.

pursuant to which UBS will determine whether it has any past or present connections with interested parties in these cases are summarized below.

## Terms of Engagement Letter Between UBS and the Debtor

3.    Attached hereto as <u>Exhibit 1</u> is a copy of the Engagement Letter between UBS and the Debtor (together with all related attachments, the "Engagement Letter"), which is submitted with this Declaration for approval and incorporated herein by reference.   UBS's employment and retention in this case is contingent upon the Court's approval of all terms and conditions set forth in the Engagement Letter.

4.    Pursuant to the terms of the Engagement Letter, and subject to approval of the Court, UBS has agreed to provide certain investment banking and financial advisory services (the "Services") to the Debtor in connection with this chapter 11 case, a summary description of which Services is set forth in the Application.

5.    Pursuant to the terms of the Engagement Letter, and subject to approval of the Court, UBS will seek compensation and reimbursement of fees, disbursements and out of pocket expenses incurred by UBS in connection with its services under the Engagement Letter (including the fees and disbursements of UBS's outside legal counsel), a summary description of which is set forth immediately below and fully described in the Engagement Letter:

a.    A monthly cash advisory fee of $150,000, payable in advance for the period commencing on the date of the Engagement Letter with the first payment (pro rated) due upon execution of the Engagement Letter and subsequent payments due on the first business day of each month.  All monthly advisory fee payments shall be creditable against any Restructuring Transaction Fee.

b. A $4,000,000 fee, payable upon the consummation of a Chapter 11 plan of reorganization or Chapter 11 plan of liquidation following a Restructuring Transaction.

6. Included among the terms and conditions set forth in the Engagement Letter is language substantially similar to the following:

a. UBS's services under the Engagement Letter shall terminate upon the earlier of (1) either UBS or the Company giving the other party 30 days prior written notice at any time or (ii) the payment by the Company to UBS of the Restructuring Transaction Fee (the "Termination Date"). If the Engagement Letter is so terminated, UBS shall (a) be compensated as provided in the Engagement Letter to the Termination Date; (b) be entitled to reimbursement as provided in Section 2 hereof for expenses incurred through the Termination Date; (c) have no further obligations or responsibilities under the Engagement Letter after the Termination Date; (d) have no liability based in whole or in part upon, arising out of or related to the Engagement Letter, including any failure to complete any services covered by the Engagement Letter and (e) be paid all amounts withheld pursuant to any order of the Bankruptcy Court. Sections 1 (the second to last paragraph), 2 (the second to last paragraph), 3, 4 (other than the first sentence thereof) and 5 through 13 hereof shall remain in full force and effect regardless of such termination. Notwithstanding any such termination described above, UBS shall be entitled to payment in full of the Restructuring Transaction fee set forth in Section 2(b) if at any time during the Term and for 18 months after the Term, a Restructuring Transaction is consummated or creditors of the Company agree to a plan of reorganization or the Company files a plan of reorganization or enters into a letter of intent or any agreement that subsequently results in a Restructuring Transaction.

7.     In addition, the Engagement Letter includes certain indemnity, contribution, expense reimbursement and exculpation provisions for the benefit of UBS and other Indemnified Persons in language substantially similar to the following (and set forth in greater detail in an attachment to the Engagement Letter):

a.     In the event UBS becomes involved in any capacity in any claim, action, suit, proceeding, investigation or inquiry (including, without limitation, any shareholder or derivative action or arbitration proceeding) (collectively, a "Proceeding"), (i) in connection with or arising out of any untrue statement or alleged untrue statement of a material fact contained in any information hereafter provided to any prospective transaction parties by or on behalf of the Debtor (which shall be deemed to include the Debtor's public filings) or any omission or alleged omission to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading or (ii) otherwise in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter, including, without limitation, related services and activities provided prior to the Effective Date of the Engagement Letter, the Debtor agrees to indemnify, defend and hold UBS harmless to the fullest extent permitted by law, from and against any losses, claims, damages, liabilities and expenses in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter, except, in the case of clause (ii) above only, to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review that such losses, claims, damages, liabilities and expenses resulted from the gross negligence or willful misconduct of UBS (including the gross

negligence or willful misconduct of any UBS party entitled to indemnification hereunder). In addition, in the event that UBS becomes involved in any capacity in any Proceeding in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter, the Debtor will reimburse UBS for its reasonable legal and other expenses (including the cost of any investigation and preparation) as such expenses are incurred by UBS in connection therewith;

      b.     If the indemnification provided for in the preceding paragraph (a) were not to be available for any reason, the Debtor agrees to contribute to the losses, claims, damages, liabilities and expenses involved (i) in the proportion appropriate to reflect the relative benefits received or sought to be received by the Debtor and its stockholders and affiliates and other constituencies, on the one hand, and UBS, on the other hand, in connection with the matters contemplated by the Engagement Letter or (ii) if (but only if and to the extent) the allocation provided for in clause (i) is for any reason held unenforceable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Debtor and its stockholders and affiliates and other constituencies, on the one hand, and the party entitled to contribution, on the other hand, as well as any other relevant equitable considerations. The Debtor agrees that for the purposes of this paragraph the relative benefits received, or sought to be received, by the Debtor and its stockholders and affiliates and other constituencies, on the one hand, and the party entitled to contribution, on the other hand, in connection with the matters contemplated by the Engagement Letter shall be deemed to be in the same proportion that the total value received or paid or contemplated to be received or paid by the Debtor or its stockholders or affiliates and other constituencies, as the case may be, as a

result of or in connection with the matters (whether or not consummated) for which UBS has been retained to perform financial services bears to the fees paid to UBS under the Engagement Letter; provided that, in no event shall the Company contribute less than the amount necessary to assure that UBS is not liable for losses, claims, damages, liabilities and expenses in excess of the amount of fees actually received by UBS pursuant to the Engagement Letter. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Debtor or other conduct by the Debtor (or its employees or other agents), on the one hand, or by UBS, on the other hand; and

c. That neither UBS nor any of its affiliates, directors, agents, employees or controlling persons shall have any liability to the Debtor or any person asserting claims on behalf of or in right of the Debtor in connection with or as a result of either UBS's engagement under the Engagement Letter or any matter referred to in the Engagement Letter, including, without limitation, related services and activities prior to the date of the Engagement Letter, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review that any losses, claims, damages, liabilities or expenses incurred by the Debtor resulted primarily from the gross negligence or willful misconduct of UBS (including the gross negligence or willful misconduct of any UBS party entitled to indemnification hereunder) in performing the services that are the subject of the Engagement Letter.

8. If during the pendency of the Debtor's case an indemnification obligation is held unenforceable by reason of the exclusions set forth above and UBS makes a claim for the

payment of any amounts by the Debtor on account of such indemnification obligation, the Debtor's contribution provisions in the Engagement Letter shall not apply with respect to the applicable matter.

9.     The terms and conditions of the Engagement Letter are consistent with and typical of agreements entered into by UBS and other similar investment banking firms in rendering comparable services for clients both inside and outside of bankruptcy.

## Corporate Structure And Disinterestedness Of UBS

10.     UBS is a wholly owned subsidiary of UBS AG, a global firm providing financial services to private, corporate and institutional clients and governments. UBS AG's strategy is to concentrate on three global core businesses – wealth management, asset management and investment banking – and to provide retail and corporate banking services in Switzerland.  In the investment banking and securities businesses, UBS provides securities products and research in equities, fixed income, rates, foreign exchange and metals.  It also provides advisory services as well as access to the world's capital markets for corporate, institutional, intermediary and alternative asset management clients.  The investment bank operates through branches and subsidiaries of UBS AG.  Securities activities in the US are conducted through UBS, a registered broker-dealer.

