# **Exhibit A**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EVERGREEN SOLAR, INC.,[1] | ) | Case No. 11-12590 (MFW) |
| | ) | |
| Debtor. | ) | |

## ORDER: (A) AUTHORIZING DEBTOR'S ENTRY INTO ASSET PURCHASE AGREEMENT; (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES AND TRANSACTION EXPENSE REIMBURSEMENT; (C) APPROVING THE NOTICE PROCEDURES AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES; AND (D) SETTING A DATE FOR THE SALE HEARING

Upon the motion [D. I. 13] (the "Motion")[2] of Evergreen Solar, Inc., as debtor and

debtor in possession (the "Debtor"), for entry of orders under Bankruptcy Code sections 105, 363

and 365, Bankruptcy Rules 2002, 6004, 6006, and 9014 and Local Rule 6004-1: (i)(a)

authorizing Debtor's entry into that certain asset sale agreement dated as of August 15, 2011

among the Debtor and ES Purchaser LLC ("Newco" or the "Proposed Purchaser") as purchaser

for the sale of substantially all of the assets of the Debtor (the "Purchased Assets") as a

"stalking-horse" sale agreement (as appended to the Motion as Exhibit A, the "Asset Purchase

Agreement"), (b) authorizing and approving the bidding procedures (as appended hereto as

Schedule 1, the "Bidding Procedures"), (c) approving the form and manner of sale notice (the

"Notice Procedures") and the Assumption and Assignment Procedures as set forth in the Motion

for the assumption and assignment of certain executory contracts (the "Assumed and Assigned

Contracts"), and (e) setting the time, date and place for a hearing to consider the sale of the

---

[1]     The last four digits of the Debtor's federal tax identification number are 2254. The Debtor's mailing address is 138 Bartlett Street, Marlboro, MA 01752.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Asset Purchase Agreement (as defined herein).

Purchased Assets and the assumption and assignment of the Assumed and Assigned Contracts (the "Sale Hearing"); (ii) authorizing and approving (a) the sale of the Purchased Assets free and clear of all liens, claims and encumbrances, pursuant to section 363 of the Bankruptcy Code, except as set forth in the Asset Purchase Agreement, and (B) the assumption and assignment of the Assumed and Assigned Contracts; and (III) granting such other and further relief as the Court deems just and proper; and the Court having reviewed the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A.    The court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 157 and 1334.

B.    Venue of this case and the Motion in this district is proper under 28 U.S.C. § 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.    The statutory and legal predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rule 6004-1.

D.    In the Motion and at the hearing on the Motion, the Debtor articulated and exercised good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. *See* Fed. R. Bankr. P. 7052.

granted by this Order has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b).

E.     The Debtor's proposed sale notice, substantially in the form attached to the Motion as Exhibit E (the "Sale Notice") and the Debtor's proposed publication notice, substantially in the form attached to the Motion as Exhibit G (the "Publication Notice"), are each appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction (if necessary), the Sale Hearing, and any and all objection deadlines and no other or further notice is required.

F.     The Bidding Procedures, in the form attached hereto as Schedule 1, are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the sale of the Purchased Assets by the Debtor's estate.

G.     Under the circumstances, timing, and procedures set forth herein, in the Motion and in the Asset Purchase Agreement, the Debtor has demonstrated compelling and sound business justifications for entry into the Asset Purchase Agreement and its terms, including the associated Transaction Expenses.

H.     The Asset Purchase Agreement and its terms, including the associated Transaction Expenses, were: (i) negotiated by the Debtor and the Supporting Noteholders, on behalf of NewCo, in good faith and at arms-length; (ii) are reasonable and appropriate given, among other things, the size and nature of the transaction and the efforts that have been expended and will continue to be expended by the Supporting Noteholders; and (iii) are material inducement for, and a condition of, the Proposed Purchaser's entry into the Asset Purchase Agreement. The Transaction Expenses are commensurate with the real and substantial post-petition benefits conferred upon the Debtor's estate by the Proposed Purchaser and constitutes

3

actual and necessary costs and expenses incurred by the Debtor in preserving the value of its estate within the meaning of section 503(b) of the Bankruptcy Code

      I.       Entry into the Asset Purchase Agreement with the Proposed Purchaser as a "stalking-horse" sale agreement is in the best interest of the Debtor and the Debtor's estate and creditors and, based on the information set forth in the Motion and presented to the Court, it is an exercise of the Debtor's business judgment. The Asset Purchase Agreement will enable the Debtor to secure an adequate floor for the Auction and will provide a clear benefit to the Debtor's estate, its creditors, interest holders and all other parties in interest.

      J.       The Assumption and Assignment Procedures, including notice of proposed Cure Amounts, are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The procedures have been tailored to provide adequate opportunity for all non-Debtor counterparties to the Assumed and Assigned Contracts to raise any objections to the proposed assumption and assignment or to Cure Amounts.

      K.      The entry of this Order is in the best interests of the Debtor and its estate, creditors, and interest holders and all other parties in interest herein; and it is therefore

      **ORDERED, ADJUDGED AND DECREED THAT:**

      1.       Those portions of the Motion seeking approval of the Debtor's entry into the Asset Purchase Agreement and all of its terms (including the Transaction Expenses, provided, however, that the Transaction Expenses shall be subject to a cap of $1 million dollars), the Bidding Procedures, the Notice Procedures, the Assumption and Assignment Procedures, setting the time, date and place of the Sale Hearing, and establishing the process for objecting, as necessary, to each of the foregoing are GRANTED.

A/74506674.2

2.     All objections, if any, to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.     The form of the Asset Purchase Agreement[4] (which may be downloaded at http://dm.epiq11.com/Evergreen or obtained from counsel to the Debtor upon written request to Scott K. Seamon at scott.seamon@bingham.com), is hereby approved and is appropriate and reasonably calculated to enable the Debtor and other parties in interest to easily compare and contrast the differing terms of the bids presented at the Auction.

