## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EVERGREEN SOLAR, INC. ,[1] | ) | Case No. 11-12590 (MFW) |
| | ) | |
| Debtor. | ) | |
| ─────────────────────────────── ) | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Objections Due:  October 28, 2011, |
| Movant, | ) | at 4:00 p.m. |
| | ) | |
| v. | ) | Hearing Date:  November 4, 2011, |
| | ) | at 9:30 a.m. |
| EVERGREEN SOLAR, INC., | ) | |
| | ) | |
| Respondent. | ) | |
| ─────────────────────────────── ) | ) | |

## UNITED STATES' MOTION FOR DETERMINATION THAT THE AUTOMATIC STAY DOES NOT BAR THE UNITED STATES DEPARTMENT OF ENERGY FROM PROTECTING ITS RIGHTS UNDER THE BAYH-DOLE ACT OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

The United States of America, on behalf of the United States Department of Energy

(DOE), hereby seeks entry of an order pursuant to 11 U.S.C. §§ 362 and 105 and Fed. R. Bankr.

P. 4001 and 9014 that the automatic stay does not apply to bar DOE from providing the Debtor,

Evergreen Solar, Inc. (Evergreen), with notice of DOE's demand for title of certain federally-

funded inventions, and related patents, pursuant to the Bayh-Dole Act, Pub. L. 96-517, as

amended (the Bayh-Dole Act); 35 U.S.C. §§ 200-212, and implementing regulations, as reflected

in certain funding agreements and, in any event, that any such demand for title of inventions and

related patents falls within the 11 U.S.C. § 362(b)(4) police and regulatory powers exception to

the automatic stay.  In the alternative, the United States seeks relief from the automatic stay for

---

[1]  The last four digits of the Debtor's federal tax identification number are 2254.  The Debtor's mailing address is 138 Bartlett Street, Marlboro, MA 01752.

cause to permit DOE to request title of certain inventions and related patents.

## Relief Requested

1.      Since Evergreen filed its bankruptcy case, DOE discovered that certain inventions were made by Evergreen with funding provided by DOE and that Evergreen has obtained patents for those inventions.  Pursuant to the Bayh-Dole Act and implementing regulations, as reflected in the terms of Evergreen's funding agreement, Evergreen was required to disclose to DOE in writing any such "subject inventions" within two months after receiving written notice thereof from the inventor and thereafter had two years in which to "elect to retain title" to them. Evergreen failed to satisfy the Bayh-Dole Act requirements to disclose and elect to retain title to the inventions in a timely manner, and thus, DOE may demand title to them, including any related patents, within sixty days after discovering Evergreen's failure to disclose.  DOE seeks an order determining that the automatic stay does not apply to DOE's provision of notice[2] to Evergreen of DOE's demand for title of certain federally-funded inventions, including related patents, pursuant to the Bayh-Dole Act, applicable regulations promulgated thereunder and the terms of the funding agreement with Evergreen under which the inventions were made.  The automatic stay would not apply to DOE's notice of a demand for title because it merely preserves DOE's rights under the Bayh-Dole Act.

2.      As explained in more detail below, DOE's actions to protect its rights in the patents are excepted from the automatic stay under section 362(b)(4) because they constitute exercises of police and regulatory powers.  DOE's demand for title of the patents is based, among other things, on its regulatory interest in supporting and defending the policy and

---

[2]   A notice of DOE's demand for title is attached hereto as Exhibit A.

objectives of the Bayh-Dole Act rather than in any pecuniary interest in Evergreen.  Accordingly, DOE asks the Court to enter an order holding that DOE's notice does not violate the stay.

3.      Alternatively, DOE asks the Court to lift the automatic stay to allow DOE to protect its rights in federally-funded inventions pursuant to the Bayh-Dole Act.  Cause exists to lift the automatic stay to allow DOE to take the steps necessary to merge equitable and legal title to these inventions, thereby preserving the integrity of applicable non-bankruptcy law governing federal funding for research and development of technology for use by American industry.

### Statutory and Regulatory Background

4.      During the late 1970s, Congress became concerned that United States industry was falling behind international competitors in development of new products and inventions.  S. Rep. 96-480, p. 1, reprinted in (Dec. 12, 1979).  To address these concerns, Congress passed the Bayh-Dole Act in 1980 to "use the patent system to promote the utilization of inventions arising from federally supported research or development" and "to ensure that the Government obtains sufficient rights in federally supported inventions."  35 U.S.C. § 200.

