IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EVERGREEN SOLAR, INC., | ) | Case No. 11-12590 (MFW) |
| | ) | |
| Debtor. | ) | **Requested Objection Deadline:** |
| | ) | **At the hearing** |
| | ) | **Requested Hearing Date:** |
| | | **January 5, 2012 at 10:30 a.m. (EST)** |

## DEBTOR'S EMERGENCY MOTION TO STAY
## BRIEFING AND DISCOVERY AND TO COMPEL MEDIATION

Evergreen Solar, Inc., the Debtor and Debtor-in-Possession, moves, pursuant to section 105(a) of the Bankruptcy Code, for a stay of discovery and briefing relating to (i) the Committee's[1] motion to dismiss or convert this case,[2] (ii) the Supporting Noteholders' motion for determination of value of adequate protection liens,[3] and (iii) all proceedings in adversary proceeding no. 11-53882, including the Indenture Trustee's motion to dismiss certain counts of the Committee's adversary complaint,[4] and for an order (iv) directing the Committee, the Supporting Noteholders and the Debtor to mediation. As grounds, the Debtor states as follows:

---

[1] Capitalized terms not otherwise defined in this brief are defined in the Debtor's Motion for Orders (I)(A) Authorizing Debtor's Entry Into the Stalking Horse Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures and Transaction Expense Reimbursement (C) Approving the Notice Procedures and the Assumption and Assignment Procedures and (D) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims and Encumbrances and (B) the Assumption and Assignment of Certain Executory Contracts [D.I. 13].

[2] Motion of the Official Committee of Unsecured Creditors of Evergreen Solar, Inc. for an Order Pursuant to 11 U.S.C. §§ 105, 349 and 111, and Fed. R. Bankr. P. 1017 and 2016 Dismissing Chapter 11 Case or Converting the Chapter 11 Case to a Chapter 7 Case and Granting Related Relief (the "Motion to Dismiss or Convert") [D.I. 595].

[3] Motion of Supporting Noteholders to Determine the Value of Adequate Protection Claims and Liens Granted Pursuant to the Cash Collateral Order (the "Adequate Protection Motion"). [D.I. 607]

[4] Indenture Trustee's Motion to Dismiss Claims Relating to Certain Foreign Intellectual Property of the Debtor, AP No. 11-53882, [D.I. 4].

# PRELIMINARY STATEMENT

1.    An orderly liquidation from its inception, this case has reached its last phase. Almost all of the Debtor's assets have been sold. Ideally, in the Debtor's view, the case would terminate in a consensual liquidating plan. However, disputes exist that may prevent this result. Absent a resolution among the key constituencies that would yield a superior outcome, then prior to expiry of the time for adjudication of the Motion to Dismiss or Convert under 11 U.S.C. § 1112(b)(3), the Debtor will consent to conversion or file with the Court the appropriate pleadings or motion papers to give effect to the Debtor's unilateral power under section 1112(a) to convert this case to a chapter 7 case. The object of the present motion is to minimize administrative expense in the interim, and maximize the chances for consensus.

2.    With the facilitation of the Debtor, the Supporting Noteholders and Committee have explored settlement, with progress but so far without success. As the year ended, those parties embarked on an expensive litigation course, which the Debtor believes to be partially academic, partially premature, and unnecessarily expensive. Disputes regarding conversion and dismissal will become academic in the event of a settlement, and equally academic if the Debtor converts, as it can do if settlement discussions fail to yield sufficient unencumbered assets for the estate. Litigation to resolve disputes about the extent of the Supporting Noteholders' adequate protection liens is premature, since a chapter 7 trustee would be an appropriate party to such disputes if they are not settled, and in a chapter 7 case, the Committee would not be a party at all.

3.    Litigation certainly will be expensive, however, and certainly will reduce the currency available to creditors in a compromise. For these reasons, the Debtor seeks a comprehensive stay of all litigation activities prior to January 19, and an order directing the parties to mediation.

A/74674274.4
DOCS_DE:176549.3 24688-001

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicate for the relief sought by this motion is Bankruptcy Code section 105(a).

## RELEVANT BACKGROUND AND CASE STATUS

*The Sales.*

6.      From its commencement on August 15, 2011, this chapter 11 case was a structured liquidation.  Even before the Court approved bidding procedures for the sale of all of the Debtor's assets on September 8, 2011[5] the Debtor had embarked on a comprehensive sale effort.