11.     Pursuant to UBS's Information Barrier Policy and Procedures (the "Information Barrier Procedures"), UBS has established and will maintain the following internal information barrier procedures (subject to the next paragraph of this Declaration): (i) each UBS professional advising the Debtor in this chapter 11 case has received training with respect to the Information Barrier Procedures and are required to certify annually that they are aware of and

will comply with such procedures; (ii) the UBS professionals advising the Debtor in this chapter 11 case will not directly or indirectly share any non-public information generated by, received from or relating to the Debtor ("Information") with any other employees, representatives or agents of UBS, except on a strictly confidential basis with other UBS employees, representatives or agents who need to know such information for purposes of advising the Debtor; (iii) UBS professionals advising the Debtor in this chapter 11 case are located in areas that are physically separated from the UBS business units engaged in trading activities; (iv) UBS professionals advising the Debtor in this chapter 11 case will not receive any information regarding UBS's trading in securities in advance of the execution of such trades; (v) the UBS Compliance Department reviews UBS's trades to determine if there is any reason to believe that such trades were not made in compliance with the Information Barrier Procedures and maintains records of such reviews; (vi) the management team of UBS's Investment Banking Department monitors (in consultation with UBS's Compliance Department) a sampling of e-mails of professionals in the department (including the professionals advising the Debtor in this chapter 11 case) to prevent the unauthorized disclosure of information through electronic means from professionals in the Investment Banking Department to professionals in the UBS business units engaged in trading activities; and (vii) UBS will immediately inform the Debtor's counsel and the United States Trustee in writing if such procedures are materially breached in connection with these chapter 11 cases.

12.      Notwithstanding the foregoing, the UBS professionals advising the Debtor in this chapter 11 case may share information with (i) senior management of UBS and members of any relevant new business approval or commitment committees who, due to their duties and

responsibilities, have a legitimate need to know such information, provided that such individuals (x) otherwise comply with the procedures described in the previous paragraph of this Declaration and (y) use such information only in connection with their senior managerial responsibilities; (ii) regulatory authorities; and (iii) Legal, Compliance, Risk Control, Internal Audit and other internal control functions within UBS that need to know such information for purposes of carrying out their control functions.

13.     In connection with UBS's proposed retention by the Debtor, UBS has requested and obtained from the Debtor, the names of the material parties-in-interest identified in Exhibit 2 to this Declaration.

14.     UBS is not aware of any connects that would make UBS disinterested, but UBS is continuing to review and will promptly disclose any such connections. UBS will search its records to determine if UBS had, during the past year, any relationships with such parties-in-interest, or provided services to such parties-in-interest. To the extent that UBS's research indicates that UBS had, during the past year, any relationships with such parties-in-interest, or provided services to such parties-in-interest, UBS will indicate so in a supplemental declaration to be filed with the Court.

15.     With its diverse practice and many customer accounts, certain of UBS's clients or a counter-party to a transaction with a UBS Group client may hold claims or otherwise be parties-in-interest in this chapter 11 case. In connection with such activities or potential relationships, and to the best of my knowledge, information and belief, UBS makes the following additional disclosures:

a.      To the best of my knowledge, information and belief, none of UBS's business relationships constitute interests materially adverse to the Debtor herein in matters upon which UBS is to be employed, and none are in connection with this case. Furthermore, none of these engagements or relationships are material to the financial condition of UBS.

b.      Although reasonable efforts are being made to discover and eliminate the possibility of any conflict, including the efforts outlined herein, UBS is unable to state with certainty whether one of UBS's clients or an affiliated entity of any such client holds a claim or otherwise is a party-in-interest in this chapter 11 case.

c.      To the best of my knowledge, information and belief, UBS does not currently hold any claim against, or interest in, the Debtor, and the UBS professionals that will be responsible for this engagement do not hold any direct claims against, or interests in, the Debtor. During UBS's engagement in this case, UBS's equity and fixed income trading divisions may continue to buy, sell or otherwise effectuate transactions in securities or derivative securities of the Debtor on an unsolicited basis for customer accounts or for its own account only in a so-called "riskless principal" transaction that is standard in the equity and fixed income trading industries. Moreover, during the term of UBS's engagement in these cases, UBS's equity and fixed income trading divisions may also buy, sell or otherwise effectuate transactions in securities or derivative securities of parties-in-interest in this case. UBS believes that none of these activities constitute interests materially adverse to the Debtor in matters upon which UBS is to be retained.

d.      Employees of UBS that are not working with UBS in this engagement may hold, for their personal account or for an account under their control, equity, debt or

derivative securities relating to the Debtor or parties-in-interest in this case. UBS AG does not intend to allow any of its employees, whether inside or outside of the information walls described above, to purchase or sell any securities of the Debtor during UBS's engagement in this case.

e.    As a market maker in equity securities, as well as a trader of corporate bonds and other securities, UBS regularly enters into securities transactions with other registered broker-dealers and clients as a part of its daily activities. Certain of these counter-parties may be parties-in-interest in this case. These transactions may be for UBS's own account, or for the accounts of its respective customers or employees. In the course of its business, UBS may, directly or indirectly, hold long or short positions, trade or otherwise conduct such activities in or with respect to equity, debt or derivative securities relating to, parties-in-interest in these cases.

16.    Although UBS's equity research analysts are prohibited from issuing recommendations regarding the Debtor and its securities for the duration of UBS's involvement in these cases, UBS's fixed income desk analysts may from time to time during this case provide certain notes and fact sheets to UBS and its customers and sales teams. These notes and fact sheets are factual in nature, convey only publicly available information, and do not contain any recommendations regarding the purchase or sale of the securities referenced therein, which may include the securities of the Debtor or parties-in-interest in this case.

17.    UBS Investment Bank has over 16,450 employees. It is possible that certain employees of UBS may have business associations and other relationships with parties-in-interest in these cases, personal investments in the Debtor, or interests in mutual funds or other investment vehicles that may own securities of the Debtor. To the best of my knowledge,

and after due inquiry, the UBS professionals that will be responsible for this engagement do not have business associations or other relationships with, or hold interests in the Debtor. Furthermore, UBS has placed the Debtor on its "restricted list," which precludes any of UBS's employees from trading in securities of the Debtor, except as otherwise provided herein.

18.     In the ordinary course of UBS's business, UBS regularly borrows funds from a variety of lenders, including through clearing agreements, to assist in the clearance and settlement of securities transactions as well as their day-to-day operations. Some of these lenders may be parties-in-interest in this case.

19.     As part of its practice, UBS appears in numerous cases, proceedings and transactions involving many different attorneys, financial advisors and creditors, some of which may represent or be claimants and/or parties-in-interest in this case. During the course of this engagement and these cases, UBS will have no relationship with any such entity, attorney or financial advisor that would be materially adverse to the Debtor.

20.     Members of UBS AG may currently be parties or participants in certain litigation matters involving parties-in-interest in this case. All such litigation matters are unrelated to the Debtor and this case.

21.     To the best of my knowledge, information and belief, the UBS professionals expected to assist the Debtor in this case are not connected to the Judge, U.S. Trustee or Assistant U.S. Trustee assigned to this case.

22.     Despite the efforts described above to identify and disclose connections with parties-in-interest in this case, because the Debtor has numerous creditors and other relationships, UBS is unable to state with certainty that every client representation or other

relationship of UBS with parties-in-interest in this case has been identified and disclosed herein. To the extent that UBS learns in the future of any material relationship not disclosed herein, UBS will file a related supplemental disclosure in this case.