4.     Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest, including, without limitation, the Debtor, the Supporting Noteholders, the Indenture Trustee and the Proposed Purchaser, in this chapter 11 case.

## The Bidding Procedures

5.     The Bidding Procedures attached hereto as Exhibit 1 are hereby APPROVED. The failure to specifically include or reference any particular provision, section or article of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedure, it being the Court's intent that the Bidding Procedures be authorized and approved in their entirety, except as modified by paragraph 38 herein. The Debtor is hereby authorized to conduct a sale by auction of the Purchased Assets pursuant to the Bidding Procedures and the terms of this Order.

---

[4] As provided in the Bidding Procedures, the Debtor will post in the virtual data room one or more forms of asset purchase agreement (each a "Short Form APA") that will be substantially similar to the Asset Purchase Agreement, but with modifications appropriate for the purchase of such individual Lots without assets in other Assets.

6. The Proposed Purchaser shall be deemed a Qualified Bidder pursuant to the Bidding Procedures for all purposes.

7. The Bidding Procedures shall apply to the Qualified Bidders and the conduct of the sale of the Purchased Assets and the Auction.

## The Asset Purchase Agreement

8. Subject to the Bidding Procedures and approval of the sale at the Sale Hearing, the Debtor's entry into the Asset Purchase Agreement is hereby approved.

9. In no event shall the Debtor be responsible or liable for any losses or liabilities under the Asset Purchase Agreement that are consequential, in the nature of lost profits, diminution in the value of property, special or punitive, or otherwise not actual damages.

10. U.S. Bank National Association, as indenture trustee for the 13% Senior Secured Notes, is not a party to the Asset Purchase Agreement and other than with respect to the obligation to credit bid the obligations of the 13% Senior Secured Notes pursuant to section 3.1 of the Asset Purchase Agreement, shall have no obligations to the Debtor thereunder, except to reduce the amount of the allowed secured claim of the 13% Noteholders in the event that the credit bid is used to consummate the purchase of one or more Lots of the Purchased Assets.

## The Assumption and Assignment Procedures

11. The Assumption and Assignment Procedures as set forth in the Motion are hereby authorized, approved and made part of this Order as if fully set forth herein.

12. The Debtor's decision to assume and assign the Assumed and Assigned Contracts to the Prevailing Bidder(s) is subject to Court approval and the consummation of a sale of the Purchased Assets. Accordingly, absent the closing of such sale(s), the Assumed and Assigned Contracts shall not be deemed assumed or assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

6

13. The inclusion of a contract on an Assumption and Assignment Notice shall not constitute or be deemed a determination or admission by the Debtor, the Supporting Noteholders, Newco or any other party in interest that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

14. The Assumption and Assignment Procedures are appropriate and fair to all non-Debtor counterparties and comply in all respects with the Bankruptcy Code.

15. Pursuant to Bankruptcy Rule 6006(f)(6), the Court hereby authorizes the Debtor to file an omnibus motion incorporating the executory contracts to be assumed and assigned pursuant to section 365 of the Bankruptcy Code.

## Notice Procedures

16. The notices, in substantially the same form as annexed to the Motion as Exhibits E, F, and G of the Bidding Procedures, the Auction, the Sale Hearing, and the Assignment and Assumption Procedures, and the associated objection periods, are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Auction, Sale Hearing and the proposed assignment and assumption of the Assumed and Assigned Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and are hereby approved.

17. Immediately after entry of this Bidding Procedures Order (or as soon as reasonably practicable thereafter), the Debtor (or its agent or attorney) shall serve the Sale Notice, in substantially the form attached as Exhibit E to the Motion, by first-class mail, postage prepaid, upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to the Purchased Assets during the past nine (9) months, (ii) all entities reasonably known to have asserted any claim, lien, interest or encumbrance against the Debtor's right, title and

7

interest in the Purchased Assets, (iii) the attorneys general for all states in which Purchased Assets owned by the Debtor are located, all federal and state taxing authorities, including (without limitation) the Securities and Exchange Commission, the Environmental Protection Agency, state environmental protection agencies, the Internal Revenue Service, and the Department of Labor and similar state labor or employment agencies, (iv) all counterparties to the Assumed and Assigned Contracts (each a "Counterparty"), (v) all known or potential creditors of the Debtor and (vi) the general service list established in this chapter 11 case pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1.

18.     The Debtor also shall publish notice substantially in the form attached as Exhibit G to the Motion in  one or more widely read trade publications for the solar industry such as Renewable Energy Focus, Sun & Wind Energy, PV Magazine and Photon Magazine) and The Boston Globe within three (3) business days of entry of this Bidding Procedures Order or as soon as reasonably practicable thereafter.  Such publication conforms to the requirements of Bankruptcy Rules 1005, 2002(l), 2002(n) and 9008, and is reasonably calculated to provide notice to any affected party, including any potential bidders for the Purchased Assets, and afford the affected party the opportunity to exercise any rights affected by the Motion.

19.     The Assumption and Assignment Notice, in substantially the same form as annexed to the Motion as Exhibit F, is reasonably calculated to provide sufficient effective notice to all non-Debtor counterparties to Assumed and Assigned Contracts and any other affected parties of the Debtor's intent to assume and assign some or all of the Assumed and Assigned Contracts and to afford the non-Debtor counterparty to each Assumed and Assigned Contract the opportunity to exercise any rights affected by the Motion pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6006(c), and is hereby approved.  Each Assumption and Assignment

Notice shall set forth the following information: (i) the name and address of the Counterparty, (ii) notice of the proposed effective date of the assignment (subject to the Debtor's and the Proposed Purchaser's right to withdraw such request for assumption and assignment pursuant to the Asset Purchase Agreement and the Bidding Procedures), (iii) identification of the Assumed and Assigned Contract, (iv) the Cure Amount, (v) a description of the Proposed Purchaser and a statement as to the Proposed Purchaser's ability to perform the Debtor's obligations under the Assumed and Assigned Contracts, and (vi) the objection deadline.