5.      "The Bayh-Dole Act provides that contractors may 'elect to retain title to any subject invention.' §202(a).  To retain title, a contractor must fulfill a number of obligations imposed by the statute.  The contractor must 'disclose each subject invention to the [relevant] Federal agency within a reasonable time'; it must 'make a written election within two years after disclosure' stating that the contractor opts to retain title to the invention; and the contractor must 'file a patent application prior to any statutory bar date.' §§202(c)(1)-(3).  The 'Federal Government may receive title' to a subject invention if a contractor fails to comply with any of these obligations.  Ibid.'"  Stanford v. Roche, et al. No. 09-1159, slip op. at 3 (U.S. 2011)

3

6.      "The Government has several rights in federally funded subject inventions under the Bayh-Dole Act.  The agency that granted the federal funds receives from the contractor 'a nonexclusive, nontransferable, irrevocable, paid-up license to practice…[the] subject invention.' §202(c)(4).  The agency also possesses "[m]arch-in rights,' which permit the agency to grant a license to a responsible third party under certain circumstances, such as when the contractor files to take 'effective steps to achieve practical application' of the invention.  §203."  Id. at 3-4.  The Government also requires a certain U.S. manufacturing commitment of exclusive licensees of the federally funded inventions in the U.S.  35 U.S.C. § 204.

7.      Pursuant to 35 U.S.C. § 206 of the Bayh-Dole Act, all federal agencies must use a standard patent rights clause delineated in 37 C.F.R. § 401.14 (absent a Declaration of Exceptional Circumstances) in funding agreements with domestic small businesses and non-profit organizations.  37 C.F.R. § 401.3.

8.      The standard patent rights clause requires a federally funded contractor to disclose any "subject invention" to the funding agency within two months after it learns of a "subject invention" from the inventor.  37 C.F.R. § 401.14(c)(1); see also 35 U.S.C. § 202 (requiring disclosure to the agency within a reasonable time).  "The disclosure to the agency shall be in the form of a written report and shall identify the contract under which the invention was made and the inventor(s).  It shall be sufficiently complete in technical detail to convey a clear understanding to extent known at the time of the disclosure, of the nature, purpose, operation, and the physical, chemical, biological or electrical characteristics of the invention."  Id.

9.      A contractor satisfies this Bayh-Dole Act disclosure requirement only by providing the federal agency with the form of written notice specified in its funding agreement -

other forms of information available to the agency under the period of the funding agreement do not suffice.  <u>Campbell Plastics Engineering & Mfg. v. Brownlee</u>, 389 F.3d 1243, 1249 (Fed. Cir. 2004).

10.    After a contractor discloses a subject invention to the funding agency, it has two years in which to notify the agency, in writing, that it elects to retain title to such invention.  35 U.S.C. § 202(c)(2); 37 C.F.R. § 401.14(c)(2).

11.    If it elects to retain title, the contractor must file a patent application on any subject invention prior to any statutory bar, and at least within one year after electing to retain title.  37 C.F.R. § 401.14(c)(3); see also U.S.C. §  202(c)(3) (requiring patent filing before statutory bar).

12.    Upon a contractor's failure to timely disclose, elect to retain title to, or file a patent application for a subject invention, the funding agency may demand title to the subject invention.  35 U.S.C. § 202(c); 37 C.F.R. § 401.14(d).  Specifically, the contractor "will convey" title to a subject invention to the applicable federal agency if the federal agency provides a written request to the contractor within 60 days after learning of the contractor's failure to disclose or elect before the statutory and regulatory deadlines.  37 C.F.R. § 401.14(d)(1).

**Background and Procedural History**

13.    Evergreen is a small business that has developed and manufactured solar panels

using technology known as a String Ribbon™ method.[3]  Years before Evergreen filed its

bankruptcy petition on August 15, 2011 (the Petition Date), Evergreen spent a substantial period

of time doing research and development projects, resulting in new, proprietary technology that

allows Evergreen to spend less money producing solar panels than its competitors spend using

traditional manufacturing methods.  El-Hillow Decl. at 3.