7.      The marketing and sale processes were expensive.   Objections had to be overcome; complex transactions had to be structured.   When the Department of Energy challenged transfer of the Debtor's intellectual property, extensive efforts were necessary to resolve the legal challenge, structure the sale, and address bidder uncertainties.  The sale of the Debtor's core business was a complicated undertaking, involving extensive international marketing and a foreign purchaser.  The Committee mounted a substantial and expensive challenge to the Supporting Noteholders' assertion of credit bid rights, dropping its challenge only after considerable expense was incurred.

8.      The Debtor has now substantially completed the sale effort, which has been almost entirely for the benefit of the secured creditors.  The Debtor:

---

[5] *See* Order: (A) Authorizing Debtor's Entry Into Asset Purchase Agreement; (B) Authorizing and Approving the Bidding Procedures and Transaction Expense Reimbursement; (C) Approving the Notice Procedures and the Assumption and Assignment Procedures; and (D) Setting a Date for the Sale Hearing [D.I. 174].

A/74674274.4
DOCS_DE:176549.3 24688-001

- On November 7, 2011, conducted auctions for Lots 1, 3 and 4A and

  o sold Lot 1 (LBIE Assets) to ES Purchaser, LLC, for a credit bid of $21.5 million.

  o sold Lot 4A (Panel Inventory) to Kimball Holdings, LLC, for a total cash purchase price of $3.834 million (plus buyer's premium); and

  o sold Lot 3 (Core Assets) to Max Era Properties Limited, a Hong Kong limited liability company, for $6 million (comprising $6 million in cash and approximately 7.6 million unrestricted Ordinary Shares of China Private Equity Investment Holdings Ltd., an entity affiliated with Max Era).

- On November 18, 2011, conducted an auction for Lot 4B (Miscellaneous Non-Core Assets), which was sold to ES Purchaser, LLC, for a credit bid of $7 million.

- On December 13, 2011, conducted an auction for Lot 2 (Devens Tangible Assets) that generated approximately $8.9 million in sales (plus buyer's proceeds).

The Court entered orders approving all of these sales.[6]

---

[6] The recitation is indicative, and omits complexity in the closing process that may result in adjustments to the sale prices. *See* Order Authorizing and Approving (A) Sale of Lot 3 Assets Free and Clear of All Liens, Claims and Encumbrances; and (B) Assumption and Assignment of Certain Executory Contracts [D.I. 460]; Order Authorizing and Approving the Sale of Lot 4A Assets to Kimball Holdings, LLC, Free and Clear of All Liens, Claims and Encumbrances [D.I. 462]; Order Authorizing and Approving Sale of LBIE Assets Free and Clear of All Liens, Claims and Encumbrances [D.I. 465]; Order Authorizing and Approving Sale of Lot 4B Assets Free and Clear of All Liens, Claims and Encumbrances to ES Purchaser, LLC [D.I. 527]; Order Authorizing and Approving Sale of Devens Tangible Assets [D.I. 582].

9.     The Debtor's Devens real estate has not been sold, although substantial negotiations with an interested potential purchaser have taken place.[2]

*Winding up the case.*

10.     With the sale process substantially complete, the Debtor seeks to wind down its affairs and confirm a plan that would resolve the case.  However, disputes exist that are impediments to a plan.  At a business level, the dispute separating the major constituencies is a simple one (how much the Supporting Noteholders will agree to leave behind for unsecured creditors), but on the factual and legal level, the dispute is *not* simple.  The Debtor believes that experts would contest the extent to which solar-industry and other assets have appreciated or depreciated since August.  Further, measuring diminution in collateral value in a structured liquidation, where, absent bankruptcy, foreclosing lenders would have been left to state-law liquidation remedies, without the support of the Debtor's management and professionals, raises other uncertainties.  Because resources are strained and the disputes are complex, the Debtor believes it is simply infeasible to resolve these questions efficiently or quickly in a contested adjudication.

11.     On December 20, 2011, the Committee filed its Motion to Dismiss or Convert. A hearing has been scheduled for January 19, 2012.  The Debtor expects that the Committee may oppose the stay sought by this motion, arguing that section 1112(b)(3) requires that the Court commence a hearing on this motion by January 19, 2012, and that it adjudicate that motion within fifteen days thereafter.[8]  However, nothing in section 1112(b)(3) prevents the Court from denying the Committee's motion, for any good cause that may appear prior to February 3, 2012, such as, *inter alia,* a determination that the motion has been mooted by the Debtor's exercise of power under section 1112(a) to convert unilaterally.

---

[2] Certain other assets, including potential avoidance actions, may remain, although the Debtor did offer for sale its "non-core" or miscellaneous assets (excluding avoidance actions).  The result of that auction was the offer of one bid, a credit bid by the Supporting Noteholders, for certain non-core assets.

[8] The Debtor reserves all of its rights on this issue.