23.    To the best of my knowledge, information and belief:  (i) UBS does not hold nor represent any interest materially adverse to the Debtor in the matters for which UBS is proposed to be retained; (ii) the proposed employment of UBS is not prohibited by or improper under Rule 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (iii) UBS is a "disinterested person" as that term is defined in section 101(14) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), in that, its directors, officers and employees:

a.    except as otherwise set forth herein, are not creditors, equity security holders or insiders of the Debtor;

b.    were not, within two years before the date of filing of the Debtor's chapter 11 petition, a director, officer, or employee of the Debtor; and

c.    except as otherwise set forth herein, do not have an interest materially adverse to the interests of the estate or of my class creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

24.    Accordingly, I believe that UBS is eligible for retention by the Debtor in this case.

### Qualifications And Compensation

25.    To the best of my knowledge, information and belief, prior to the Petition Date, UBS performed certain investment banking and financial advisory services for the Debtor.

At the Debtor's request, UBS has provided investment banking and financial advisory services for the Debtor since the Petition Date. Thus, UBS requests that its retention be authorized effective as of the Petition Date.

26.     Before the Petition Date, the Debtor paid UBS approximately $318,038.30 for fees and expenses billed through August 9, 2011, for UBS's representation of the Debtor pursuant to the terms of the Engagement Letter. The breakdown of such fees and expenses is as follows: (a) a retainer fee in the amount of $217,741.94 for the period of July 18, 2011 to August 31, 2011, (b) expenses in the amount of $25,270.34 for the period through July 31, 2011, and (c) legal fees in the amount of $75,026.02 for the period through July 27, 2011. As of the Petition Date, UBS did not hold a prepetition claim against the Debtor for services rendered in connection with the engagement. To the extent that UBS is holding funds from the Debtor in excess of fees earned and reimbursements due as of the Petition Date, UBS will hold such excess funds as a retainer to be applied against postpetition fees and expenses due from the Debtor to UBS, subject to compliance with applicable fee motion requirements.

27.     UBS has agreed that the fees of its legal counsel shall not exceed $10,000 for post-petition services performed on behalf of the Debtor; provided that, to the extent UBS becomes involved in litigation in this case, UBS's legal counsel's fees will not be subject to the $10,000 limitation but will not exceed the amount set forth in the Engagement Letter. UBS will apply to the Court for payment of such fees pursuant to the Order Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals (the "Compensation Procedures Order"), and such fees must be reasonable. For avoidance of doubt, litigation as used

herein includes, without limitation, any adversary proceeding or contested matter involving the services of UBS or in which discovery is propounded or requested of UBS.

28.     UBS and the professionals that it employs are well qualified to provide to the Debtor the services described in the Engagement Letter. UBS's professionals have extensive experience in reorganization cases and enjoy an excellent reputation for services they have rendered in large and complex chapter 11 cases on behalf of debtors, creditors and creditors' committees throughout the United States. UBS is well qualified to serve as investment bankers and financial advisors to the Debtor in this case.

29.     Except as otherwise set forth herein, UBS has not shared or agreed to share any of its compensation in connection with this matter with any other person except its employees and affiliates in the ordinary course of UBS's business. No other arrangement is proposed between the Debtor and UBS for compensation to be paid to UBS in connection with this engagement.

30.     Except as otherwise provided below, UBS intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and the Engagement Letter, and pursuant to any additional procedures that may be established by the Court in these cases. All such fees and expenses shall be subject only to the standard of review set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any other standard of review set forth in section 330 of the Bankruptcy Code.

31.     It is not the general practice of investment banking and financial advisory services firms to keep detailed time records in increments of one tenth (0.1) of an hour or provide

or conform to a schedule of hourly rates for its professionals similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis or maintain time on a "project category" basis. UBS, when formally retained in chapter 11 cases and when required by local rules, do, and in this chapter 11 case will, keep time records describing its general daily activities, the identity of persons who performed such activities and the amount of time expended on each activity in half-hour increments. For UBS to recreate detailed time entries for its personnel or to keep time records on a "project category" basis as required by the rules of this Court would be unduly burdensome and time-consuming. Thus, UBS requests that the local rules of this Court be modified, to the extent necessary, so as to allow its personnel to bill in these cases as described in this paragraph.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: September 2, 2011

_____
Doug Lane
Managing Director
UBS Securities LLC

**Exhibit 1**



**UBS Securities LLC**
299 Park Avenue
New York, NY 10171

www.ubs.com

July 18, 2011

<u>Private and Confidential</u>

Evergreen Solar, Inc.
138 Bartlett Street
Marlboro, MA 01752

Attention: Mike El-Hillow, CEO

Ladies and Gentlemen:

     This letter agreement (this "Agreement") confirms, amends, and restates the agreement, originally set forth in the letter between the parties hereto dated April 21, 2011 (the "Original Letter"), pursuant to which Evergreen Solar, Inc., a Delaware corporation (the "Company"), has engaged UBS Securities LLC ("UBS") to act as its exclusive financial advisor and capital markets advisor with respect to any Restructuring Transaction (as defined below). The term of UBS' engagement hereunder commenced on April 21, 2011 (the "Effective Date") and shall continue until terminated in accordance with Section 5 hereof (the "Term").

     As used in this Agreement, the term "Restructuring Transaction" means, whether effected directly or indirectly, any restructuring of the Company's liabilities outstanding on the date of this Agreement and listed on Annex A hereto (approximately $381.4 million principal amount), including, without limitation, any exchange, conversion, repurchase or repayment of any such liabilities, or any modification, amendment, deferral, restructuring, recapitalization, rescheduling, moratorium, or adjustment of the terms and/or conditions of any such liabilities, or a sale or all or substantially all of the Company's assets, including the proposed standard sized wafer business (the "Wide Wafer Business"), whether effectuated prior to or during the pendency of a bankruptcy case.

     1.  On the terms and subject to the conditions of this Agreement, UBS will provide the Company, upon request by the Company, the following financial and market related advisory services:

     (a)  advising and assisting the Company in analyzing, structuring and negotiating the financial aspects of any Restructuring Transaction as follows:

        (i)  assisting the Company in reviewing and analyzing the Company's business plan;

        (ii)  advising and assisting the Company in reviewing, analyzing, structuring and negotiating the financial aspects of potential Restructuring Transactions, including but not limited to, debt to equity conversions, debt maturity extensions, modifications to interest rates and financial covenants of debt obligations;

**UBS Investment Bank is a business group of UBS AG.**
**UBS Securities LLC is a subsidiary of UBS AG.**


(iii)   assisting the Company in valuing the Company and/or, as appropriate, valuing the Company's assets or operations (including on a going concern or liquidation basis); provided, that any "fairness opinions" or real estate or fixed asset appraisals, to the extent necessary, will be undertaken by an independent third party financial advisor or appraiser to be separately retained and compensated by the Company;

(iv)   providing expert advice and testimony regarding financial matters related to any Restructuring Transaction or any other proceeding before the bankruptcy court (including after any sale of substantially all the assets of the Company and including in connection with any Chapter 11 plan of reorganization or Chapter 11 plan of liquidation), and such other financial advisory services as may be requested by the Company from time to time in connection with executing a Restructuring Transaction; and

(v)   advising and attending meetings of the Company's board of directors, creditor groups, official constituencies and other interested parties as the Company determines to be necessary or desirable.

(b)   advising and assisting the Company in formulating a plan of reorganization and/or analyzing any proposed plan, including assisting in the plan negotiation and confirmation process, assisting in the preparation of any documents needed in a bankruptcy proceeding (including after any sale of substantially all the assets of the Company), and assisting the Company in connection with any Restructuring Transaction.

(c)   assisting the Company in identifying and evaluating candidates for potential sale transactions involving any assets or operations of the Company, including, without limitation, the Company's Devens facility (or equipment within the Devens facility) and certain LBIE claims, effectuated either prior to, during the pendency of, or subsequent to consummation of a bankruptcy case, including advising the Company in connection with negotiations and aiding in the consummation of such sale transactions including, without limitation, the preparation of offering memoranda related thereto. With respect to a sale of the LBIE claims and the Devens assets, the Company expects other brokers will take the lead on that marketing process, and UBS will provide any services it is well positioned to provide as reasonably requested by the other brokers or the Company.