20.     The Debtor (or its agent) shall serve the Assumption and Assignment Notice, in substantially the form attached as Exhibit F to the Motion on each counterparty pursuant to the Assumption and Assignment Procedures set forth in the Motion. Additionally, for Assumed and Assigned Contracts, the Debtor shall file with the Court a master notice of assignment of contracts that sets forth: (i) the name and address of each Counterparty, (ii) notice of the proposed effective date of each assignment (subject to the Debtor's and the Proposed Purchaser's right to withdraw such request for assumption and assignment pursuant to the Asset Purchase Agreement), (iii) a description of each Assumed and Assigned Contract, (iv) the Cure Amount, if any, and (vi) and the objection deadline.

## Objection Procedures

21.     Any party that seeks to object to the relief requested in the Motion pertaining to approval of the sale of the Purchased Assets, including (without limitation) the sale, assumption and assignment of the Assumed and Assigned Contracts, shall file a formal objection that complies with the objection procedures as set forth in the Motion. Each objection shall state the legal and factual basis of such objection. To the extent that any party to an Assumed and Assigned Contract does not timely file an objection to the Motion pursuant to the procedures set forth therein, such party shall be (i) deemed to have stipulated that the Cure Amount(s) set forth

9

in the Assumption and Assignment Notice as determined in good faith by the Debtor is correct, (ii) shall be forever barred, estopped and enjoined from asserting any additional Cure Amount under the Assumed and Assigned Contract(s), and (iii) will be forever barred from objecting to the assignment of the Assumed and Assigned Contracts to the Prevailing Bidder(s) or to the Prevailing Bidder(s) adequate assurance of future performance.

22.     If a timely objection to the assumption and assignment of an Assumed and Assigned Contract is received and such objection cannot be resolved by the parties, the Court will hear such objection at the Sale Hearing; provided, however, that the Debtor, in consultation with the Supporting Noteholders and the Prevailing Bidder(s), may continue such hearing to a subsequent hearing date. To the extent such hearing is not continued, the objecting non-Debtor counterparty to the Assumed and Assigned Contract(s) shall be prepared to present evidence to support its asserted Cure Amount at the Sale Hearing.

23.     An objection solely to the Cure Amount related to the assumption and assignment of an Assumed and Assigned Contract may not prevent or delay the Debtor's assumption and assignment of an Assumed and Assigned Contract. If a party objects solely to a Cure Amount, the Debtor may, with the consent of the Requisite Supporting Noteholders (as defined in the Motion), which consent shall not be unreasonably withheld, hold the claimed Cure Amount in reserve pending further order of the Court or mutual agreement of the parties. So long as the Debtor holds the claimed Cure Amount in reserve, and there are no other unresolved objections to assumption and assignment of the applicable Assumed and Assigned Contracts, the Debtor can, without further delay, assume and assign the Assumed and Assigned Contract that is the subject of the objection. Under such circumstances, the objecting non-Debtor counterparty's recourse is limited to the funds held in reserve.

24.     Any and all written objections as contemplated by this Order (including, without limitation, any objection to the assumption and assignment of any Assumed and Assigned Contract or the Cure Amount under any contract) must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Bankruptcy Court; and (e) served in accordance with the Local Rules so as to be received on or before the appropriate deadline as set forth in the Motion on the following: (a) Bingham McCutchen LLP, 399 Park Avenue, New York, NY 10022, Attn: Ronald. J. Silverman, Esq. (ronald.silverman@bingham.com), counsel to the Debtor; (b) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, NY 10036, Attn: Michael S. Stamer, Esq. (mstamer@akingump.com) and James Savin (jsavin@akingump.com), counsel to the Supporting Noteholders; (c) Maslon Edelman Borman & Brand, LLP, 3300 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402-4140, Attn: Clark T. Whitmore, Esq. (clark.whitmore@maslon.com), counsel to U.S. Bank National Association; (d) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036, Attn: Thomas Mayer, Esq. (tmayer@kramerlevin.com), counsel to the Committee; and (e) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Fax: (302) 573-6497.

25.     Failure to object to the relief requested in the Motion shall be deemed to be "consent" for purposes of section 363(f) of the Bankruptcy Code.

26.     All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as it pertains to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

## Other Relief Granted

27.     For the avoidance of doubt, third party bidders for the Purchased Assets may bid on Avoidance Actions (if any) against trade vendors.

28.     Except as otherwise provided in the Asset Purchase Agreement or this Bidding Procedures Order, the Debtor further reserves the right as it may reasonably determine to be in the best interest of the estate to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtor or its estate; (v) remove some of the Purchased Assets from the Auction; (vi) waive terms and conditions set forth herein with respect to all potential bidders; (vii) impose additional terms and conditions with respect to all Potential Bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale hearing in open court without further notice; and (x) modify the Bidding Procedures as the Debtor may determine to be in the best interest of the estate or to withdraw the Motion at any time with or without prejudice; provided, however; that the Debtor may take the actions in (v) –(x) above only with the consent of the Requisite Supporting Holders, which consent shall not be unreasonably withheld.

29.     Subject to the Debtor's compliance with its obligations to deliver a copy of any Qualified Bids to the Proposed Purchaser in accordance with the terms of paragraph 26 of the Asset Purchase Agreement, the Auction, if necessary, is scheduled for 10:00 a.m. (EDT) on November 1, 2011 at the offices of Bingham McCutchen LLP, 399 Park Avenue, New York, NY 10022. If no Qualified Bids, other than the Qualifying Bid submitted by the Proposed Purchaser,

are received by the Bid Deadline, then the Auction will not be held and the Debtor shall promptly seek Bankruptcy Court approval of the Asset Purchase Agreement.