14.    From September 27, 2002 through May 15, 2005, Evergreen participated in a

research and development project (referred to by Evergreen as "Gemini") funded at least in part

by DOE under a contract entitled "Innovative Approaches to Low Cost Module Manufacturing

of String Ribbon Si PV Modules" (the Funding Agreement).[4]

15.    The Funding Agreement includes Appendix C-2, dated October 22, 1998, which

incorporates provisions regarding the parties' intellectual property rights consistent with the

Bayh-Dole Act and implementing regulations including the standard patent right clause at 37

C.F.R. § 401.14.  For instance, it defines "Subject Invention" as "any invention of [Evergreen]

conceived or first actually reduced to practice in the performance of work under this

subcontract."  Appendix C-2 (incorporated herewith as Exhibit C).

16.    Appendix C-2 to the Funding Agreement sets forth a requirement for Evergreen to

_____

[3]  Declaration of Michael El-Hillow, Chief Executive Officer of the Debtor, in Support of
First Day Pleadings, at 3 (El-Hillow Decl., Docket No. 2).

[4]  The Funding Agreement was a subcontract, designated PV Manufacturing R&D
Project, # ZDO-2-30628-09, between Evergreen and Midwest Research Institute, as the
management and operating contractor of the National Renewable Energy Laboratory for the
Department of Energy.  Declaration of Glen R. Drysdale at 2 ("Drysdale Decl.", incorporated
herewith as Exhibit B).

"disclose each Subject Invention to [DOE] within 2 months after the inventor discloses it in writing to [Evergreen] personnel responsible for patent matters." Id. at 15. The disclosure shall be "in the form of a written report and shall identify the contract under which the invention was made and the inventor(s). It shall be sufficiently complete in technical detail to convey a clear understanding to extent known at the time of the disclosure, of the nature, purpose, operation, and the physical, chemical, biological or electrical characteristics of the invention." Id. The Funding Agreement further requires that Evergreen direct its notification and disclosure to the DOE Patent Counsel and provide a report listing all Subject Inventions or stating that none were made or conceived prior to close out the funding agreement. Id. at 21.

17.     Appendix C-2 to the Funding Agreement further provides that Evergreen must "elect in writing whether or not to retain title to any such invention by notifying DOE within 2 years of disclosure to DOE." Id. at 15.

18.     Finally, Appendix C-2 to the Funding Agreement provides that Evergreen "will convey to [DOE], upon written request, title to any Subject Invention . . . If [Evergreen] fails to disclose or elect title to the Subject Invention within the times specified" in the prior quoted provision. Id. at 16. And Appendix C-2 provides that Evergreen "agrees to execute or have executed and promptly deliver to DOE all instruments necessary to . . . [c]onvey title to DOE when requested . . . and to enable the Government to obtain patent protection throughout the world in that Subject Invention." Id. at 17-18.

19.     Under the Funding Agreement, Evergreen conducted the Gemini project to develop a method to generate two String Ribbons of silicon simultaneously out of single crucible

of molten silicon rather than just one String Ribbon at a time.[5]  According to Evergreen, the method resulting from the Gemini project reduced its direct manufacturing costs by 33 percent. Final Report at 2.  Evergreen stated that, "[o]ver the course of this PVMR&D project, Gemini began first as an R&D concept and then into a pilot phase, and finally into full production."  Id., at 7.  Evergreen identified Rick Wallace as the inventor of the Gemini method.  Id. at 14.

20.     During the period of performance of the Funding Agreement, Evergreen filed a patent application that eventually led to three U.S. patents and related foreign patent applications. Drysdale Decl. at 3.  Each U.S. patent is entitled "Method and Apparatus for Growing Multiple Crystalline Ribbons from a Single Crucible."  U.S. Patents No. 6,814,802; 7,022,180; and 7,507,291 (the Subject Patents, incorporated as Exhibit E hereto).  As the title suggests, these patents disclose and claim an invention that features "techniques for the continuous and concurrent growth of multiple semiconductor ribbons from a single crucible," *i.e.*, a method of producing multiple String Ribbons out of a single crucible.  See U.S. Patent No. 6,814,802 at Column 2, Lines 49-51.  Each patent describes and depicts the prior method for growing a single ribbon out of one crucible in essentially the same way it is described and depicted in the Final Report.  See Final Report at 7, Figure 1a and U.S. Patent No. 6,814,802 at Column 1, Lines 25-27 and Figure 1a.  Both the Final Report and the patents discuss the need to improve the single ribbon prior method in order to reduce costs.  See Final Report at 7 and U.S. Patent No. 6,814,802 at Column 1, Lines 29-34.  The patents disclose the same means of growing more than one ribbon out of each crucible as the Final Report for achieving the improvement and cost