5

12.     On December 23, 2011, the Supporting Noteholders filed the Adequate Protection Motion.

13.     Also pending is rule 7012(b) motion practice in adversary proceeding no. 11-53882, in which the Committee seeks a determination that (i) the Supporting Noteholders failed to perfect liens in certain of the Debtor's foreign intellectual property, and (ii) lawsuits against two entities constitute "commercial tort claims" unencumbered by the Supporting Noteholders' prepetition liens.[9]

14.     In the disputes outlined above, the litigants have proposed the usual litany: depositions, briefs, responsive briefs, expert reports[10] and expert depositions.  The litigation now in play will likely consume hundreds of thousands of dollars, if not more, that the Debtor believes would better be spent funding a Chapter 11 plan.

15.     The Debtor has tried to moot these disputes through settlement.  Its counsel hosted a settlement conference on December 1, 2011.  No settlement was reached, although the parties engaged in frank, good-faith discussions that showed some willingness to compromise.  Shuttle diplomacy with the two groups has continued.  The Debtor believes that a settlement is within reach and would represent the best outcome for this case.

16.     Administrative cost presents a significant risk to this case.  Not all of the Committee's professionals have yet filed fee applications for the November period, and none has filed for December, but the Debtor estimates that the fees and expenses accrued to date by professionals covered by the Fee Cap Carve Out[11] will exceed the original capped amount

[9] Adversary Complaint for Declaratory Judgment, Avoidance of Liens and Disallowance of Claims, AP No. 11-53882 [D.I. 1].

[10] The parties have even agreed to exchange *rebuttal* expert reports, adopting the expensive fallacy (which appears, regrettably, to have swept bankruptcy practice), that the purpose of expert reports is to argue and persuade, as opposed simply to giving notice of the expected direct testimony.  A rebuttal report should be a rare event:  its only purpose is to give notice of a *new* expert opinion, made belatedly necessary by the appearance of a new issue in an opponent's expert report.  *See generally*, Fed. R. Bankr. P. 7026 (a) (2) (B), (E).

[11] The Fee Cap Carve Out is contained in the Final Order (I) Authorizing Use of Cash Collateral

A/74674274.4
DOCS_DE:176549.3 24688-001

($8.4 million) by more than the additional $550,000 of professional fees that the Supporting Noteholders agreed to permit in the Wind-Down Budget.[12]  Ongoing litigation would only sharpen the risk of administrative insolvency.

17.    The estate has cash unencumbered by the Supporting Noteholders' *prepetition* liens, comprised by a $3.75 million settlement paid to the estate[13] and approximately $900,000 in certificates of deposit (the certificates secure certain third party obligations, but exposure on the secured obligations may be materially less than the face amount of the certificates).  The Committee also asserts that certain other unencumbered assets (in particular, the Debtor's "foreign intellectual property" and its 1/3 equity interest in its Wuhan JV) have material value.

18.    However, the Supporting Noteholders recently asserted that their *post-petition* adequate protection liens swallow the value of any unencumbered assets, whether cash or otherwise.  The Supporting Noteholders now assert adequate protection liens in excess in *$70 million*.

19.    Were the dispute compromised, cash might be deployed to permit plan confirmation.  But the Debtor believes that litigation over the cash and other assets will harden the positions of the parties and will further consume available cash, leaving less unencumbered cash (if any) for creditors.

---

Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 105, 361, 362, 363 and 507 of the Bankruptcy Code, and (III) Modifying the Automatic Stay [D.I. 171].  Pursuant to this order, Committee professionals were included in the Fee Cap.

[12] The Wind-Down Budget, as agreed to by the Supporting Noteholders, was filed with the Court on December 14, 2011.  *See Notice of Cash Collateral Order Wind-Down Budget Supplemental Approved* Budget [D.I. 579].

[13] *See* Order Granting Debtor's Motion to Approve Stipulation of Settlement Among Evergreen Solar, Inc., U.S. Bank National Association, Wells Fargo Bank, N.A., and Computershare Trust Company N.A. [D.I. 576].

A/74674274.4
DOCS_DE:176549.3 24688-001

**RELIEF REQUESTED**

20.     The Debtor seeks an order pursuant to 11 U.S.C. § 105(a) staying discovery and briefing in the adversary proceeding and the relevant contested matters until the hearing on the Motion to Convert or Dismiss.  The Debtor also requests that the Court enter an order directing the Committee, the Supporting Noteholders and the Debtor to mediation to be conducted in advance of the hearing on the Motion to Convert or Dismiss.