(d)   Advising and assisting the Company with respect to any debt or equity financing, whether public, private or otherwise (including any bank financing), conducted prior to or during the pendency of a bankruptcy case.

The advice and work product generated by UBS is intended to assist the Company's counsel in connection with one or more Restructuring Transactions (as well as in connection with any potential Proceeding, as defined in the attached Indemnification Agreement) and is intended and shall be protected by the work product doctrine and attorney-client privilege.

UBS understands that the Company previously engaged Lazard Freres & Co. LLC ("Lazard") to act as its financial advisor in connection with the Restructuring Transaction pursuant to a separate

UBS Investment Bank is a business division of UBS AG.
UBS Securities LLC is a subsidiary of UBS AG.



agreement. The Company has also informed UBS that the Company has terminated Lazard's services under such separate agreement. It is expressly understood and acknowledged that Lazard will have no rights or claims with respect to any fees or expenses payable to UBS under this Agreement. It is further understood and acknowledged that UBS and Lazard are not and will not be deemed for any purpose to be acting as an agent, joint venturer or partner of the other, and that neither UBS nor Lazard assumes responsibility, express or implied, for any actions or omissions of, or the performance of services by the other, in connection with a Restructuring Transaction or otherwise.

    2.  For UBS' services hereunder, the Company agrees to pay to UBS the following non-refundable fees (the "UBS Fees") in cash:

    (a)  A monthly cash advisory fee of $150,000 (each, a "Monthly Advisory Fee"), payable in advance for the period commencing on the date of this Agreement with the first payment (pro rated) due upon execution of this Agreement and subsequent payments due on the first business day of each month. All of the Monthly Advisory Fee payments shall be creditable against any Restructuring Transaction Fee.

    (b)  A fee (the "Restructuring Transaction Fee") of $4,000,000, payable upon the consummation of a Chapter 11 plan of reorganization or Chapter 11 plan of liquidation following a Restructuring Transaction, subject to the next paragraph.

If the Restructuring Transaction is pursuant to a plan that is, in whole or in part, pre-packaged, prearranged or prenegotiated (a "Prepackaged Plan") under the United States Bankruptcy Code (the "Bankruptcy Code"), prior to the filing of the bankruptcy petition, the Company will deposit the Restructuring Transaction Fee into an escrow account, to the extent permitted under its existing indentures for the Notes, over which UBS shall have sole dominion and control, and execute and deliver any documents or instruments necessary or desirable in connection with the foregoing and the Restructuring Transaction Fee shall become payable by the Company upon confirmation and consummation of the Prepackaged Plan. The Company shall use commercially reasonable efforts to cause any Prepackaged Plan or other reorganization plan to provide in the terms of the plan for the full payment of the Restructuring Transaction Fee under these terms.

    Whether or not any Restructuring Transaction is consummated, and in addition to any fees payable to UBS, the Company will reimburse UBS, upon its request from time to time, for all reasonable expenses incurred by it in entering into and performing services pursuant to this Agreement, including the reasonable fees, disbursements and other charges of its legal counsel; provided that, except as contemplated by the Indemnification Agreement attached hereto, such legal counsel's fees shall not exceed $25,000 for due diligence performed on the Company and $250,000 in the aggregate without the prior written consent of the Company, such consent not to be unreasonably withheld.

    To the extent legally permitted, UBS' compensation and expense reimbursement in this Section 2 and payments made pursuant to the indemnification and contribution provisions in the Indemni-

UBS Investment Bank is a business division of UBS AG.
UBS Securities LLC is a subsidiary of UBS AG.



fication Agreement attached hereto, shall be entitled to priority as administrative expenses in any re-organization case under Sections 503 (b) (1) (A) and 507 (a) (2) of the Bankruptcy Code.

It is understood and agreed that nothing contained herein shall constitute a commitment or obligation by UBS or any of its affiliates to underwrite, place or purchase any securities or to arrange or provide any other form of financing.

3.  Except to the extent required by court or similar order (after consultation with, and approval as to form and substance by, UBS and its counsel), none of (i) the name of UBS, (ii) any advice rendered by UBS to the Company, or (iii) the terms of this Agreement or any communication from UBS in connection with the services performed by UBS pursuant to this Agreement will be quoted or referred to orally or in writing, or in the case of (ii) and (iii), reproduced or disseminated, by the Company or any of its affiliates or any of their agents, without UBS' prior written consent.

4.  The Company will furnish UBS (and, if negotiations proceed with a potential transaction party, will request that such transaction party furnish UBS) with such information as UBS believes appropriate to its assignment (all such information so furnished being the "Information"). The Company recognizes and confirms that UBS (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed responsibility for independently verifying the same, (b) does not assume responsibility for the accuracy, completeness or reasonableness of the Information and such other information and (c) will not make an appraisal of any assets or liabilities (contingent or otherwise) of the Company or a potential transaction party. To the best of the Company's knowledge, the Information regarding the Company to be furnished by or on behalf of the Company which is intended for the benefit of any current or potential investors in connection with the transactions contemplated by this Agreement, when delivered, will be complete and correct in all material respects and will not contain any untrue statement of material fact or omit to state any material fact necessary to make the statements contained therein (in the aggregate) not misleading in light of the circumstances under which such statements are made. The Company will promptly notify UBS if it learns of any material inaccuracy or misstatement in, or material omission from, any Information previously delivered to UBS.

In the event any Restructuring Transaction involves an exchange offer, tender offer or consent solicitation, prior to the commencement thereof the Company shall enter into with UBS a separate dealer manager or other appropriate agreement substantially in the form of the dealer manager or other appropriate agreement (including appropriate representations and legal opinions) customary for UBS in similar transactions.

5.  UBS' services under this Agreement shall terminate upon the earlier of (i) either UBS or the Company giving the other party 30 days prior written notice at any time or (ii) the payment by the Company to UBS of the Restructuring Transaction Fee (the "Termination Date"). If this Agreement is so terminated, UBS shall (a) be compensated as provided herein to the Termination Date; (b) be entitled to reimbursement as provided in Section 2 hereof for expenses incurred through the Termination Date; (c) have no further obligations or responsibilities under this Agreement after the Termination Date; (d) have no liability based in whole or in part upon, arising out of or related to this Agree-

UBS Investment Bank is a business division of UBS AG.
UBS Securities LLC is a subsidiary of UBS AG.


ment, including any failure to complete any services covered by this Agreement and (e) be paid all amounts withheld pursuant to any order of the Bankruptcy Court. Sections 1 (the second to last paragraph), 2 (the second to last paragraph), 3, 4 (other than the first sentence thereof) and 5 through 13 hereof shall remain in full force and effect regardless of such termination. Notwithstanding any such termination described above, UBS shall be entitled to payment in full of the Restructuring Transaction Fee set forth in Section 2(b) if at any time during the Term and for 18 months after the Term, a Restructuring Transaction is consummated or creditors of the Company agree to a plan of reorganization or the Company files a plan of reorganization or enters into a letter of intent or any agreement that subsequently results in a Restructuring Transaction.

6.    UBS may, at its own expense and after review of the announcement by the Company, place customary tombstone announcements or advertisements in financial newspapers and journals describing its services hereunder, at any time after the earlier of the date: (a) a Restructuring Transaction has been consummated; or (b) the Company becomes a debtor under Chapter 11 of the Bankruptcy Code.