30.    Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

31.    The Auction will be conducted openly; provided, however, that only Qualified Bidders will be allowed to submit bids for the Purchased Assets at the Auction.

32.    Bidding at the Auction shall be transcribed or videotaped.

33.    The Sale Hearing shall be held in this Court on November 4, 2011 at 9:30 a.m. (EDT), unless otherwise determined by the Court. The Sale Hearing may be adjourned or rescheduled by the Debtors, with the consent of the Requisite Supporting Noteholders, which consent shall not be unreasonably withheld, without further notice by an announcement of the adjourned date at the Sale Hearing or by the filing of a hearing agenda.

34.    The Debtor is authorized to conduct the Sale (as defined in the Bidding Procedures) without the necessity of complying with any state or local bulk transfer laws or requirements.

35.    In the event there is a conflict between this Order and the Motion or the Asset Purchase Agreement, this Order shall control and govern.

36.    This Court shall retain jurisdiction with respect to all matters arising or related to the implementation or interpretation of this Order.

37.    This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted. The Debtor is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in its

13

discretion and without further delay, take any action and perform any act authorized under this Order.

38.     The Debtor shall provide the Committee's professionals with a copy of each bid received from any party promptly after the Debtor's receipt thereof, and shall provide its log of parties contacted.  The Debtor and its professionals shall consult with the Committee's professionals over the marketing of Lot 3.  The Debtor shall not make any changes in the Bidding Procedures or agree to any changes in the Asset Purchase Agreement without previously consulting with the Committee's professionals.  The Debtor shall generally keep the Committee's professionals informed on a timely basis.  The Committee shall be entitled to seek relief from the Court if appropriate (in particular with respect to qualification of bidders or bids).

Dated: _____, 2011
          Wilmington, Delaware

                                        _____
                                        THE HONORABLE MARY F. WALRATH
                                        UNITED STATES BANKRUPTCY JUDGE

A/74506674.2

<u>Schedule 1</u>:

Bidding Procedures

# BIDDING PROCEDURES

Set forth below are the bid procedures (the "Bidding Procedures") to be employed by Evergreen Solar, Inc. (the "Debtor" or "Seller") in connection with that certain purchase agreement, dated August 15, 2011 between the Debtor and ES Purchaser, LLC, a Delaware limited liability company (the "Proposed Purchaser"), pursuant to which the Proposed Purchaser shall acquire all or substantially all of the Debtor's assets all on the terms and conditions specified therein (the "Asset Purchase Agreement").

**ANY PARTY INTERESTED IN BIDDING ON ANY OF THE DEBTOR'S ASSETS SHOULD CONTACT THE DEBTOR'S ADVISORS, AS FOLLOWS:**

**FOR LOT 1 AND LOT 3:**

**UBS INVESTMENT BANK:** Steve Smith (sd.smith@ubs.com, 212-821-5222) 299 Park Avenue, New York, NY 10171, or David Dolezal (david.dolezal@ubs.com, 415-352-6086), 555 California Street, San Francisco, CA 94104

**FOR LOT 2 AND LOT 4 (INCLUDING ANY OF THE INDIVIDUAL ASSETS IN LOTS 2 OR 4):**

**HILCO INDUSTRIAL, LLC:** Brian Lee (blee@hilcobid.com, 203-258-0927), 5 Revere Drive, Suite 206, Northbrook, IL 60062

1.    Assets to be Sold

The Debtor shall offer for sale all or substantially all of the property and assets (the "Asset Sale") of the Debtor's business as identified in further detail in the Asset Purchase Agreement (collectively the "Assets"). A list of the Assets will be posted in the virtual data room. As set forth below, bidders are invited to submit a bid for all of the Assets or, at the bidder's election, for specifically identified lots of Assets (the "Lots") or combinations of Lots that the bidder may desire. A list of the Lots that are available for individual bids or group bids is attached hereto as Exhibit A. The Debtor shall retain all rights to any Assets that are not part of a bid accepted by the Debtor, subject to the liens with respect to the Secured Notes.

2.    Participation Requirements

Any person that wishes to participate in the bidding process (each, a "Potential Bidder") must become a "Qualifying Bidder." As a prerequisite to becoming a Qualifying Bidder (and, thus, being able to conduct due diligence), a Potential Bidder:

> must deliver an executed confidentiality agreement in form and substance acceptable to the Debtor; and

> must be able, as reasonably determined by the Debtor, to consummate a transaction if selected as the successful bidder for some or all of the Assets.

The Proposed Purchaser is deemed a Qualifying Bidder and the Asset Purchase Agreement constitutes a Qualifying Bid (as defined below) for all purposes.

3.    Form of Agreement

The Asset Purchase Agreement is an offer to purchase all of the Assets. Bidders who intend to submit bids for all of the Assets should reference the Asset Purchase Agreement in connection with such bids. On or before September 16, 2011, for bidders who only intend to submit bids for one or more of the Lots representing the LBIE Claim, the Devens Assets, the Core Assets or the Non-Core Assets (each as defined on Exhibit A), the Debtor will post in the virtual data room one or more forms of asset purchase agreement (each a "Short Form APA") that will be substantially similar to the Asset Purchase Agreement, but with modifications appropriate for the purchase of such applicable Lots without the other Assets. As set forth in section 5 below, Bidders who intend to submit bids must include with their bids (i) one or more clean asset purchase agreement(s) that contains substantially the same or terms more favorable to the Debtor than those in the Asset Purchase Agreement or the Short Form APA, as applicable and (ii) marked modified asset purchase agreement(s) reflecting any variations from the Asset Purchase Agreement executed by the Proposed Purchaser or the Short Form APA, as applicable.