---

[5]  Final Report, Innovative Approaches to Low Cost Module Manufacturing of String Ribbon Si PV Modules, PV Manufacturing R&D Project, # ZDO-2-30628-09, dated May 31, 2005 (Final Report, excerpts of which are incorporated herewith as Exhibit D), at 2.

reduction.  See Final Report at 7 and U.S. Patent No. 6,814,802 at Column 2, Lines 49-64.  The

figure in the Final Report illustrating the dual ribbon "Gemini" method developed under the

Funding Agreement is substantially the same figure in the patents illustrating one of the

embodiments of the invention of the patents.  See Final Report at Figure 1b and U.S. Patent No.

6,814,802 at Figure 2a.[6]  Notably, the listed inventor of each patent is Richard Lee Wallace, the

same man identified in the Final Report as inventor of the Gemini method.  See Final Report at

Figure 9.  In view of the foregoing, it is apparent the invention in the patents is the Gemini

method described in the Final Report.

21.     Despite Evergreen's description of the Gemini method in its Final Report and

application for the Subject Patents during the period of performance of the Funding Agreement,

it did not disclose to DOE, or elect to retain title to, any subject invention.  In fact, upon closing

out the Funding Agreement, on September 18, 2007, Evergreen certified that "there were no

inventions or discoveries made during the course of the contract."  Patent Certification Form

(OMB No. 1902-0121), dated May 15, 2005 (incorporated as Exhibit F).

22.     Since Evergreen completed its performance of the Funding Agreement, it

expanded its manufacturing operations in China.  El-Hillow Decl. at 4.  Specifically, it entered

into a joint venture agreement with a Chinese company establishing a manufacturing facility in

Wuhan, China, and has announced plans to suspend manufacturing operations in the United

States.  Id. at 4-5.

---

[6]  See also Final Report at Page 9 and U.S. Patent No. 6,814,802 at Column 2, Line 67
and Column 3, Line 5 (describing similar issues relating to the dual ribbon method, such as
insuring the two ribbons don't interfere with one another and uniformity of thermal gradient from
ribbon to ribbon).

23.     On the Petition Date, Evergreen also filed its motion to sell substantially all of its assets under section 363 of the Bankruptcy Code.  (Docket No. 13)  Soon after, personnel at DOE learned of the bankruptcy filing and prospective asset sale by reading a news article.  Drysdale Decl. at 5.  A DOE attorney, Glen Drysdale, analyzed DOE's past funding agreements with Evergreen to determine whether DOE had any rights to be asserted and protected in the bankruptcy proceedings.  Id.  Based on his comparison between the Final Report (and other reports prepared by Evergreen) and public information on patents held by Evergreen, Mr. Drysdale discovered that the Subject Patents relate to subject inventions under the Funding Agreement.  Id.

## JURISDICTION

24.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.

25.     The statutory basis for the requested relief is 11 U.S.C. §§ 362(a) and 362(b)(4) and 105 and Fed. R. Bankr. P. 4001 and 9014.

## Reasons for Relief

26.     Because Evergreen failed to disclose Subject Inventions to DOE, the Bayh-Dole Act gives DOE the right to own Evergreen's Subject Inventions, as long as DOE provides Evergreen with written notice of its request for title within 60 days after DOE's discovery that Evergreen failed to disclose the Subject Inventions.  35 U.S.C. §§ 202(c)(1), (c)(2); 37 C.F.R. § 401.14(d) ("The contractor will convey to the Federal agency, upon written request title to any subject invention . . . provided that the agency may only request title within 60 days after

learning of the failure of the contractor to disclose or elect within the specified timeframes."); see Ex. B at 16.  Although the United States believes that the automatic stay would not apply to DOE's notice and preservation of its currently-existing rights under the Bayh-Dole Act, out of an abundance of caution, it hereby asks the Court for a determination on this issue, or in the alternative, for relief from the automatic stay for cause, in order to avoid the risk that such notice could be deemed untimely.