**ARGUMENT**

*The Debtor's Power to Convert*

21.     Section 1112(a) of the Bankruptcy Code governs the voluntary conversion from chapter 11 to chapter 7 and provides that a debtor may convert a chapter 11 case to a chapter 7 case at any time as of right.  Section 1112(a) states:

> The debtor may convert a case under this chapter to one under chapter 7 of this title unless –
>
> (1)     the debtor is not a debtor in possession;
>
> (2)     the case originally was commenced as an involuntary case under this chapter; or
>
> (3)     the case was converted to a case under this chapter other than on the debtor's request.

11 U.S.C. § 1112(a).  Thus the Debtor may, *of right* convert this chapter 11 case to chapter 7 unless one of the exceptions in section 1112(a)(1)-(3) applies.  *See, e.g., In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 971 (Bankr. E.D. Pa. 1987) (section 1112(a) "gives the debtor in possession an absolute right to convert, unless the case is governed by one of the enumerated exceptions."); *Results Systems Corp. v. MQVP, Inc.*, 395 B.R. 1, 5 (E.D. Mich. 2008) (same); *Abbott v. Blackwelder Furniture Co.*, 33 B.R. 399, 401 (W.D.N.C. 1983) ("Congress provided the Chapter 11 debtor with the absolute right to accomplish voluntary conversion to a Chapter 7 liquidation without Court approval."); *see also* Fed. R. Bankr. P. 1017(f)(1) and 1017(f)(2) (conversion pursuant to 1112(a) is requested by motion but is not

8

treated as a contested matter under Rule 9014).

22.     None of the enumerated exceptions to section 1112(a) of the Bankruptcy Code applies to this case: (1) the Debtor is a Debtor-in-Possession under sections 1107 and 1108 of the Bankruptcy Code; (2) this case was commenced by the filing of a voluntary chapter 11 petition (3) this case was not converted to chapter 11 from another chapter of the Bankruptcy Code. The Debtor is therefore entitled, as a matter of right, to convert this case to a case under chapter 7 of the Bankruptcy Code.

*The Proposed Litigation Stay*

23.     This Court may "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Its power extends to orders staying discovery or briefing even outside the chapter 11 case. *See Adelphia Communications Corp. v. Rigas (In re Adelphia Communications Corp.)*, 293 B.R. 337, 352-53 (Bankr. S.D.N.Y. 2003) (staying discovery in a related state court action and noting that "the Court plainly has the power, under . . . Bankruptcy Code section 105(a), to stay discovery . . . "). There is no dispute that a Court has power to control its own docket in contested matters and adversary proceedings within the case.

24.     The order sought would briefly but comprehensively stay litigation involving the Committee, the Supporting Noteholders, and the Debtor (including discovery, multiple depositions, expert reports, rebuttal reports, opposition and reply briefs that the Committee and the Supporting Noteholders contemplate). During the stay, the parties would continue to negotiate their differences, or, if the balance of the relief sought is granted, mediate their disputes with one of the other bankruptcy judges in this circuit. Mediation can be expeditious, and, because a bankruptcy judge would instantly grasp the key issues in play, such a mediation would either quickly facilitate a compromise or to determine that compromise is infeasible.

A/74674274.4
DOCS_DE:176549.3 24688-001

25.     If negotiation or mediation does not produce a term sheet for a consensual resolution, prior to an adjudication of the Motion to Convert or Dismiss, the Debtor will either consent to conversion or file the necessary pleading or motion papers to effect conversion of the case as a matter of right.

26.     In short, if the Court allows this motion, the result will be either (i) a consensual resolution, mooting the key issues in dispute betweens secured and unsecured creditors, or (ii) a conversion in which the adequate protection lien dispute will be left for a chapter 7 trustee and the Supporting Noteholders. If the latter dispute must be litigated, a chapter 7 proceeding, with a reduced number of parties, is likely to do so more cheaply and efficiently. If any unsecured bondholder (or other creditor) believes that dismissal is appropriate, it could then move, at its own expense, for that relief in chapter 7.

*Timetable for Adjudication*

27.     Staying briefing and discovery related to the Motion to Dismiss and the Adequate Protection Motion will not prejudice the Committee's rights under section 1112(b)(3). The statute instructs a court to commence a hearing on a motion to convert or dismiss within 30 days after the motion is filed. 11 U.S.C. § 1112(b)(3). Absent consent from the moving party, or the existence of "compelling circumstances," a court must issue a ruling on a motion to convert or dismiss within 15 days after commencement of the hearing. *Id.* But section 1112(b)(3) does not provide a right to a particular outcome. It provides only a right to prompt adjudication. It is equally served by denial of a conversion motion, for example.