7.    If the Company or any entity comprising part of the Company becomes a debtor in a case under Chapter 11 of the Bankruptcy Code during the Term, the Company will (if UBS requests) use commercially reasonable efforts to obtain a Bankruptcy Court order pursuant to Section 328(a) of the Bankruptcy Code authorizing the Company to retain UBS (the "Retention Order"), to compensate UBS for its services, including the payment of the Restructuring Transaction Fee and reimbursement of UBS' expenses, and to provide indemnification rights to UBS, and other provisions as provided in this Agreement. Additionally, the Company will use commercially reasonable efforts to obtain a carveout of any prepetition or postpetition liens and/or security interests (the "Cash Collateral Carveout") for the UBS Fees in any Bankruptcy Court order authorizing the Company's use of cash collateral. If the Company does not obtain a Retention Order or Cash Collateral Carveout reasonably satisfactory to UBS and it is permitted by law, UBS shall not be required to serve as the Company's financial advisor during its Chapter 11 case. The Company shall not object to a claim by UBS for any fees earned under the terms of this letter.

8.    The Company acknowledges and agrees that UBS has been retained to act solely as an advisor to the Company, and not as an advisor to any other person, and the Company's engagement of UBS is not intended to confer rights upon any person (including shareholders, employees or creditors of the Company) not a party hereto as against UBS or its affiliates, or their respective directors, officers, employees or agents, successors or assigns.

In rendering its services to the Company hereunder, UBS is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Restructuring Transaction. The Company agrees that UBS shall not have any obligation or responsibility to provide "crisis management" services for the Company or to provide any solvency or fairness opinion in connection with any Restructuring Transaction.

9.    UBS AG (the parent of UBS) and its subsidiaries, branches and affiliates (the "UBS Group") are involved in a wide range of commercial banking, investment banking and other activities (including investment management, corporate finance and securities issuing, trading and research)

A/74143594.7
636049.05-Los Angeles Server 1A - MSW



from which conflicting interests, or duties, may arise. Information which is held elsewhere within UBS or within the UBS Group but of which none of the individuals in the Investment Banking Department of UBS involved in providing the services contemplated by this engagement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining UBS' responsibilities to the Company under this engagement. Neither UBS nor any other part of the UBS Group will have any duty to disclose to the Company or utilize for the Company's benefit any non-public information acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, UBS and its affiliates may trade the securities of the Company and any potential party to a Restructuring Transaction for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities.

10. The Company agrees to the indemnification and other agreements set forth in the Indemnification Agreement attached hereto, the provisions of which are incorporated herein by reference and shall survive the termination, expiration or supersession of this Agreement.

11. THIS AGREEMENT AND ANY CLAIM, COUNTERCLAIM OR DISPUTE OF ANY KIND OR NATURE WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT ("CLAIM"), DIRECTLY OR INDIRECTLY, SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. EXCEPT AS SET FORTH BELOW, NO CLAIM MAY BE COMMENCED, PROSECUTED OR CONTINUED IN ANY COURT OTHER THAN IN COURTS OF THE STATE OF NEW YORK LOCATED IN THE CITY AND COUNTY OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (OR DURING THE PENDENCY OF THE REORGANIZATION CASE, THE BANKRUPTCY COURT), WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS, AND THE COMPANY AND UBS CONSENT TO THE JURISDICTION OF SUCH COURTS AND PERSONAL SERVICE WITH RESPECT THERETO. THE COMPANY HEREBY CONSENTS TO PERSONAL JURISDICTION, SERVICE AND VENUE IN ANY COURT IN WHICH ANY CLAIM ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT IS BROUGHT BY ANY THIRD PARTY AGAINST UBS OR ANY INDEMNIFIED PARTY. EACH OF UBS AND THE COMPANY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) IN ANY WAY ARISING OUT OF OR RELATING TO THIS AGREEMENT. THE COMPANY AGREES THAT A FINAL JUDGMENT IN ANY PROCEEDING OR COUNTERCLAIM BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON THE COMPANY AND MAY BE ENFORCED IN ANY OTHER COURTS TO THE JURISDICTION OF WHICH THE COMPANY IS OR MAY BE SUBJECT, BY SUIT UPON SUCH JUDGMENT.

12. This Agreement (including the attached Indemnification Agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings, including the Original Letter, relating to the subject matter hereof. If any provision of

A/74143594.7
636049.05-Los Angeles Server 1A - MSW

UBS Investment Bank is a business division of UBS AG.
UBS Securities LLC is a subsidiary of UBS AG.


this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect or any other provision of this Agreement, which will remain in full force and effect. This Agreement may not be amended or otherwise modified or waived except by an instrument in writing signed by both UBS and the Company. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same Agreement.

13. This Agreement shall be binding upon UBS and the Company and their respective successors and assigns and any successor or assign of any substantial portion of the Company's and UBS' respective businesses and/or assets. In the event that a Restructuring Transaction is effected through an entity other than the Company, then the Company shall cause such entity to assume and honor, jointly and severally with the Company, the obligations and liabilities of the Company hereunder, including, without limitation, the Company's obligations and liabilities pursuant to provisions concerning indemnification, contribution and the Company's obligation to pay fees and to reimburse expenses contained herein and in the attached Indemnification Agreement.

UBS Investment Bank is a business division of UBS AG.
UBS Securities LLC is a subsidiary of UBS AG.



If the foregoing correctly sets forth our understanding, please indicate your acceptance thereof in the space provided below, whereupon this Agreement and your acceptance shall constitute a binding agreement between us.

Very truly yours,

UBS SECURITIES LLC

By: _____
     Steven D. Smith
     Managing Director

By: _____
     David Dolezal
     Managing Director

Accepted and agreed to as of
the date first above written:

Evergreen Solar, Inc.

By: _____
     Michael El-Hillow
     Chief Executive Officer

Company Signature Date: 7/25/11

UBS Investment Bank is a business division of UBS AG.
UBS Securities LLC is a subsidiary of UBS AG.



## Annex A
### (Outstanding Liabilities)

1. 13.0% Senior Secured Convertible Notes due 2015 ($165.0 million aggregate principal amount)

2. 4.0% Senior Convertible Notes due 2013 ($203.8 million aggregate principal amount)

3. 4.0% Subordinated Convertible Notes due 2020 ($12.6 million aggregate principal amount)

**UBS Investment Bank is a business division of UBS AG.**
**UBS Securities LLC is a subsidiary of UBS AG.**



## UBS SECURITIES LLC INDEMNIFICATION AGREEMENT

July 18, 2011

Private and Confidential

UBS Securities LLC
299 Park Avenue
New York, New York  10171

Ladies and Gentlemen:

In connection with the engagement of UBS Securities LLC ("UBS") to advise and assist the undersigned (together with its affiliates and subsidiaries, referred to as the "Company") with the matters set forth in the Agreement, dated June 10, 2011, between the Company and UBS (the "Agreement"), in the event that UBS becomes involved in any capacity in any claim, suit, action, proceeding, investigation or inquiry (including, without limitation, any shareholder or derivative action or arbitration proceeding) (collectively, a "Proceeding") (i) in connection with or arising out of any untrue statement or alleged untrue statement of a material fact contained in any information provided to any prospective transaction parties by or on behalf of the Company (which shall be deemed to include the Company's public filings) or any omission or alleged omission to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading or (ii) otherwise in connection with any matter in any way relating to or referred to in the Agreement or arising out of the matters contemplated by the Agreement, including, without limitation, related services and activities provided prior to the Effective Date of the Agreement, the Company agrees to indemnify, defend and hold UBS harmless to the fullest extent permitted by law, from and against any losses, claims, damages, liabilities and expenses in connection with any matter in any way relating to or referred to in the Agreement or arising out of the matters contemplated by the Agreement, including, without limitation, related services and activities provided prior to the Effective Date of the Agreement, except in the case of clause (ii) above only, to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review that such losses, claims, damages, liabilities and expenses resulted primarily from the gross negligence or willful misconduct of UBS (including the gross negligence or willful misconduct of any UBS party entitled to indemnification hereunder). In addition, in the event that UBS becomes involved in any capacity in any Proceeding in connection with any matter in any way relating to or referred to in the Agreement or arising out of the matters contemplated by the Agreement, the Company will reimburse UBS for its reasonable legal and other expenses (including the cost of any investigation and preparation) as such expenses are incurred by UBS in connection therewith. If such indemnification were not to be available for any reason, the Company agrees to contribute to the losses, claims, damages, liabilities and expenses involved (i) in the proportion appropriate to reflect the relative benefits received or sought to be received by the Company and its stockholders and affiliates and other constituencies, on the one hand, and UBS, on the other hand, in connection with

UBS Investment Bank is a business division of UBS AG.
UBS Securities LLC is a subsidiary of UBS AG.