4.    Due Diligence

The Debtor must afford any Qualifying Bidder the time and opportunity to conduct reasonable due diligence. The due diligence period shall extend through and including the **Bid Deadline** (as defined below). The Debtor and its representatives shall not be obligated to furnish any due diligence information after the Bid Deadline.

Due diligence access may include such management presentations as may be scheduled by the Debtor, access to the virtual data room, and such other matters which a Qualifying Bidder may reasonably request and as to which the Debtor may agree. The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualifying Bidders. The Debtor may, in its sole discretion, coordinate diligence efforts such that multiple Qualifying Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations. Qualifying Bidders are advised to exercise their own discretion before relying on any information regarding the Assets provided by anyone other than the Debtor or its representatives.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to submitting its bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection with the bidding process outlined herein, except as expressly stated in the relevant purchase agreement of the Prevailing Bidder(s) (defined below) approved by the Bankruptcy Court.

A/74486126.1

5.    Bid Requirements

To be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder by a date no later than the Bid Deadline (as defined below) that:

(a)    sets forth the cash purchase price to be paid by such bidder (or in the case of the Proposed Purchaser, the credit bid amount);

(b)    does not propose payment in any form other than cash (or in the case of the Proposed Purchaser, a credit bid), provided, however, that a bid for the Core Assets in a consideration other than cash may be deemed a Qualifying Bid with the consent of the Supporting Noteholders (as defined in the Motion) holding a majority in aggregate principal amount of the Secured Notes held collectively by the Supporting Noteholders (the "Requisite Supporting Noteholders");

(c)    states the Lots proposed to be acquired and the liabilities proposed to be paid or assumed by such bidder, provided, however, that with respect to Lot 2 and Lot 4, the Debtor with the consent of the Requisite Supporting Noteholders (which consent will not be unreasonably withheld), may accept bids for the individual assets within Lot 2 and Lot 4;

(d)    is accompanied by a clean and duly executed purchase agreement (the "Modified Asset Purchase Agreement") and a marked Modified Asset Purchase Agreement reflecting any variations from the Asset Purchase Agreement executed by the Proposed Purchaser or the Short Form APA, as applicable;

(e)    states such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Modified Asset Purchase Agreement and provides written evidence in support thereof;

(f)    states such Qualifying Bidder's offer is irrevocable until the closing of the Asset Sale if such Qualifying Bidder is the Prevailing Bidder (as defined below) or the Second-Highest Bidder (as defined below) for any or all Lots;

(g)    contains such financial and other information to allow the Debtor to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Asset Purchase Agreement, including, without limitation, such financial and other information setting forth adequate assurance of future performance under contracts and leases to be assumed pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code") in a form requested by the Debtor to allow the Debtor to serve, within one (1) business day after such receipt, such information on counter-parties to any contracts or leases being assumed or assumed and assigned in connection with the proposed sale that have requested, in writing, such information;

3

(h)      identifies with particularity each and every executory contract and unexpired lease, the assumption and, as applicable, assignment of which is a condition to closing;

(i)      does not request or entitle such Qualifying Bidder to any break-up fee, expense reimbursement (other than the expense reimbursement that only the Proposed Purchaser is entitled to receive), or similar type of payment;

(j)      fully discloses the identity of each entity that will be bidding in the Asset Sale or otherwise participating in connection with such bid, and the complete terms of any such participation;

(k)      with respect to bids for all of the Lots, is likely to result in a value to the Debtor's estate in the Debtor's reasonable judgment, that is more than the aggregate of the value of the sum of: (i) the credit bid amount set forth in the Asset Purchase Agreement; plus (ii) the assumed liabilities, as identified in the Asset Purchase Agreement; plus (iii) $500,000;

(l)      (i) does not contain any financing contingencies of any kind; (ii) provides for expiration of any due diligence contingency on or before the Auction Date; and (iii) contains evidence that the Qualifying Bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to consummate the Asset Sale, which evidence is reasonably satisfactory to the Debtor;

(m)      sets forth each regulatory and third-party approval required for the bidder to consummate its purchase, and the time period within which the bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than 15 days following execution and delivery of an asset purchase agreement, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible),

(n)      includes a commitment to close on or before November 18, 2011 (the "Projected Closing Date") subject to any regulatory approvals;

(o)      provides for the Qualifying Bidder to serve as a back up bid (the "Second-Highest Bidder") if it is the next highest and best bid after the Prevailing Bid (the "Second-Highest Bid") in accordance with the terms of the Asset Purchase Agreement;

(p)      includes evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Modified Asset Purchase Agreement;

(q)      provides for liquidated damages in the event of the bidder's breach of contract equal to the deposit; and

4

(r)     provides a cash purchase deposit equal to ten percent (10%) of the purchase price contained in the Modified Asset Purchase Agreement; provided, however, that the Proposed Purchaser is not required to make a cash deposit.

A competing bid satisfying all the above requirements, as determined by the Debtor, after consultation with the Requisite Supporting Noteholders, as described below, shall constitute a Qualifying Bid. Each Potential Bidder submitting bid shall be deemed to acknowledge and represent that it is bound by these Bidding Procedures.

6.     Combination Bids

The Debtor reserves the right to auction off the Lots individually or in such combinations of Lots as the Debtor may determine, in consultation with the Requisite Supporting Noteholders. Bidders are invited to bid on the individual Lots or in such combinations of Lots as the bidder may elect, provided that any bid for a combination of Lots, other than the bid by the Proposed Purchaser, must (x) allocate the purchase consideration among the Lots, (y) state whether the bid is conditioned upon the bidder being the Prevailing Bidder (as defined herein) on more than one Lot and, if so, which are the Lots that the bid is conditioned upon, and (z) state whether the bidder is willing to purchase any of the Lots included in the bid individually, and if so, the bid must state the price the bidder would pay for each such Lot.