**I.** **Section 362(a)(3) Does Not Apply to DOE's Notice of a Request for Title Because The Notice Would Not Give DOE Possession Of, or Control Over, Property of the Estate under Section 362(a)(3).**

27.    The Bankruptcy Code's automatic stay protects the estate from third parties acting to obtain possession of or control over property of the estate.[7]  11 U.S.C. § 362(a)(3).  The automatic stay does not create or expand property rights, however, and only protects property of the estate as defined and limited by the debtor's rights as of the petition date under applicable non-bankruptcy law.   Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir. 1984) ("whatever rights a debtor has in property at the commencement of the case continue in bankruptcy - no more, no less"); see also, Butner v. United States, 440 U.S. 48, 54-55 (1979) (property of the estate defined by applicable, nonbankruptcy, state law); Federal Aviation Administration v. Gull Air, Inc. (In re Gull Air, Inc.), 890 F.2d 1255, 1261-62 (1st Cir. 1989) (debtor's interest in landing slots expired due to debtor's failure to satisfy qualifying regulatory condition); Kopelman v. Halvajian (In re Triangle Laboratories), 663 F.2d 463, 468 (3rd Cir. 1981)

---

[7]  No other subsection of 11 U.S.C. § 362(a) could apply here.  For instance, DOE does not seek to initiate or continue any act of proceeding against the debtor, as contemplated by 11 U.S.C. § 362(a)(1), has no liens in the subject inventions, as contemplated by 11 U.S.C. § 362(a)(4) and (5), and is not attempting to collect on a claim, as contemplated by 11 U.S.C. § 362(a)(6).

("Triangle Labs")("When a debtor's legal and equitable interests in property are terminated prior to the filing of the petition with the Bankruptcy Court that was intended to preserve the debtor's interest in such property, the Bankruptcy Court cannot then cultivate rights where none can grow.") (citations omitted).

28.     Specifically, where a debtor holds "bare legal title" to property, but another party holds the equitable right to own the property, the automatic stay does not expand the estate's property rights in a manner that would destroy the third party's equitable rights.  United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n. 8 (1983)("property in which debtor holds legal but not equitable title . . . becomes part of the estate only to extent of legal title"), citing 11 U.S.C. § 541(d); Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233 (3rd Cir. 2001) (interest in federal grant relationship found not property of estate because limited by federal agency rights).

29.     Evergreen's interests in the Subject Inventions and related Subject Patents is defined in the allocation of rights between Evergreen and DOE under the Bayh-Dole Act and implementing regulations, which are reflected in the Funding Agreement.  Pursuant to the Bayh-Dole Act, Evergreen's pre-petition failure to disclose the Subject Inventions to DOE and elect to retain title to them gave rise to DOE's current right to obtain title to the Subject Inventions.  See 35 U.S.C. § 202(c); 37 C.F.R. 401.14(d).[8]  Although the automatic stay does apply to

---

[8]     See 35 U.S.C. § 202(c) (giving federal agency the right to request title upon a contractor's failure to timely disclose or elect); 37 C.F.R. § 401.14(d) ("contractor will convey to the Federal agency, upon written request, title to any subject invention."); Appendix C-2, at 16 (same).  DOE's statutory, regulatory and contractual right to obtain title is recognized as an equitable right in the patents under generally applicable patent law.  See Arachnid, Inc. V. Merit

Evergreen's defeasible right to hold title to the Subject Inventions, it cannot expand those rights

by frustrate DOE's preservation of its right to obtain title, which was triggered by Evergreen's

prepetition actions.   Cf. Triangle Labs, 663 F.2d at 468; Trigg v. United States (In re Trigg), 630

F. 2d 1370 (10th Cir. 1980) (Bankruptcy Act automatic stay provision did not give bankruptcy

court power to void debtor's prepetition default of oil and gas lease or expand the estate's rights

in lease beyond rights defined by nonbankruptcy federal statute).

30.     In sum, because DOE's delivery of a notice of request for title would merely

preserve DOE's rights to obtain title in the Subject Inventions and Subject Patents, and would

not in itself automatically divest the estate of its title in any inventions or patents, the automatic

stay is not violated.9  Accordingly, the Court should enter an order clarifying that 11 U.S.C. §

362(a) does not bar DOE from giving notice.