28.     The Debtor seeks only a stay of briefing and discovery that will be unnecessary to the adjudication of the Committee's motion. Absent a deal between the Committee and the Supporting Noteholders, the Debtor will move to convert the case as of right under section 1112(a). That will eliminate any question as to conversion and will dissolve the Committee. It will also create, as the fiduciary entitled to be heard on a dismissal motion, a new party in

10

interest, the chapter 7 trustee.   Quite apart from any other procedural defenses that may be available to the Motion to Dismiss or Convert, these facts will warrant its denial as moot, without the need for any further discovery or briefing.

*Compulsory Mediation*

29.    The Debtor believes it reasonably likely that the stimulus of an effective judge/mediator could bring closure to the parties' disputes.[14]   The advocates for the various constituencies are sophisticated and zealous, but have participated in the process in good faith.

30.    Mediation briefing is unnecessary.   Given the settlement negotiations to date, and given that the issues in dispute are understood and articulated by sophisticated parties, the Debtor believes that negotiations facilitated by one of the Court's colleagues, acting as mediator, can bear fruit and would best resolve this case.

31.    Mediation gives the prospect of a settlement that leaves unencumbered assets for the estate and avoids continued litigation that would deplete any such settlement.

*Dismissal*

32.    The merits of the Committee's request to dismiss are beyond the scope of this motion, since the request would be mooted, in the short term, by exercise of the Debtor's unilateral conversion right.   It bears mentioning that the rationale for dismissal appears to be that certain discrete creditors would benefit at the *expense* of the estate, through retention of avoidance obligations.   That is an odd rationale for an official committee to espouse, but the Court need not address it now.   If, after conversion, an unsecured bondholder believes dismissal is warranted, it would be free to bring a dismissal motion in the chapter 7 case.   The chapter 7 trustee might then be heard.   Bondholders who would benefit from dismissal (to the

---

[14] Mediation is a consensual process; the Debtor recognizes that horses cannot be made to drink. But the rules empower a Court to order them led to water where, as here, it may be fruitful to do so. This is not a case that can afford the alternative model of an expensive litigation process driving an eve-of-trial bargain.

A/74674274.4
DOCS_DE:176549.3 24688-001

extent that their preference settlement were returned under section 349) would pay for that benefit, as opposed to the current request, which would impose on the estate the cost of procuring its own amputation.[15]

## NOTICE

33.    Notice of this Motion has been provided to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) counsel to the Committee of Unsecured Creditors; (iii) counsel to the Supporting Noteholders; (iv) the Indenture Trustee; and (v) parties who have requested notice pursuant to Bankruptcy Rule 2002. Pursuant to Del. Bankr. LR 2002-1(e), and in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

34.    No prior motion for the relief requested herein has been made to this or any other Court.

## PRAYER FOR RELIEF

WHEREFORE, the Debtor requests that the Court enter orders[16] substantially in the form attached hereto (i) staying all proceedings related to the Motion to Dismiss or Convert and the Adequate Protection Motion, and staying all matters in adversary proceeding no. 11-53882, (ii) assigning the Debtor, the Committee, and the Supporting Noteholders to mediation before a United States bankruptcy judge of this circuit, and (iii) granting the Debtor all other relief to which it may be entitled.

---

[15] The Committee is dominated by unsecured bondholders and their Indenture Trustee. Five of the seven Committee members were bondholders or their indenture trustees. Palo Alto Investors, LLC resigned on December 15. Four of the six remaining Committee members are bondholders or indenture trustees.

[16] All parties to the adversary proceeding have been served with this motion to stay, and the Debtor has submitted parallel orders for entry in the adversary proceeding and the chapter 11 case.

A/74674274.4
DOCS_DE:176549.3 24688-001

Dated: Wilmington, Delaware
      January 3, 2012

By: /s/                        

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (Bar No. 2436)
Timothy P. Cairns (Bar No. 4228)
Peter J. Keane (Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:  ljones@pszjlaw.com
        tcairnes@pszjlaw.com
        pkeane@pszjlaw.com

    -- and --

**BINGHAM MCCUTCHEN LLP**
Ronald J. Silverman (*admitted pro hac vice*)
Sabin Willett (*admitted pro hac vice*)
Steven Wilamowsky (*admitted pro hac vice*)
Scott K. Seamon (*admitted pro hac vice*)
399 Park Avenue
New York, New York 10022-4689
Telephone:  (212) 705-7000
Facsimile:  (212) 752-5378
E-mail:  ronald.silverman@bingham.com
        steven.wilamowsky@bingham.com
        sabin.willett@bingham.com
        scott.seamon@bingham.com

*Attorneys for Debtor and Debtor in Possession*

A/74674274.4
DOCS_DE:176549.3 24688-001