**UBS** Investment
Bank

**UBS Securities LLC**
299 Park Avenue
New York, NY 10171

www.ubs.com

-11-

the matters contemplated by the Agreement or (ii) if (but only if and to the extent) the allocation provided for in clause (i) is for any reason held unenforceable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company and its stockholders and affiliates and other constituencies, on the one hand, and the party entitled to contribution, on the other hand, as well as any other relevant equitable considerations. The Company agrees that for the purposes of this paragraph the relative benefits received, or sought to be received, by the Company and its stockholders and affiliates and other constituencies, on the one hand, and the party entitled to contribution, on the other hand, in connection with the matters contemplated by the Agreement shall be deemed to be in the same proportion that the total value received or paid or contemplated to be received or paid by the Company or its stockholders or affiliates and other constituencies, as the case may be, as a result of or in connection with the matters (whether or not consummated) for which UBS has been retained to perform financial services bears to the fees paid to UBS under the Agreement; provided that, in no event shall the Company contribute less than the amount necessary to assure that UBS is not liable for losses, claims, damages, liabilities and expenses in excess of the amount of fees actually received by UBS pursuant to the Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or its employees or other agents), on the one hand, or by UBS, on the other hand. The Company will not settle any Proceeding in respect of which indemnity may be sought hereunder, whether or not UBS is an actual or potential party to such Proceeding, without UBS' prior written consent, which may not be unreasonably withheld, delayed or conditioned). For purposes of this Indemnification Agreement, UBS shall include UBS Securities LLC, any of its affiliates, each other person, if any, controlling UBS or any of its affiliates, their respective officers, current and former directors, employees and agents, and the successors and assigns of all of the foregoing persons. The foregoing indemnity and contribution agreement shall be in addition to any rights that any indemnified party may have at common law or otherwise.

The Company agrees that neither UBS nor any of its affiliates, directors, agents, employees or controlling persons shall have any liability to the Company or any person asserting claims on behalf of or in right of the Company in connection with or as a result of either UBS' engagement under the Agreement or any matter referred to in the Agreement, including, without limitation, related services and activities provided prior to the Effective Date of the Agreement, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review that any losses, claims, damages, liabilities or expenses incurred by the Company resulted primarily from the gross negligence or willful misconduct of UBS (including the gross negligence or willful misconduct of any UBS party entitled to indemnification hereunder) in performing the services that are the subject of the Agreement.

Promptly after its receipt of notice of the commencement of any Proceeding, UBS will, if a claim in respect thereof is to be made against it pursuant to the Agreement, notify the Company in writing of the commencement thereof; but omission so to notify the Company will not relieve the Company from any liability that the Company may have to UBS, except its obligation to indemnify for losses, claims, damages, liabilities or expenses to the extent that the Company suffers substantial prejudice as a result of such failure or delay, as determined by a court of competent jurisdiction in a

**UBS Investment Bank is a business group of UBS AG.**
**UBS Securities LLC is a subsidiary of UBS AG.**



judgment that has become final in that it is no longer subject to appeal or other review, but will not relieve the Company from its obligation to provide reimbursement of expenses and any liability that the Company may have to UBS otherwise than under this agreement. If the Company so elects, the Company may assume the defense of such Proceeding in a timely manner, including the employment of counsel (reasonably satisfactory to UBS) and payment of expenses, provided, that the Company permits UBS and counsel retained by UBS at its own expense to participate in such defense. Notwithstanding the foregoing, (i) in the event the Company fails promptly to assume the defense and employ counsel reasonably satisfactory to UBS, UBS may employ separate counsel (in addition to any local counsel) to represent or defend UBS in such Proceeding, and the Company will pay the reasonable fees and disbursements of such separate counsel as incurred, and (ii) unless otherwise agreed by UBS, the Company shall not be entitled to assume the defense of any Proceeding (X) for which UBS reasonably determines, after receipt of advice of counsel, that there exist actual or potential conflicting interests between the Company or its counsel and UBS, or (Y) that is commenced in connection with any Chapter 11 or similar proceedings involving the Company; provided, however, that the Company will not, in connection with any one such Proceeding, or separate but substantially similar Proceedings arising out of the same general allegations, be liable for reasonable fees and expenses of more than one separate firm of attorneys (in addition to any local counsel).

THIS INDEMNIFICATION AGREEMENT AND ANY CLAIM, COUNTERCLAIM OR DISPUTE OF ANY KIND OR NATURE WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT ("CLAIM"), DIRECTLY OR INDIRECTLY, SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. EXCEPT AS SET FORTH BELOW, NO CLAIM MAY BE COMMENCED, PROSECUTED OR CONTINUED IN ANY COURT OTHER THAN THE COURTS OF THE STATE OF NEW YORK LOCATED IN THE CITY AND COUNTY OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (OR DURING THE PENDENCY OF THE REORGANIZATION CASE, THE BANKRUPTCY COURT), WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS, AND THE COMPANY AND UBS CONSENT TO THE JURISDICTION OF SUCH COURTS AND PERSONAL SERVICE WITH RESPECT THERETO. THE COMPANY HEREBY CONSENTS TO PERSONAL JURISDICTION, SERVICE AND VENUE IN ANY COURT IN WHICH ANY CLAIM ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT IS BROUGHT BY ANY THIRD PARTY AGAINST UBS OR ANY INDEMNIFIED PARTY. EACH OF UBS AND THE COMPANY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING OR CLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT. THE COMPANY AGREES THAT A FINAL JUDGMENT IN ANY PROCEEDING OR CLAIM ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON THE COMPANY AND MAY BE ENFORCED IN ANY OTHER COURTS TO THE JURISDICTION OF WHICH THE COMPANY IS OR MAY BE SUBJECT, BY SUIT UPON SUCH JUDGMENT.

UBS Investment Bank is a business division of UBS AG.
UBS Securities LLC is a subsidiary of UBS AG.

 **UBS**

The foregoing Indemnification Agreement shall remain in full force and effect notwithstanding any termination of UBS' engagement. This Indemnification Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.

Very truly yours,

Evergreen Solar, Inc.

By: _Michael El-Hillow_

Michael El-Hillow
Chief Executive Officer

Accepted and agreed to as of
the date first above written:

UBS SECURITIES LLC

By: _____
David Dolezal
Managing Director

By: _____
Steven D. Smith
Managing Director

UBS Investment Bank is a business division of UBS AG.
UBS Securities LLC is a subsidiary of UBS AG.

**Exhibit 2**

**Debtor**

Evergreen Solar, Inc.