7.     Bid Deadline

A Qualifying Bidder that desires to make a bid shall deliver a written or electronic copy of its bid to: (i) Evergreen Solar, Inc., 138 Bartlett Street, Marlboro, MA 01752, Attn: Christian Ehrbar, General Counsel (cehrbar@evergreensolar.com); (ii) Bingham McCutchen LLP, One Federal Street Boston, MA 02110, Attn. J.Q. Newton Davis, Esq. (newton.davis@bingham.com) and 399 Park Avenue, New York, NY 10022, Attn: Ronald. J. Silverman, Esq. (ronald.silverman@bingham.com), counsel to the Debtor; (iii) UBS Investment Bank, 299 Park Avenue, New York, NY 10171, Attn: Steve Smith (sd.smith@ubs.com) and 555 California Street, San Francisco, CA 94104, Attn: David Dolezal (david.dolezal@ubs.com), investment banker to the Debtor; (iv) Hilco Industrial, LLC, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Attn: Brian Lee (blee@hilcobid.com), broker to the Debtor; (v) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, NY 10036, Attn: Michael S. Stamer, Esq. (mstamer@akingump.com) and James Savin, Esq. (jsavin@akingump.com), counsel to the Supporting Noteholders; (vi) Duff & Phelps Securities, LLC; 11150 Santa Monica Blvd, Suite 600, Los Angeles, CA 90025 Attn: Brian Cullen (brian.cullen@duffandphelps.com) and Mark Catania (mark.catania@duffandphelps.com), financial advisor to the Supporting Noteholders and (vi) Maslon Edelman Borman & Brand, LLP, 3300 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402-4140, Attn: Clark T. Whitmore, Esq. (clark.whitmore@maslon.com), counsel to the Indenture Trustee[1] so as to be received by a date

---

[1] The defined term "Indenture Trustee" means U.S. Bank National Association (i) as Trustee for the Secured Notes pursuant to that certain Indenture, dated as of April 26, 2010, by and among Evergreen Solar, Inc., the Guarantors and U.S. Bank National Association; (ii) as Collateral Agent for the Secured Notes pursuant to that certain Pledge

(Continued...)

A/74486126.1

no later than October 26, 2011 (the "Bid Deadline").

8.     Evaluation of Qualifying Bids

The Debtor shall make a determination regarding whether a bid is a Qualifying Bid, after consultation with the Requisite Supporting Noteholders, and shall notify bidders whether their bids have been determined to be qualified by a date no later than two (2) days prior to the Auction Date (as defined below). In the event a bid is determined not to be a Qualifying Bid, the bidder shall be notified by the Debtor and shall have one (1) day from the date of such notification to modify its bid to render it a Qualifying Bid. Prior to the Auction (as defined below), the Debtor shall determine, in its reasonable judgment, after consultation with the Requisite Supporting Noteholders, which of the Qualifying Bids is likely to be the highest or best with respect to any particular Lot or group of Lots.

9.     No Qualifying Bids

If no timely, conforming Qualifying Bids other than the Qualifying Bid submitted by the Proposed Purchaser are submitted by the Bid Deadline, the Debtor shall not hold an Auction (as defined below) and instead shall request at the Sale Hearing (as defined below) that the Bankruptcy Court approve the Asset Purchase Agreement with the Proposed Purchaser.

10.     Auction

In the event that the Debtor timely receives one or more Qualifying Bids, other than the Asset Purchase Agreement, with respect to any of the Lots or individual assets within Lot 2 or Lot 4, as permitted herein, the Debtor shall conduct an auction (the "Auction") no later than the date that is four (4) business days after the Bid Deadline (the "Auction Date").

Following the Auction, the Debtor will determine, in consultation with its advisors, which individual bid or combination of bids is in the best interests of the Debtor and its estate.

The Auction shall be governed by the following procedures for each Lot to be sold individually and each group of Lots to be sold together:

(a)     The Auction shall be held at the law offices of Bingham McCutchen, LLP, 399 Park Avenue, New York, NY 10022 on November 1, 2011, beginning at 10:00 a.m. Provisions will also be made to allow Qualifying Bidders the opportunity to participate in the Auction by phone;

---

and Security Agreement, dated as of April 26, 2010, by and among Evergreen Solar, Inc., the Guarantors and U.S. Bank National Association; and (iii) as Trustee and Collateral Agent for the Secured Notes pursuant to that certain Collateral Trust Agreement, dated as of April 26, 2010, by and among Evergreen Solar, Inc., the Guarantors and U.S. Bank National Association

(b)     only the Proposed Purchaser and the other Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

(c)     the Proposed Purchaser and the other Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

(d)     only the Debtor, the Proposed Purchaser, the Qualifying Bidders, the Supporting Noteholders, the Indenture Trustee, and the Creditors Committee (if one has been appointed) and advisors to each of these parties, may attend the Auction;

(e)     the Debtor and its professional advisors shall direct and preside over the Auction and the Auction shall be transcribed;

(f)     bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction;

(g)     With respect to any bids for all of the Lots, Qualifying Bidders may then submit successive bids in increments of at least $500,000 higher than the bid at which the Auction commenced and then continue in minimum increments of at least $500,000 higher than the previous bid; provided that the Debtor shall retain the right to modify the bid increment requirements at the Auction;

(h)     all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to all other Qualifying Bidders and the Proposed Purchaser;

(i)     all Qualifying Bidders, including the Proposed Purchaser, at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the marketing process, the Auction, and the construction and enforcement of the Qualifying Bidder's contemplated Transaction documents, as applicable;

(j)     the Proposed Purchaser shall be entitled, upon direction given by holders of a majority of the principal amount of the Secured Notes, to cause the Indenture Trustee to (i) credit bid all or a portion of the aggregate principal amount of the Secured Notes, together with accrued interest and any other claims with respect to the Secured Notes, consistent with Bankruptcy Code section 363(k); (ii) allocate such credit bid among the Lots; (iii) reallocate such credit bid during the Auction; (iv) reduce the amount of the credit bid to the extent the Proposed Purchaser is not the Prevailing Bidder with respect to any Lot, and (v) submit additional bids and make modifications to the Asset Purchase Agreement at the Auction; provided, however, the Requisite Supporting Noteholders have consented in advance to the sale of Lot 3 to a third party bidder who bids cash in excess of $30 million (the "Reserve Price"), provided further, that the

A/74486126.1

Requisite Supporting Noteholders may determine in their sole discretion to reduce the Reserve Price or accept consideration other than cash.