**II.     DOE's Notice to Evergreen of a Request for Title Is An Enforcement of Police
and Regulatory Powers Excepted from the Automatic Stay Pursuant to
11 U.S.C. § 362(b)(4).**

31.     Even if 11 U.S.C. § 362(a)(3) applied to DOE's delivery of a notice of a request

for title, which it does not, such action is excepted from the stay as an exercise of DOE's police

and regulatory powers pursuant to 11 U.S.C. § 362(b)(4).  This subsection excepts from the stay

any "commencement or continuation of an action or proceeding by a governmental unit . . .  To

---

Industries, Inc., 939 F.2d 1574, 1581 (Fed. Cir. 1991) (recognizing contractual right to
assignment of title to patent as an equitable rather than legal right to title).

9  DOE's rights arising from the Bayh-Dole Act and implementing regulations, as reflected in
the Funding Agreement, are distinct from liens and do not secure any monetary claims of DOE.
Accordingly, DOE's demand for title is not barred by 11 U.S.C. ' 362(a)(5).  Notably, however,
because DOE's notice of a demand for title preserves its existing right to title under the Bayh-
Dole Act, the analogous action by a secured creditor to maintain perfection of liens would be
excepted from the automatic stay under 11 U.S.C. ' 362(b)(3).

13

enforce such governmental unit's . . . police and regulatory power." Congress intended that the "police and regulatory powers" exception would combat the risk that the stay would be, "vulnerable to abuse by debtors improperly seeking refuge under the stay in an effort to frustrate necessary governmental functions." United States v. Nicolet, Inc., 857 F.2d 202, 207 (3rd Cir. 1988). Legislative history of the exception clarifies that it applies where a governmental unit acts "to stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws." United States v. Wheeling-Pittsburgh Steel Corp., 818 F.2d 1077, 1086(3rd Cir. 1987) (citing H. Rep. No. 595, 95th Cong. & Admin. News 5787, 5963, 6299) (omitting emphasis).

32.    Where government action is intended to protect the public welfare, it is excepted from the automatic stay without the need for a showing of "imminent and identifiable harm or urgent public necessity." Id. (citations omitted). Moreover, where a federal agency does not seek to enforce a money judgment, a bankruptcy court need not consider the financial impact on the debtor in deciding whether the agency's actions fall within the police and regulatory powers exception. Id. at 1086-87 (citing Cournoyer v. Town of Lincoln, 790 F.2d 971 (1st Cir. 1986) to illustrate that police and regulatory powers exception may apply even where the government takes inventory from estate and sells it).

33.    DOE's provision of a notice to Evergreen of a request for title of Subject Inventions falls squarely within the police and regulatory powers exception because it would be intended to further DOE's explicit statutory duty to "use the patent system to promote the utilization of inventions arising from federally supported research or development[,] promote the commercialization and public availability of inventions made in the United States by United

States industry and labor, [and] . . . ensure that the Government obtains sufficient rights in federally supported inventions."  35 U.S.C. § 200.  Evergreen's lack of disclosure undermines the policy and objectives of the Bayh-Dole Act.  Without disclosure of Subject Inventions, the Government is unable to determine, let alone enforce, the Government rights provided under the Bayh-Dole Act aimed at achieving its objective and policies.  As examples, without disclosure, the Government would not able to determine whether "march-in rights" under 35 U.S.C. § 203 apply to a particular invention that would allow the Government to require licensing of the invention if, among other things, such action is necessary to alleviate health or safety needs left unmet by the contractor or to meet certain requirements for public use or whether certain U.S. manufacturing requirements under 35 U.S.C. § 204 apply to the invention.  In essence, enforcing the disclosure requirement is necessary to allow DOE to implement the objective or policies of the Bayh-Dole Act.

34.    Although DOE provided almost $3 million dollars to Evergreen through the Funding Agreement, DOE currently is unaware of any monetary claim against the estate in connection with the Funding Agreement.  Its demand for title, therefore, does not further any pecuniary interest of DOE.[10]  Instead, DOE merely seeks to protect its existing rights in federally-funded inventions and support the objective and policies of the Bayh-Dole Act.

35.    Evergreen's circumstances require DOE to exercise its regulatory powers to protect its rights in the Subject Inventions and Subject Patents, and the Court should enter an

---

[10]  Once DOE obtains title to a patent, DOE could issue licenses for use of the invention, either royalty-free or for royalties, but such licensing generally is limited to entities substantially manufacturing the related products in the United States.  35 U.S.C. § 207; 35 C.F.R. § 404.5(a)(2).

order clarifying that DOE's delivery to Evergreen with notice of request for title is excepted from the automatic stay under 11 U.S.C. § 362(b)(4).