**Affiliates/Subsidiaries/JV Partners**

Evergreen Solar (China) Co., Ltd.
Evergreen Solar GmbH
Jiawei Solar China Co., Ltd.
Sovello AG
Hubei Evergreen Solar Co., Ltd
Evergreen Solar Securities Corporation
Evergreen Solar (HK) China Limited
Ding Kongzian
Dynamic Green Energy Limited
EverQ GmbH
Hubei Science & Technology Investment
    Co., Ltd
Jiawei Solar (Wuhan) Co., Ltd.
Jiawei Solarchina Co., Ltd.
JW Solar Holding Co. Ltd.
Wuhan East Lake Hi-Tech Development
    Zone
Wuhan Donghu New Technology
    Development Zone Management
    Committee

**Directors and Officers**

Mark A. Farber
Richard G. Chleboski
Dr. Jack I. Hanoka
John J. McCaffrey, Jr
Dr. Rex A. D'Agostino
Richard M. Feldt
Dr. Brown F. Williams
Gary T. Pollard
Dr. J. Terry Bailey
Donald M. Muir
Michael El-Hillow
Rodolfo Archbold
Carl Stegerwald
Dr. Lawrence Felton
Christian M. Ehrbar
Ng Yeok Chan (Henry)
Peter Rusch

Daniel P. Russell
Ian Gregory
Donald W. Reilly
Paul Kawa
Mark L. Fidler
Scott T. Gish
Dr. Robert W. Shaw, Jr.
Dr. Gordon B. Baty
William C. Osborn
Dr. William P. Sommers
Dr. Brown F. Williams
Mark A. Farber
Richard G. Chleboski
Mason Willrich
Richard M. Feldt
Luc Charron
Phillip J. Deutch
Charles J. McDermott
Timothy Woodward
Michael El-Hillow
Dr. Gerald L. Wilson
Allan H. Cohen
Edward C. Grady
Tom L. Cadwell
Dr. Peter W. Cowden
Dr. Susan F. Tierney

**Secured Creditors/Lienholders**

Caterpillar Financial Services Corporation
Hubei Science & Technology Investment
Co. Ltd.

**Indenture Trustee**

U.S. Bank, National Association

**Noteholders**

Aristeia Capital LLC
Bank of America Merrill Lynch
Bank of Butterfield Bermuda
Barclays Capital
Bison Technlogies
Brown Brothers Harriman Client(s)
CNH Partners LLC

Columbia University Fund
Credit Suisse Securities
Deutsche Bank Investment Management, Inc.
Deutsche Bank Securities, Inc.
Dialectic Capital Management LLC
Dunham Holdings
DuPont Pension Fund
Fideuram Gestions SA
Fidelity Management & Research
Geode Capital Management LLC
GLG Partners
Goldman Sachs & Co.
IAM Mini-Fund
IFC Acquisition Group
Individual Customers of First Clearing LLC
John H. Lee Compass Bank
Kamunting Street Capital Management LP
Lazard Asset Management LLC
Lehman Brothers
Lighthouse Investment Partners
Navina Capital
Northern Trust Co.
Northwestern Mutual Life Insurance
Nuveen Asset Management
Orchard Hill Capital Management
Palo Alto Investors LLC
Pandora Select Partners
Pine River Capital Management
PNC Bank
Radcliffe Capital Management LP
State Street Investment
Susquehanna Investment Group (Heights)
Tenor Capital Management Co. LP
The Marva L. Griffith Living Trust
The Retrovest LLC
Trendline Capital
Trishield Capital Management
Trondheim Capital Partners
UBS Securities
Waterstone Asset Management LLC
Whitebox Advisors LLC
Wolverine Asset Management

## Equity/Warrant Holders

Vanguard Group, Inc.
BlackRock Institutional Trust Company, N.A.
Brigade Capital Management, LLC
State Street Global Advisors (US)
Shinko Asset Management Co., Ltd.
OCI Company Ltd.
Columbia Management Investment Advisers, LLC
Rydex Security Global Investors, LLC
California Public Employees' Retirement System
Northern Trust Investments, N.A.
DC Chemical Co., LTD

## Litigation Opponents

Kuka Systems GmbH
Sun & Kim Co., Ltd.
Duk Soo Kim
Lehman Brothers International (Europe)
Lehman Brothers Holdings Inc.
Lehman Brothers Inc.
Barclays Capital Inc.
Uy P. Ear
John Kari

## Professionals

Bello, Black & Welsh
Bingham McCutchen LLP
Ernst & Young
Hogan Lovells
Marsh USA Inc.
Middleton & Shrull
Noble & Wickersham
O'Connor, Carnathan and Mack, LLC
Pachulski Stang Ziehl & Jones LLP
PricewaterhouseCoopers
Quarles & Brady LLP
Sunstein
Taylor Wessing
TransAsia Lawyers
UBS

## Tax Authorities and Government Agencies

Commonwealth of Massachusetts
Internal Revenue Service
Massachusetts Development Finance
    Agency
Massachusetts Technology Park Corporation

## Landlords

Marlboro Equity Partners, LLC
Microbac Laboratories, Inc.
One Hundred Twenty Bartlett Street
    Marlborough LLC

## Other Contract Counterparties

Array Converter, Inc.
Capaccio Environmental Engineering, Inc.
CRT Capital Group LLC
E.J. du Pont de Nemours and Company
EBI Consulting
Energy Research Centre of the Netherlands
EnviroBusiness, Inc.
Georgia Tech Research Corporation
Innovalight, Inc.
Mazars Business Advisory Services SpA
Piper Jaffray & Co.
Q-Cells SE
Renewable Energy Corporation ASA
Rolling Hills S.a.r.l
Silicon Valley Bank
SmartSpark Energy Systems, Inc.
Tisics, Ltd.
University of Kentucky Research
    Foundation

## Insurers

ACE American Insurance Company
AXIS Insurance Company
Carolina Casualty Insurance Company
Everest National Insurance Company
Hanover Insurance Company
Hartford Fire Insurance Company
Hartford Insurance
Massachusetts Employers Ins Co
National Union Fire Insurance Co
Old Republic Insurance Company
Ping An Property & Casualty Ins Company
XL Specialty Insurance Company

## Customers

Sun Electronics
AEE Solar
Alternative Energy Store
Solar Depot, Inc.
Ralos Solar GmbH
Donauer Solar Systems Portugal Ltd.
Jiawei Solar China Co., Ltd.
PowerLight Corporation
Wagner & Co. Solartechnik GmbH
REC Solar
SANI-CV-IMPORT s.p.r.l.
Donauer Solartechnik Vertriebs GmbH
PowerSmart Ltd.
Soleil.energie. SAS
Solar City
IBC Solar AG
Ecojoule Srl - Energia Sostenibile
Alteris Renewables, Inc.
Elektro Meyer Steyerberg GmbH
SureTemp Manufacturing Co., LLC
Mercury Solar Systems
SolarFrameWorks
Nexamp, Inc.
Lighthouse Electrical Contracting,
Sun & Kim Co., Ltd
Sunlight Solar Energy, Inc.
Renewable Sales, LLC
The Green Panel, Inc
Sun City Energy Systems Ltd.
NWT a.s.
Manak Engineering Services
Energetik Solartechnologie-Vertrieb
Team hallenbau GmbH & Co KG
Solar-Deals.com, Inc.
SunWize Technologies, Inc.
ESC - Europe Solar Concept