(k)     all Qualifying Bidders, including the Proposed Purchaser, shall have the right to submit additional bids and make additional modifications to the Asset Purchase Agreement or Modified Asset Purchase Agreement at the Auction, provided that any such modifications to the Asset Purchase Agreement or Modified Asset Purchase Agreement on an aggregate basis and viewed in whole, shall not, in the Debtor's business judgment, be less favorable to the Debtor with respect to the particular Lots than the terms of the Asset Purchase Agreement;

(l)     the Debtor shall have the right to request any additional financial information that will allow the Debtor to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Asset Purchase Agreement, as further amended during the Auction, and any further information that the Debtor may believe is reasonably necessary to clarify and evaluate the Qualifying Bidder's bid;

(m)     the Debtor shall have the right, with the consent of the Requisite Supporting Noteholders, to choose the order in which the Lots are put up for Auction;

(n)     the Auction shall continue until there is only one offer for all Assets or each of the Lots, as applicable, that the Debtor determines, subject to Bankruptcy Court approval, is the highest or best from among the Qualifying Bids submitted at the Auction (the "Prevailing Bid"). In making this decision, the Debtor shall consider, without limitation, the amount of the purchase price, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Asset Purchase Agreement requested by each bidder, and the net benefit to the Debtor's estate. The bidder submitting such Prevailing Bid with respect to any Lot shall become the "Prevailing Bidder," with respect to such Lot and shall have such rights and responsibilities of the purchaser, as set forth in the applicable Asset Purchase Agreement or Modified Asset Purchase Agreement; and

(o)     within one (1) business day after adjournment of the Auction, the Prevailing Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Prevailing Bid was made.

11.    Consent

For the avoidance of doubt, the Supporting Noteholders and the Indenture Trustee, at the direction of holders of a majority in aggregate principal amount of the Secured

A/74486126.1

Notes, have consented to the sale of the Assets in connection with the sales process governed by these Bidding Procedures. For the avoidance of doubt, the liens of the Secured Noteholders and the Indenture Trustee shall attach to the proceeds of the Asset Sale(s).

12.     Sale Hearing

The Prevailing Bid and the Second-Highest Bid (or the Asset Purchase Agreement if no Qualifying Bid other than that of the Proposed Purchaser is received) will be subject to approval by the Bankruptcy Court. The hearing to approve the Prevailing Bid and the Second-Highest Bid (or the Asset Purchase Agreement if no Qualifying Bid other than that of the Proposed Purchaser is received) (the "Sale Hearing") shall take place no later than three (3) business days following the conclusion of the Auction, subject to Bankruptcy Court availability.

13.     Return of Deposits

All deposits shall be returned to each bidder not selected by the Debtor as the Prevailing Bidder no later than five (5) business days following the substantial consummation of the sale to the Prevailing Bidder or the Second Highest Bidder (if such bidder is deemed the Prevailing Bidder).

14.     Reservation of Rights

Notwithstanding any of the foregoing, the Debtor reserves its right to modify these Bidding Procedures with the consent of the Requisite Supporting Noteholders at or prior to the Auction, including, without limitation, extending the deadlines set forth herein, modifying bidding increments, waiving terms and conditions set forth herein with respect to any or all potential bidders, imposing additional terms and conditions with respect to any or all potential bidders, adjourning or cancelling the Auction at or prior to the Auction and/or adjourning the Sale Hearing in open court without further notice.

15.     Backup Bidder.

(a)     Notwithstanding any of the foregoing, in the event that the Prevailing Bidder with respect to any of the Lots or individual assets within any of the Lots fails to consummate such sale prior to the Projected Closing Date (or such date as may be extended by the Debtor with the consent of the Requisite Supporting Noteholders), the Second Highest Bidder will be deemed to be the back-up bidder at the price of its last bid with respect to such Lot(s) or individual assets. The Second-Highest Bidder will be deemed to be the Prevailing Bidder and the Debtor will be authorized, but not directed, to effectuate a Sale of such Lot(s) or individual assets to the Second-Highest Bidder subject to the terms of the Second-Highest Bid without further order of the Bankruptcy Court. All Qualified Bids (other than the Prevailing Bid and the Second-Highest Bid) shall be deemed rejected by the Debtor on and as of the date of approval of the Prevailing Bid and the Second-Highest Bid by the Bankruptcy Court.

(b)     For the avoidance of doubt, in the event that there is a Prevailing Bidder (other than the Stalking Horse Bidder) with respect to any of the Lot(s) or individual assets, and the Stalking Horse is the Second-Highest Bidder, the Stalking Horse Bidder will be deemed to be the back-up bidder at the price of its last credit bid with respect to such Lot(s) or individual

assets and will be subject to the terms contained Section 15(a) herein.