**III.     In the Alternative, If the Automatic Stay Applies to DOE's Notice of Request for Title, Cause Exists for the Court to Lift or Modify the Automatic Stay So That DOE's Delivery of The Notice Can Be Effective.**

36.     Even if the Court were to determine that the automatic stay bars DOE's delivery to Evergreen of notice of request for title, and such action is not excepted from the stay as an exercise of police and regulatory power, cause exists for the Court to lift or modify the stay under 11 U.S.C. § 362(d)(1) so that DOE can effectively maintain its rights to the Subject Inventions, comply with its statutory 60-day notice, as reflected in the funding agreement, prevent a third party from buying assets from Evergreen unaware of the Government ownership rights thereto, and prevent foreign entities from gaining control over federally-funded technology and competing with American industry unfairly.  "Cause" to lift or modify the stay is not limited to situations where the property of the party lacks adequate protection of a financial interest in the bankruptcy estate.  See Soliman v. Spencer (In re Spencer), 115 B.R. 471, 476 (D. Del. 1990).  Instead, in appropriate circumstances such as these, bankruptcy courts may determine cause exists to lift the stay in order to effectuate the allocation of rights in property as of the Petition Date pursuant to applicable non-bankruptcy law.

37.     For instance, in Spencer, the bankruptcy court found cause to lift the automatic stay where the estate held mere legal title to property because a non-debtor had obtained equitable rights to it in a pre-petition sheriff's sale under Delaware law.  Spencer, 115 B.R. 15 476.  The bankruptcy court reasoned that cause existed because when the debtor had filed bankruptcy, he held mere "naked legal title" to property, which was of little value to the estate.

16

Similarly, based on Evergreen's failure to satisfy its disclosure and election obligations under the Bayh-Dole Act, see supra, at 5-9, Evergreen holds mere legal title to the Subject Inventions and Subject Patents, and as of the Petition Date, DOE has equitable rights in them. See supra, at 12-13.

38.     Cause to lift the stay is even more clearly present in this case where Evergreen may seek to sell the Subject Inventions and Subject Patents to an assignee who may not willingly comply with the Bayh-Dole Act requirements including, but not limited to, prohibitions on licensing of subject inventions to entities that would not manufacture substantially all of the products embodying or using such inventions in the United States. See 35 U.S.C. § 204 (no small business or its assignee shall grant any person the exclusive right to use or sell any subject invention in the United States unless that person agrees that any products embodying the subject invention or produced through the use of the subject invention will be manufactured substantially in the United States). Accordingly, cause exists[11] to modify the stay to permit DOE to request title and effectuate the Bayh-Dole Act's allocation of rights in the Subject Inventions and Subject Patents, as those rights existed on the Petition Date.

39.     Accordingly, if the Court determines that the automatic stay bars DOE's delivery to Evergreen of a notice of request for title in the Subject Inventions and Subject Patents, and that such action is not excepted from the automatic stay under 11 U.S.C. § 362(b)(4), the Court should lift the automatic stay for cause under 11 U.S.C. § 362(d).

---

11  In addition, although relief under 11 U.S.C. § 362(d)(2) is generally sought by secured creditors seeking to foreclose on collateral that is property of the estate, that provision could be interpreted to warrant relief here. The debtor has absolutely no interest or equity in DOE's statutory rights in the subject inventions and no property is necessary to an effective reorganization because Evergreen intends to liquidate rather than reorganize.

## Conclusion

40.     For the foregoing reasons, the United States seeks entry of an order ruling that the automatic stay of 11 U.S.C. § 362 does not apply to bar DOE from delivering to Evergreen a notice of its demand for title to the Subject Inventions and Subject Patents and that actions taken by DOE to preserve and protect its right to title in the Subject Inventions and Subject Patents are excepted from the automatic stay of 11 U.S.C. § 362(b)(4).  Alternatively, the United States requests entry of an order lifting the automatic stay for cause pursuant to 11 U.S.C. § 362(d). This 7th day of October, 2011.

Respectfully submitted,


TONY WEST
Assistant Attorney General

CHARLES M. OBERLY, III
United States Attorney

ELLEN W. SLIGHTS
Assistant U.S. Attorney

/s/ Margaret M. Newell
J. CHRISTOPHER KOHN
TRACY J. WHITAKER
MARGARET M. NEWELL
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
(202) 305-7590 (o)
(202) 307-0494 (f)