Jiawei Solar (Wuhan) Co., Inc.
addisol AG
PV-Distribution SAS
Karlan Group
Munro Distributing Energy Dept.
Metal and Enamel Industry Ltd.
Icil S.r.l.
DC Power Systems
Iren Rinnovabili S.r.l.
Warshauer Electric Supply Inc
PV-Distribution GmbH
George Knight
STSolar
De Sarlo Installazioni
Wagner Solar S.L.
Impianti Leonardo
Horizon Silicon, Inc.
Dagle Electric
SUNation Solar Systems, Inc
Targray Technology International
altPower Inc
Technoloje S.A.
IBC solar SAS (France)
EcoWatt
Targray CZR S.R.O.
Pleion s.r.l.
Wagner & Co Solar Italia s.r.l.
Know Your Planet
KLIXX SOLAR IBERIA S.L
Afghan Wind and Solar
Renewable Analytics LLC
Alexander F. Keally
Globalitaly S.r.l.
Nicolle Wundrich
Glubi  Lda
groSolar
Sun Farm Network
PV5 Solarconcept GmbH
S.A.G. Solarstrom Vertriebs GmbH
Goldbeck Solar GmbH
Targray
Stellar Energy Systems
EWS GmbH & Co. KG
Affordable Solar Group LLC
Solar Design Associates
SunEnergy Europe GmbH

480V Solar
Mass. Municipal Wholesale Electric
Allied Building Products Corp.
Cotuit Solar
ENERSA
Everbright Solar Inc.
SolarFlair Energy, Inc.
Zapotec Energy, Inc.
Jiawei Solar (Wuhan) Co., Ltd.
Alexandra Logan
Constellation Energy
FABIK Group s.r.o.
Ameresco Solar
Universal Solar
NOA TECH Co., Ltd.
Zviad Khechuashvili
Enerdrive Pty Ltd
Glory Fit Ltd
J. Miller Sales
Agrupacion Solar Los Caleñares
Massachusetts Electric Company
Trimo
Moss Hollow Solar, LLC
Renergy Area S.L.
SunEnergy1
Elektro Engelhardt
GENERA d.o.o.
Neumann Gebäudeservice GmbH
SOLAR TECH INC
X Co Partners
FOTOVOLTAICA IBC S.A.
Panel Claw, LLC
AllEarth Renewables, Inc.
University of Kentucky
Sun East Electronic Technology
Krannich Solar GmbH & Co. KG
Parker Products
Mathis Solatech GmbH
AEM
Carmanah Technologies Corp
Johnson Square Builders LLC
SunEdison LLC
juwi solar GmbH
Woojin Electric Machinery Co., Ltd.
Clean Energy Design
Grenada Solar Power Ltd.

Borrego Solar Systems, Inc.
IBEW
Itochu Corporation
Solar Eco Power LLC
Phil Kopitske
DutchSolar BV
Rofin-Baasel Inc.
Water Buoy Pumps
Renewpowers Technologies Pte Ltd
Saint-Gobain Sekurit Deutschland Gm
Solar Solutions and Distribution, L
Sojitz Pla-Net Corporation
Fuchs Wohnbau AG
G. Systems Ltd.
US Solar & Wind Distribution
Broadway Electrical Co., Inc.
Cleco Manufacturing
Conergy
Solar Energie Andresen GmbH
Solect Energy Development, LLC
SolARenner GmbH

## Vendors

Jiawei Solar (Wuhan)Co., Ltd
OCI Company LTD
Lazard Capital Marketing
Evergreen Solar (China) Co, Ltd.
KUKA Systems Gmbh
Hubei Evergreen Solar Co., Ltd
Pachulski Stang Ziehl + Jones LLP
AFCO
CH2m Hill Ind. Design & Const Inc
Hamamatsu Corporation
C.A. Senecal Electrical Serv.,Inc.
Lightower Fiber Networks
Yula Corporation
A&M Construction Company, Inc.
Scanlab AG
Smartech International LP
Applied Materials, Inc.
Advanced Technolgy Solutions, LLC
CDI Corporation
Alecto Systems, LLC.
Townsend Welding Co., Inc.
SalesForce.com

Capgemini US LLC
Thieme Corporation
VWR International
Western Int'l Gas & Cylinders, Inc.
ABM Janitorial Serv. SVCS Neast Inc
TUV Immission schutz
SCI Engineered Materials
Atlantic Plant Maintenance,Inc
Sodexo Operations, LLC
Elevate Communications Inc.
Uniclean Cleanroom Services
Rand Whitney Packaging Corp
Bello,Black & Welsh LLP
RDK Engineers
ENF LTD
K&D Industries, Inc
Corrosion Fluid Products Corp.
Praxair Inc.
Swiss Jewel Company
Phenom-World NA, Inc.
L.P. Larsen Corporation
TaylorWessing
Cambron Engineering, Inc.
Automation Solutions Atlantic
Grinnell Mechanical Inc.
Winter Technologies, LLC
Rubric, Inc.
MAP Mechanical Contractors, Inc.
J.R. Campbell & Assoc, Inc-CryoGas
Alexander Keally
Champion Logistics Group
Kendall Electric, Inc.
R.R. Donnelley
ATS Automated Tooling Systems
CIT Technology Financing Serv,Inc.
Wyse Glass Specialties, Inc.
Noble & Wickersham LLP
Aztech Controls
Midland Chemical
Orion Industries
Advantage Technical Resourcing Inc.
Identco International
Midland Valve & Fitting Co.
Omni Glass
Environmental Resources Mgmt , Inc.
Boyd Converting Company, Inc.

Terryberry
American Alarm & Communications,In
AmericanStockTransfer&TrustCompany
Young Supply Co.
Nail Communications, Inc.
Ryder Transportation Services
Titan Equipment Services, Inc.
R.B. Allen Co.,Inc.
Jody Derick
Atlas Box & Crating Company, Inc.
Ariel Design
Intertek Testing Services NA, Inc
Rosedale Products, Inc.
O'Connor Carnathan and Mack LLC
DHL Global Forwarding
Presidio Technology Capital,LLC
BBS Technologies, Inc.
Techprint Incorporated
Cintas Corp
Grainger
IMS 2000 Building Maintenance, Inc.
ABCO Welding Supply
Exotic Automation & Supply Co.
Honeywell Analytics Inc.
Electronic Environments Corp.
F.W. Webb Company
McMaster-Carr
Monnick Supply
R.I.Analytical Labs
PC Connection Sales Corporation
Columbia Pipe & Supply Co.
Benefit Concepts, Inc.
Technical Consult & Software, LLC
Safety Systems, Inc.
Air Products and Chemicals,Inc
Iron Mountain Information Mngmt
The Safety Equipment Store
Sovello AG
Matheson Tri-Gas, Inc.
Specialty Materials Inc.
Unifirst Corporation
G.V. Moore Lumber Co.
Trade Technologies, Inc.
Staples Business Advantage
ABC Fastener Group Inc.
Northeast Air Solutions, Inc.

ICIMS.Com, Inc.
Mahar Tool Supply Co, Inc.
Boston Bean Coffee Co.
Covenant Healthcare
3i Supply Company
Shred-it Providence
Airgas East Inc.
Federal Express Corporation
Expose' Signs & Graphics, Inc.
Eagle Leasing Company
Hiwatt Inc.
Q-Lab Corporation
Hi-Tech Optical, Inc.
Industrial Protection Prod. Inc.
SWECO, a Business Unit of MI-LLC
United Refrigeration Inc.
Xiang Dai
Crown Equipment Corp.
Doe & Ingalls, Inc.
Key Equipment Finance
VSP (Vision Service Plan)
Sieghard Schiller Gmbh + Co
Alexander Chemical Corporation
Expeditors N.V.
Wacker Chemie AG

**Top 20 Largest Unsecured Creditors:**

US Bank
Jiawei Solar (Wuhan) Co., Ltd
MassDevelopment
Lazard Capital Markets
OCI Company LTD
TUV Immission Schutz
CH2m Hill Ind. Design & Construction Inc.
Nationalgrid
Praxair Inc.
Global Telecom & Tech Americas Inc.
Consumers Energy
Bruel & Kjaer North America Inc.
Atlantic Plant Maintenance, Inc.
PC Connection Sales Corporation
Lightower Fiber Networks
NC State University
Capgemini US LLC
Magnum Construction Company Inc.
CDI Corporation