A/74486126.1

**Exhibit A**
**Lots**

| |
|---|
| Lot 1 – LBIE Assets:  Seller's claims against Lehman Brothers International Europe and Lehman Brothers Holdings Inc. arising out of (i) the Share Lending Agreement between Lehman Brothers International (Europe) and Seller, dated June 26, 2008, and (ii) Guarantee of Lehman Brothers Holdings Inc. of the Share Lending Agreement between Lehman Brothers International (Europe) and Seller, dated June 26, 2008. |
| Lot 2 – Devens Assets:  means, except to the extent included in the definition of Devens Excluded Assets, Seller's right, title and interest under the Devens Lease, (ii) the Devens Plant, (iii) the Devens Tangible Assets and (iv) the Devens Contracts. |
| Lot 3 – Core Assets:  means, except to the extent included in the definition of Wafer Excluded Assets, (i) all of Seller's Intellectual Property, (ii) the Wafer Tangible Assets, (iii) all right, title and interest of Seller in and to the Wafer Real Property, (iv) Seller's rights under all Wafer Contracts, (v) the name "Evergreen Solar" and any derivation thereof and (vi) sufficient cash to fund the Wafer Budget. |
| Lot 4 – Non-Core Assets:  All right, title and interest of Seller in any of the following, in each case as of the Closing Date:  (i) all Cash and Cash Equivalents (other than Cash and Cash Equivalents to the extent remaining as of the Closing Date in any of the Wafer Budget, the Transition Budget and the Wind-Down Budget); (ii) all Accounts Receivable; (iii) all Actions (including Avoidance Actions)[2]; (iv) all existing Inventory; and (v) all other assets of Seller, wherever held, but excluding the Devens Assets, the LBIE Assets, the Core Assets and the Retained Assets.  With respect to calculating the amount of Cash and Cash Equivalents to be included in Non-Core Assets, not less than five days prior to the Closing Date, Seller will provide to Purchaser a reconciliation of each of the Wafer Budget, the Transition Budget and the Wind-Down Budget, including a good faith estimate of expenses note yet incurred.  Prior to the Closing Date, Purchaser and Seller will negotiate in good faith the amount of Cash and Cash Equivalents to be included in Non-Core Assets based on the terms of this Agreement. |

**Certain Defined Terms:**

"Devens Contracts" means Seller's rights under all Contracts to which it is a party relating to the Devens Land, the Devens Plant or any Devens Tangible Assets.

"Devens Excluded Assets" means (i) those Devens Contracts that are not Designated Contracts pursuant to Section 2.5 and (ii) at Purchaser's election, which must be delivered in writing to Seller prior to the Designation Deadline, Seller's right, title and interest in

---

[2] This will be changed to "excluding Avoidance Actions" in the asset schedule provided to other bidders.

A/74486126.1

and to any of the Devens Lease, the Devens Plant or the Devens Contracts.

"Devens Land" means that certain parcel of land consisting of approximately 23.11 acres located at 114 Barnum Road, Devens, Massachusetts that is subject to the Devens Lease.

"Devens Lease" means that certain Ground Lease, dated as of November 20, 2007, between Seller and Mass Dev.

"Devens Plant" means: (i) the buildings and all other improvements owned by Seller located on the Devens Land, including manufacturing, warehouse and office space comprising approximately 458,000 square feet; and (ii) all fixtures owned by Seller that are attached or appurtenant to the Devens Plant, including all installed facility infrastructure equipment, all support, communication and operating systems, all wiring and server connections for supporting telephone and computer servers and networks and all external improvements including sound barriers, and roof-mounted solar PV equipment.

"Devens Tangible Assets" means the tangible personal property of the Seller located at the Devens Plant or on the Devens Land, including all manufacturing, laboratory, and test equipment, all furniture, vehicles, solar demonstration equipment, office equipment, cafeteria equipment, tables, and other equipment or tangible personal property of any kind, but excluding all Inventory on hand at the Devens Plant, including supplies, raw materials and work in process, spare parts, maintenance supplies, gases, fluids, and any demo panels and finished goods, if any, which shall be included in Non-Core Assets.

"Wafer Budget" an initial budget for the operation of the Wafer Business commencing on the Closing Date, substantially in the form of Exhibit A-1, subject to decrease to the extent contemplated by the definition of "Transition Budget".

"Wafer Business" means Seller's proposed business based on industry standard sized String Ribbon™ wafers for the photovoltaic solar industry, including completing the commercialization of the applicable technology to enable a commercialization plan (which may be in one or more forms such as licensing or manufacturing) that better positions the business enterprise for significant new financings or sales.

"Wafer Contracts" means Seller's rights under all Contracts to which it is a party relating to the Wafer Business or any Wafer Tangible Assets.

"Wafer Excluded Assets" means (i) any Wafer Contracts that are not Designated Contracts pursuant to Section 2.5 and (ii) at Purchaser's election, which must be delivered in writing to Seller prior to the Designation Deadline any of (x) Seller's right, title and interest in and to the Midland Facility, (y) the shares of capital stock held by Seller in Evergreen (Wuhan) and the Evergreen (Wuhan) Contracts, collectively, and (z) the shares of capital stock of Evergreen (Hong Kong) and, to the extent so excluded, all Contract primarily related thereto.

"Wafer Real Property" means (i) that certain parcel of real property consisting of approximately 11,185 square feet of office space located at 138 Bartlett Street, Marlborough, Massachusetts that is subject to the Lease for 120 Bartlett Street, Marlborough, Massachusetts,

12

dated as of January 26, 2006, as amended, (ii) those certain plots, pieces and parcels of land located at 257 Cedar Hill Road, Marlborough, Massachusetts that is subject to the Lease for 127 Cedar Hill Road, dated as of January 15, 2006, as amended, and (iii) the Midland Facility.

"Wafer Tangible Assets" means (i) the shares of capital stock of Evergreen (Hong Kong), (ii) the shares of capital stock of Evergreen Wuhan owned by Seller, (iv) all tangible assets necessary for the development and pursuit of Wafer Business, including the tangible personal property of the Seller located at (x) 138 Bartlett Street, Marlborough, Massachusetts, (y) 257 Cedar Hill Road, Marlborough, Massachusetts and (z) the Midland Facility, including all manufacturing, laboratory, and test equipment, all furniture, vehicles, solar demonstration equipment, office equipment, cafeteria equipment, tables, and other equipment or tangible personal property of any kind.

A/74486126.1